## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABBOTT GMBH & CO., KG, ABBOTT BIORESEARCH CENTER, INC., AND ABBOTT BIOTECHNOLOGY LTD., | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CENTOCOR ORTHO BIOTECH, INC. AND CENTOCOR BIOLOGICS, LLC., | ) ) ) |
| Defendant. | ) ) |

C.A. No. 4:09-CV-11340 (FDS)

JURY TRIAL DEMANDED

## DEFENDANTS' REPLY TO PLAINTIFFS'
## OPENING CLAIM CONSTRUCTION BRIEF

# **TABLE OF CONTENTS**

          **Page**

I. SUMMARY OF ARGUMENT IN REPLY ...................................................................1

II. THE CLAIMS MUST BE CONSTRUED IN LIGHT OF THE INTRINSIC EVIDENCE ......................................................................................................................1

    A. The Patent Specification Guides Claim Construction ............................................1

    B. Abbott's Extrinsic Expert Testimony Is Entitled to No Weight Here ....................3

III. CENTOCOR'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED ................4

    A. "Additional Agent" .................................................................................................4

    B. "Neutralizing Antibody" .........................................................................................5

        1. The Patents Are Directed to Antibodies Which Affect IL-12 .....................5

        2. Abbott's Over-Reaching Construction Should Not Be Adopted ................6

        3. Centocor's Construction of "Neutralizing Antibody" Should Be Adopted ........................................................................................................8

    C. "Inhibits phytohemagglutinin blast proliferation in an in vitro PHA assay" ..........8

    D. "Inhibits human IFNγ production" .......................................................................11

    E. "Inhibits IL-12 binding to its receptor in an IL-12 receptor binding assay (RBA)" ..................................................................................................................13

IV. CONCLUSION ................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*,
   438 F.3d 1374 (Fed. Cir. 2006)..................................................................................................2

*In re Alonso*,
   545 F.3d 1015 (Fed. Cir. 2008)..................................................................................................7

*Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*,
   554 F.3d 1010 (Fed. Cir. 2009)..................................................................................................2

*Lydall Thermal/Acoustical, Inc. v. Federal-Mogul Corp.*,
   344 Fed. Appx. 607 (Fed. Cir. 2009) .........................................................................................2

*Network Commerce, Inc. v. Microsoft Corp.*,
   422 F.3d 1353 (Fed. Cir. 2005)..................................................................................................2

*Noelle v. Lederman*,
   355 F.3d 1343 (Fed. Cir. 2004)..................................................................................................8

*Nystrom v. Trex Co.*,
   424 F.3d 1136 (Fed. Cir. 2005)..................................................................................................2

*Old Town Canoe Co. v. Confluence Holdings Corp.*,
   448 F.3d 1309 (Fed. Cir. 2006)..................................................................................................2

*On Demand Mach. Corp. v. Ingram Indus., Inc.*,
   442 F.3d 1331 (Fed. Cir. 2006).............................................................................................2, 5

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005)..........................................................................................1, 2, 3

*Southwall Techs., Inc. v. Cardinal IG Co.*,
     54 F.3d 1570, 1578 (Fed. Cir. 1995)……………………………………………………….3

*Spectra-Physics, Inc. v. Coherent, Inc.*,
     827 F.2d 1524, 1533 (Fed. Cir. 1987)……………………………………………………..3

*Vitronics Corp. v. Conceptronic, Inc.*
   90 F.3d 1576, 1582 (Fed. Cir. 1996) ........................................................................................2

I.      SUMMARY OF ARGUMENT IN REPLY

To the extent there is any patentable invention described in the Abbott patents, it is limited to antibodies that bind to the cytokine IL-12 and have certain, expressly identified effects on the biological activity of the IL-12.  But, through its proposed claim constructions of claim terms in its patents, Abbott is seeking to expand its patent protection to cover antibodies that affect biological activities that can have nothing to do with IL-12 and that Abbott never described.  Abbott's over-reaching constructions run afoul of long-standing Federal Circuit precedent requiring that claims not be construed more broadly than the patent's description of the invention, and should be rejected.

Abbott's proposed construction of "additional agent" in the 485 patent also flies in the face of claim construction law as it ignores the amendments Abbott had to make to convince the Patent Office to issue the patent in the first place.  Abbott should not be permitted to say one thing to get its patent allowed, and then conveniently forget the concessions it had to make to later try to broaden its patent scope to ensnare a competitor's product.  Abbott's construction of "additional agent" should also be rejected.

II.     THE CLAIMS MUST BE CONSTRUED IN LIGHT OF THE INTRINSIC EVIDENCE

A thread running uniformly through Centocor's and Abbott's claim constructions is the extent to which the specification of the Abbott patents (the description in the patents) can and should be referenced in construing the disputed claim terms.  A review of the law on this point is in order.

    A.      The Patent Specification Guides Claim Construction

The *en banc* Federal Circuit has explained that the patent specification is the "single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir.

2005) (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). The importance of the specification derives from its statutory role. *Id.* at 1316. "The close kinship between the written description and the claims is enforced by the statutory requirement that the specification describe the claimed invention in 'full, clear, concise and exact terms.'" *Id.* (quoting 35 U.S.C. 112 ¶1). As the Court noted, "[i]n light of the statutory directive that the inventor provide a 'full' and 'exact' description of the claimed invention, the specification necessarily informs the proper construction of the claims." *Id.*

The Federal Circuit has made clear that "the claims cannot be of broader scope than the invention that is set forth in the specification." *On Demand Mach. Corp. v. Ingram Indus., Inc.*, 442 F.3d 1331, 1341 (Fed. Cir. 2006). And, in specifically addressing this issue and applying *Phillips*, the Court has consistently rejected patentees' efforts to construe claims more broadly than the invention disclosed in the specification, as Abbott proposes to do here.[1]

Contrary to Abbott's suggestions, construing claims in light of the specification, as mandated by *Phillips*, is *not* impermissibly reading limitations into the claims. The Federal Circuit has taken note of the tension between the directive to construe claims in light of the specification and the proscription against importing limitations from the specification into the

---

[1] *Kinetic Concepts, Inc. v. Blue Sky Med. Group, Inc.*, 554 F.3d 1010, 1018-19 (Fed. Cir. 2009) (holding that the term "wound" did not include fistulae and pus pockets because all of the examples in the specification involve skin wounds); *Lydall Thermal/Acoustical, Inc. v. Federal-Mogul Corp.*, 344 Fed. Appx. 607, 613-14 (Fed. Cir. 2009) (unreported) (holding that the term "fibrous batt of fibers" was limited to an insulating layer sandwiched between binding layers because the patent specification narrowly disclosed one embodiment of the invention); *Old Town Canoe Co. v. Confluence Holdings Corp.*, 448 F.3d 1309, 1316-18 (Fed. Cir. 2006) (holding that the term "coalescence" does not cover a process that fails to meet the optimum stage because patent specification describes coalescence as reaching the optimum stage); *On Demand*, 442 F.3d at 1339-40 (holding that claimed "customer" was limited to a retail customer because to hold otherwise would render the claims broader than the specification); *Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374, 1379 (Fed. Cir. 2006) (reversing broad construction of term "adjustable" that found no support in the patent specification); *Nystrom v. Trex Co.*, 424 F.3d 1136, 1143-46 (Fed. Cir. 2005) (holding that the term "board" was limited to a wood cut from log, and "manufactured to have" was limited to woodworking techniques, because the patent specification narrowly described the invention); *Network Commerce, Inc. v. Microsoft Corp.*, 422 F.3d 1353, 1360-61 (Fed. Cir. 2005) (holding that claimed "download component" must include a boot program because the specification describes it in that manner).

claims. *Phillips*, 415 F.3d at 1323. The Court has advised that, to avoid improperly importing limitations into the claims, one must keep in mind that "the purposes of the specification are to teach and enable those of skill in the art to make and use the invention and to provide a best mode for doing so." *Id.* (citing *Spectra-Physics, Inc. v. Coherent, Inc.*, 827 F.2d 1524, 1533 (Fed. Cir. 1987)). As explained in the discussion to follow, Centocor's proposed constructions properly construe the disputed terms in light of the description of the invention provided in the patents; Abbott's do not.

### B.    Abbott's Extrinsic Expert Testimony Is Entitled to No Weight Here

Possibly recognizing the shortcomings of the patent specifications' disclosures to support its proposed constructions, Abbott provides and relies on an expert declaration of Dr. Michael Grusby. But resort to such "extrinsic evidence" must be made with care. "[U]ndue reliance on extrinsic evidence poses the risk that it will be used to change the meaning of claims in derogation of the 'indisputable public records consisting of the claims, the specification and the prosecution history,' thereby undermining the public notice function of patents." *Phillips*, 415 F.3d at 1319 (quoting *Southwall Techs., Inc. v. Cardinal IG Co.*, 54 F.3d 1570, 1578 (Fed. Cir. 1995)). The risk that expert testimony will be misused is evident here. For example, although it is essential that the public record of the prosecution history of a patent be considered in construing patent claims,[2] Dr. Grusby admitted at his recent deposition that he did not even look at the prosecution history for the patents in suit. (Pearson Decl. Ex. 1, Grusby Dep. at 31:20-22).

What's worse, Dr. Grusby did not make an independent analysis of the patents and the claims. He admitted that Abbott's claim constructions were provided to him by Abbott's counsel before he even started his consideration of the patents (*id*. at 27:16 - 28:17). This may explain

---

[2] *Phillips*, 415 F.3d at 1317.

the conclusory nature of his stated opinions – in a single paragraph, he opines that everything Abbott says is right and everything Centocor says is wrong, with no explanation for this opinion (Grusby Decl. at ¶ 29) – also underscores why his opinions are entitled to no weight. Moreover, not only are Dr. Grusby's opinions conclusory, they are contradicted by many of the *factual* statements in his declaration which, as explained below, actually support Centocor's claim construction positions.

### III.    CENTOCOR'S PROPOSED CONSTRUCTIONS SHOULD BE ADOPTED

#### A.    "Additional Agent"

Apparently preferring to address the issue only its reply brief, to which Centocor has no response, Abbott avoids facing head-on the prosecution history-based reasons why "additional agent," recited in the 485 patent claims, must be construed as "an agent other than a pharmaceutically acceptable carrier which imparts a beneficial attribute to the therapeutic composition." Centocor's opening brief explains in detail how the prosecution history evidences that Abbott gave up coverage for any pharmaceutical compositions containing only the anti-IL-12 antibodies of the invention plus pharmaceutically acceptable carriers. In order to get the Patent Office to allow its 485 patent claims, Abbott had to amend the claims so they meant something different from pending claims in the 128 patent application. The 128 application claims encompassed compositions of antibody and a pharmaceutically acceptable carrier. The 485 patent claims must be construed to cover something else.

Abbott's declarant, Dr. Grusby, admitted at his recent deposition that he did not even look at the prosecution history for the patents or at the interference record for the 128 patent. (Pearson Decl. Ex. 1, Grusby Dep. at 31:20-22, 33:2-9). This is one more reason why his conclusory opinion on the meaning of "additional agent" is entitled to no weight.

4

### B. "Neutralizing Antibody"

Although the 128 and 485 patents purport to describe human antibodies which bind to the cytokine human IL-12, and which inhibit or counteract its activity, Abbott improperly seeks to construe "neutralizing antibody" as an antibody that inhibits *any* biological activity of *any* cytokine. But, as Abbott's expert Dr. Grusby notes, "[t]here are dozens of known cytokines." (Grusby Decl. at ¶ 10). The Abbott patents do not disclose antibodies that bind to and inhibit dozens of cytokines. They disclose only certain antibodies that bind to the single cytokine IL-12. Abbott's proposed construction flies in the face of the Federal Circuit's warning that "the claims cannot be of broader scope than the invention that is set forth in the specification,"[3] and should be rejected.

#### 1. The Patents Are Directed to Antibodies Which Affect IL-12

The sole focus of the Abbott patents is on the human IL-12 cytokine and on counteracting the problems that overproduction of the IL-12 can cause by producing human antibodies which bind to it.

For example, the patents state:

> IL-12 plays a critical role in the pathology associated with several diseases involving immune and inflammatory responses. (Pearson Decl. Ex. 2, 128 patent at 1:17-19).
>
> Human patients with MS have demonstrated an increase in IL-12 expression … (*id*. at 1:50-51).
>
> Elevated levels of IL-12 p70 have been detected in the synovia of RA patients compared with healthy controls… (*id*. at 1:59-60).
>
> Interleukin 12 plays a critical role in the pathology associated with a variety of diseases involving immune and inflammatory elements (*id*. at 74:28-30).

---

[3] *On Demand,* 442 F.3d at 1340.

*See also id*. at 81:34-82:59. The patents do not discuss the roles played by any other cytokine in the human body.

The patents also reflect the intention of the inventors to inhibit or counteract the deleterious activity of IL-12:

> Due to the role of human IL-12 in a variety of human disorders, therapeutic strategies have been designed to inhibit or counteract IL-12 activity. In particular, antibodies that bind to, and neutralize, IL-12 have been sought as a means to inhibit IL-12 activity (*id.* at 2:13-17).

> In another embodiment, the invention provides a method for inhibiting IL-12 activity in a subject suffering from a disorder in which IL-12 activity is detrimental (*id.* at 80:43-45).

> There are numerous examples of disorders in which IL-12 activity is detrimental. In one embodiment, the antibodies or antigen-binding portions thereof, can be used in therapy to treat the diseases or disorders described herein (*id.* at 81:24-28).

There is no description or support in the patents for antibodies that inhibit or affect the effect of any cytokine other than IL-12.

### 2.   Abbott's Over-Reaching Construction Should Not Be Adopted

Although the entire focus of the 128 and 485 patents is on antibodies that bind to IL-12 and affect the activity of IL-12, Abbott now wants its claims to cover more. According to Abbott's proposed construction, the "neutralizing antibody" of Claims 7-15 and 29-40 of the 128 patent can be an antibody that affects any biological activity at all, whether it is a biological activity due to IL-12, a biological activity due to another cytokine, or a biological activity due to the phase of the moon. This, of course, is nonsensical and far-removed from the disclosure of the patents.

In an effort to retreat from this untenable position, Abbott suggests that, at the least, the "neutralizing antibodies" should be antibodies that inhibit a biological activity "of either IL-12

*or any other cytokine having p40.*" (Abbott Brf. at 16, emphasis added). But the only cytokine described in the patent that has a p40 subunit is the IL-12 cytokine.

Recall that the IL-12 cytokine is formed from two subunits, called p35 and p40. (Grusby Decl. at ¶ 11). Abbott makes the unsubstantiated leap of suggesting that the fact that the patents describe an evaluation of antibodies for their preference to bind to the p40 subunit of IL-12 rather than the p35 subunit means they "describe antibodies that bind to any antigen having p40." (Abbott Brf. at 15). Not so. The only reference in the patents of any "antigen having p40" *other* than IL-12 is a brief reference to an "alternative IL-12 heterodimer" in which the p35 subunit of IL-12 is replaced by a "novel p19 molecule" (Pearson Decl. Ex. 2, 128 patent at 113:46-52). But neither this "novel p19 molecule" nor the "alternative IL-12 heterodimer" is described in any meaningful way in the patents.

The patents' reference to a "novel p19 molecule" is not a specific description of a protein subunit. The numerals "19," "35" and "40" in the notations p19, p35, and p40 refer to the mass of the protein subunits. (*See* Abbott Brf. at 2-3). These names indicate nothing about the structures of the subunits. The precise amino acid sequence – in essence, the chemical formula[4] – of the p19 subunit is not disclosed in the patent. There is nothing in the patent to distinguish the referenced "novel p19 molecule" from any other 19 kiloDalton protein. This disclosure does not provide the required written description support for the "novel p19 subunit" or the p19/p40 heterodimer. *In re Alonso*, 545 F.3d 1015, 1020-22 (Fed. Cir. 2008) (no written support for claims to method of administering antibodies to neurofibrosacroma antigens where application disclosed only the molecular weight of the antigens and taught nothing about their structure);

---

[4] Proteins like IL-12, just like antibodies, are formed from amino acid building blocks. Knowing the amino acid sequence – and the manner in which the amino acids are put together to form the sequence – is akin to knowing the chemical formula for a small molecule (e.g., $H_2O$). (*see* Grusby Decl. at ¶¶ 9-11).

7

*Noelle v. Lederman,* 355 F.3d 1343, 1349 (Fed. Cir. 2004) (no written description support for claim to antibodies to CD40CR antigen where no disclosure of structural elements of CD40CR). Accordingly, the patents' fleeting reference to a mystery p19/p40 heterodimer does not support Abbott's construction of "neutralizing antibody" as encompassing all antibodies that inhibit a biological activity "of either IL-12 *or any other cytokine having p40.*"

### 3. Centocor's Construction of "Neutralizing Antibody" Should Be Adopted

Centocor's construction of "neutralizing antibody," which limits the antibodies to those which inhibit biological activity *of the cytokine IL-12*, and not any other cytokine, is consistent with the description in the Abbott patents.

Based on Abbott's arguments regarding the "includes" language used in the definition of "neutralizing antibody" (Abbott Brf. at 14, citing 128 patent at 27:53-65), Centocor is willing to agree that the proper construction of the "neutralizing antibody" should refer to inhibition of "a" biological activity of human IL-12, rather than "the" biological activity of human IL-12 as Centocor originally had proposed.

Centocor therefore requests that "neutralizing antibody" be defined as "an antibody whose binding to human IL-12 results in inhibition of a biological activity of human IL-12."

### C. "Inhibits phytohemagglutinin blast proliferation in an *in vitro* PHA assay"

One method the Abbott patents disclose for determining whether antibodies affect biological properties of IL-12 is the PHA blast assay. Various claims in each of the 128 and 485 patents recite antibodies "which inhibit phytohemagglutinin blast proliferation in an in vitro PHA assay" to a specified extent. The parties' dispute over construction of this term relates to whether the claims encompass antibodies which inhibit an effect caused by the IL-12 cytokine only or

whether, as Abbott erroneously asserts, they can encompass antibodies which inhibit an effect caused by any cytokine.

As Abbott's expert declarant, Dr. Grusby, explains, certain cytokines, such as IL-12, can cause PHA blast cells to proliferate (reproduce) (Grusby Decl. at ¶ 21). IL-12 can cause the cell to proliferate by binding to a specific receptor on the cell surface (*id*. at ¶¶ 12, 18). But if an antibody can block the binding of the IL-12 to the IL-12 receptor, this will block the signal for the cells to proliferate (Pearson Decl. Ex. 3, Abbott Tutorial at 12-13). As Dr. Grusby explains:

> If *a cytokine* causes proliferation (reproduction) of cells, for example immune cells, it is possible that a subset of antibodies that bind to *that cytokine* might inhibit the cells' proliferation. A test that can be referred to as a "proliferation assay" can be used to measure whether, or to what extent, an antibody inhibits *such* cellular proliferation.

(Grusby Decl. at ¶ 20, emphasis added). In other words, the proliferation assays can be used to test whether an antibody *to a particular cytokine* affects the cell proliferation *caused by that particular cytokine*. As Dr. Grusby also explains, one antibody will usually bind only to a single antigen (Grusby Decl. at ¶ 15). Thus, an antibody that binds to IL-12 will usually not bind to another cytokine.

With this technical background, Abbott's unwarranted overreaching becomes apparent. Under Abbott's construction, the cell proliferation in the assay could be caused by any cytokine, not just IL-12, even though any other cytokine would bind to a wholly different receptor on the cell than the IL-12 receptor and even though an antibody to any other cytokine would usually not also bind to IL-12. So under Abbott's construction, an inhibition of cell proliferation observed in the assay *could have nothing to do with any effect of the antibody to IL-12*. This is wholly contrary to the entire focus of the Abbott patents, which describes antibodies *to IL-12* to counteract the activity *of IL-12*.

Abbott erroneously argues that Centocor's construction inserts words into the claim. To the contrary, Centocor's construction is the only one consistent with the patent disclosure, and is required to resolve the parties' dispute and clarify the impropriety of Abbott's proposed construction.

Abbott also argues (and this is notably attorney argument only, as Dr. Grusby's declaration wisely does not go there) that, in Example 3 in the patents, cells are proliferated by incubating them with the different cytokine, IL-2 (Abbott Brf. at 17). But this argument fails because, although the PHA cells in the example are harvested and isolated using a process that included incubation with IL-2, the PHA blast proliferation assay itself involved incubating the harvested PHA blasts with IL-12 (Pearson Decl. Ex. 2, 128 patent at 110:38-57, esp. 110:48-49). As the description of this assay in Example 3 specifically notes:

> Anti-IL-12 antibodies were evaluated for their ability to inhibit PHA blast proliferation (***which proliferation is stimulated by IL-12***).

(*Id*. at 110:40-42, emphasis added). This mirrors the previous statement in the patent:

> The clones were tested for their ability … to inhibit ***IL-12 induced*** proliferation of PHA stimulated human blas cells (PHA assay), described in Example 3.

(*Id*. at 104:23-27, emphasis added). Again, the sole focus of the Abbott patents is IL-12 and antibodies which can potentially affect biological activities of IL-12.

Indeed, Dr. Grusby agreed that, in the context of the patent, a PHA blast proliferation assay is one where anti-IL-12 antibodies are evaluated for their ability to inhibit PHA blast proliferation, which proliferation *is stimulated by IL-12* (Pearson Decl. Ex. 1, Grusby Dep. at 132:2-9, 134:9-24).

The Abbott patents do not describe antibodies that can inhibit cell proliferation caused by any possible cytokine or other agent. Abbott's attempt to claim antibodies it did not invent and

10

did not describe in its patents overreaches and should be rejected. Centocor respectfully requests that its construction be adopted.

### D. "Inhibits human IFNγ production"

The parties' dispute with respect to this claim term mirrors that for the proliferation assay term discussed above. Abbott is overreaching in seeking a claim construction that extends the scope of the claims far beyond the invention described in its patents.

Certain cytokines can stimulate the production of interferon gamma (IFNγ) by immune cells (Grusby Decl. at ¶ 23). An assay can be done to determine whether an antibody neutralizes a cytokine by determining whether the antibody inhibits the production of IFNγ (*id.* at ¶ 22). Abbott's construction would encompass antibodies that can inhibit the production IFNγ regardless of whether that production was caused by IL-12 or by some other cytokine or agent. Centocor's construction properly limits the claims to antibodies that inhibit IFNγ production caused by IL-12.

The arguments made in the preceding section, about construction of the proliferation assay, are equally applicable to this claim element. As the sole focus of the Abbott patents is IL-12 and antibodies which can potentially affect biological activities of IL-12, a claim construction that would encompass antibodies that affect biological activities of a different cytokine – as Abbott proposes – makes no sense and is legally erroneous.

Centocor's construction is also consistent with the specific discussion of the IFNγ assay provided in the Abbott patents. The patents expressly note that it is IFNγ production ***stimulated by IL-12*** that is being assayed:

> The ability of anti-IL-12 antibodies to inhibit the production of IFNγ by PHA blasts (***which production is stimulated by IL-12***) was analyzed as follows.

(Pearson Decl. Ex. 2, 128 patent at 111:17-19, emphasis added).

11

Once again, the extrinsic evidence of Dr. Grusby's declaration testimony, to the extent it could even properly be considered, does not advance Abbott's position. His conclusory opinion that Abbott's construction is consistent with the patent specification lacks any citation to the patent and overlooks the express statement quoted above contradicting Abbott's construction (and supporting Centocor's). Presented with the 128 patent itself, Dr. Grusby agreed that the inhibition of IFNγ production is described as being measured using PHA blasts that are stimulated by IL-12 (Pearson Decl. Ex. 1, Grusby Dep. at 138:15 – 139:6).

Abbott's attempt to construe the claim to cover not only *in vitro* (*i.e.*, in a laboratory) IFNγ assays but also *in vivo* (*i.e.*, in a person's body) is also unsupported by the intrinsic evidence. Although it may be the case that IFNγ could be measured in blood samples taken by a living organism, the patent claims require more than must measuring IFNγ production. Each of the claims referencing IFNγ production requires that the antibody inhibit such production with an $IC_{50}$ of a certain amount. The $IC_{50}$ is the concentration of antibody at which the half maximal inhibition occurs. This is commonly measured in *in vitro* tests by, for example, adding varying concentrations of the antibody to controlled quantities of cells, and determining at what concentration half of the maximum inhibition occurs. The patent provides no guidance as to how an $IC_{50}$ can be determined in *in vivo* tests (*See, e.g.,* Pearson Decl. Ex. 2, 128 patent at Example 4). Notably, Dr. Grusby's declaration only states that IFNγ production can be measured in blood samples taken from a human organism (Grusby Decl. at ¶ 24). He says nothing about calculating $IC_{50}$'s from such blood samples.

The Abbott patents do not describe antibodies that can inhibit IFNγ production caused by any possible cytokine or other agent and do not describe antibodies that can inhibit IFNγ production in *in vivo* assays. Abbott's attempt to claim antibodies it did not invent and did not

12

describe in its patents overreaches and should be rejected. Centocor respectfully requests that its construction be adopted.

### E. "Inhibits IL-12 binding to its receptor in an IL-12 receptor binding assay (RBA)"

Once again, the parties' dispute with respect to this term stems from the fact that Abbott improperly seeks a construction that exceeds the scope of the disclosure. Abbott's construction, which divorces the receptor binding assay from that specifically disclosed in the specification and referenced as "RBA" – a term specifically defined in the specification to refer to an assay of inhibition of binding to IL-12 receptors on human PHA blasts – should be rejected.

The Abbott patents repeatedly refer to the receptor binding assay as "RBA" and also refer to it in the context of the assay disclosure in Example 3 (Pearson Decl. Ex. 2, 128 patent at 104:23-2105:4245 106:67). The assay described in Example 3 measures inhibition of binding to IL-12 on human PHA blasts, not inhibition of binding to any other cells (*id*. at 110:7-37). And, notably, this description is consistent with how Abbott described the Receptor Binding Assay in the tutorial it presented to the Patent Office during the interference involving the 128 patent:

> One method to determine if an antigen inhibits or neutralizes an antigen's activity is commonly called a Receptor Binding Assay, or an RBA.
>
> ***First, human cells are stimulated in a dish with a substance called PHA***. PHA causes the human cells to express receptors on their surface (i.e., IL-12 receptors). The amount of IL-12 receptors on the surface of the stimulated cells can be determined by reacting the cells with radioactive IL-12. Once the radioactive IL-12 is bound to the IL-12 receptors on the cell surface, the excess radioactive IL-12 is washed away and the cells are counted in a radiation counter. The amount of radiation obtained represents the total amount of IL-12 that can bind, and is therefore a direct expression of how much IL-12 receptor is on the surface of the cells used in the assay.
>
> In a separate dish, a human antibody to IL-12 may be included. If the human antibody to IL-12 neutralizes the binding of the radioactive IL-12 to the IL-12 receptor on the cell surface, the antibody-radioactive IL-12 complex will be washed away.

> Then, when the cells are counted in a radiation counter, less radioactive IL-12 will be bound to the IL-12 receptors on the cells and the level of radioactivity will be lower. The reduction of binding that is detected indicates that there is inhibition or neutralization of IL-12, because IL-12 is unable to bind to the IL-12 receptor on the cell.

(Pearson Decl. Ex. 3, Abbott Tutorial at page 11, emphasis added).

If Abbott had not intended to limit the claims to antibodies inhibiting IL-12 binding according to a particular assay, the "RBA," it could have drafted the claims to say so. Rather than reciting:

> [an] antibody … which inhibits IL-12 binding to its receptor in an IL-12 receptor binding assay (RBA) with an $IC_{50}$ of …"

as it does in Claims 61-63 of the 128 patent, it could have recited:

> [a]n antibody … which inhibits IL-12 binding to its receptor with an $IC_{50}$ of …

and left the claims open to determining the binding inhibition by other assays. It did not do so. It chose to specifically cite the RBA in its claims, the RBA is described in the patents as determining inhibition of binding on human PHA blasts, and Abbott cannot now read that limitation out of the claim. The fact, as Abbott asserts, that other assays were available in 1999 for measuring IL-12 binding inhibition actually supports Centocor's position, not Abbott's, as it reflects that Abbott must have known it did not have to use such specific claim language; it could have claimed more broadly, and did not do so.

The Abbott patents do not describe antibodies that can inhibit binding of IL-12 to its receptor in just any assay that one might conjure up. The claims specifically recite that inhibition is measured in an "RBA" assay, and the description of the RBA assay in the specification must control. Centocor respectfully requests that its construction be adopted.

## IV.     CONCLUSION

Centocor requests that its construction of the disputed claim terms be adopted.

Date:  October 4, 2010				By: _/s/ Barbara L. Mullin_
						Dianne B. Elderkin (*pro hac vice*)
						delderkin@akingump.com
						Barbara L. Mullin (*pro hac vice*)
						bmullin@akingump.com
						Steven D. Maslowski (*pro hac vice*)
						smaslowski@akingump.com
						Angela Verrecchio (*pro hac vice*)
						averrecchio@akingump.com
						Matthew A. Pearson (*pro hac vice*)
						mpearson@akingump.com
						AKIN GUMP STRAUSS HAUER & FELD LLP
						Two Commerce Square
						2001 Market Street, Suite 4100
						Philadelphia, PA 19103-7013
						215-965-1200
						FAX:  215-965-1210

						Domingo LLagostera (*pro hac vice*)
						dllagostera@akingump.com
						AKIN GUMP STRAUSS HAUER & FELD LLP
						1111 Louisiana Street, 44th Floor
						Houston, TX 77002
						713-220-5800
						FAX: 713-236-0822

						Heather P. Repicky (BBO # 663347)
						NUTTER MCLENNEN & FISH LLP
						World Trade Center West
						155 Seaport Boulevard
						Boston, MA 02210
						617-439-2000
						FAX: 617-310-9000

						Attorneys For Defendants
						CENTOCOR ORTHO BIOTECH, INC. and
						CENTOCOR BIOLOGICS, LLC

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing Defendants' Reply to Plaintiffs' Opening Claim Construction Brief was electronically mailed to the following counsel of record on October 4, 2010 through the Court's ECF notification system.

_____
Angela Verrecchio