# EXHIBIT 1

Page 1

1        UNITED STATES DISTRICT COURT
2      FOR THE DISTRICT OF MASSACHUSETTS
3           NO.   4:09-cv-11340-FDS
4
5
6    _____
7   ABBOTT GMBH & CO., KG,            )
8   ABBOTT BIORESEARCH CENTER,        )
9   INC., AND ABBOTT                  )
10  BIOTECHNOLOGY LTD.,               )
11        Plaintiffs,                 )
12        vs.                         )
13  CENTOCOR ORTHO BIOTECH,           )
14  INC., AND CENTOCOR                )
15  BIOLOGICS, LLC.,                  )
16        Defendants.                 )
17  _____)
18
19
20
21         VIDEOTAPED DEPOSITION OF
22         MICHAEL J. GRUSBY, PhD
23       THURSDAY, 30 SEPTEMBER 2010
24              8:03 AM

Page 27

1   Q.   So at some point after that --
2   A.   Uh-huh.
3   Q.   -- did you consider what the construction
4  should be of certain claim terms in the patents
5  that are marked as Exhibits 1 and 2?
6   A.   Yes, I was asked to consider the
7  construction of claim terms.
8   Q.   When was that?
9   A.   About a month or six weeks ago.
10  Q.   Do you remember any -- strike.
11       Can you pin it down any more particular
12 than that, other than, "about a month or six weeks
13 ago"?
14  A.   Oh, it was towards the middle to the end
15 of August.
16  Q.   What were you asked to do?
17  A.   Consider the construction of claim terms.
18  Q.   So what did you do first?
19  A.   I read a document that was provided to me
20 by Wilmer Hale.
21  Q.   What was that document?
22  A.   The document was, I believe -- I forget
23 exactly what the document was called, but it was a
24 document that discussed the construction of claim

Page 28

1  terms.
2      Q.  What did you mean by "discussed the
3  construction of claim terms"?
4      A.  It was a document that had claim terms
5  that discussed what the meaning of the claim terms
6  were.
7      Q.  So the document had a claim term and a
8  meaning of that claim term?
9      A.  That is correct.
10     Q.  Were those meanings the meanings that
11 Wilmer Hale has proposed for the construction of
12 these claim terms?
13     A.  That was contained within the document.
14     Q.  So that's what you were provided with --
15     A.  That's correct.
16     Q.  -- at the start of considering this?
17     A.  That's correct.
18     Q.  Were you provided with Centocor's proposed
19 construction?
20     A.  I was.
21     Q.  That was in the same document --
22     A.  It was.
23     Q.  -- different document?
24     A.  Same document.

Page 31

1           Did you consider any particular parts of
2  the '128 patent?
3      A.   Did I consider?  I read the patent, so --
4  I read the entirety of the patent.  So in some
5  sense, I would say that I considered the whole
6  patent.
7      Q.   So you considered the whole '128 patent as
8  part of your work preparing for your declaration.
9      A.   Yes.
10     Q.   And so you reviewed the entire
11 specification of the '128 patent?
12     A.   I did.
13     Q.   Did you review all the claims of the '128
14 patent?
15     A.   I did.
16     Q.   Are there any other documents that you
17 reviewed in preparing for your declaration about
18 claim construction?
19     A.   No.
20     Q.   Did you review the prosecution history of
21 the patents that are marked at Exhibit 1 or 2?
22     A.   I did not.
23     Q.   You've never looked at the prosecution
24 history?

```
                                                    Page 33
 1      A.   I do -- I don't think that I did.
 2      Q.   Are you aware that there was a prior
 3 proceeding related to these patents that's called
 4 an "interference"?
 5      A.   I am aware that there was one.
 6      Q.   Did you review any of the record of that
 7 interference in preparing your declaration about
 8 claim construction?
 9      A.   I do not believe that I did.
10      Q.   Okay.  So just to make sure we've wrapped
11 it up, are there any other documents that you can
12 remember that you reviewed --
13      A.   No.
14      Q.   -- in preparing your declaration?
15           Other than the attorneys at Wilmer Hale,
16 did you talk to anybody as part of the work related
17 to preparing your declaration on claim
18 construction?
19      A.   Just my wife.
20      Q.   Is your wife -- strike it.
21           Were those conversations substantive about
22 the substance of the claim constructions?
23      A.   They were not.
24      Q.   Okay.  I've marked as Plaintiffs' Exhibit
```

1  proliferation assay is.
2      Q.   And so, according to the patent, a human
3  PHA blast proliferation assay is an assay where,
4  "antiIL-12 antibodies were evaluated for their
5  ability to inhibit PHA blast proliferation, which
6  proliferation is stimulated by IL-12," right?
7      A.   In the context of the patent, I would say
8  that that's what a human PHA blast proliferation
9  assay is.
10     Q.   And so an antibody that inhibits
11 phytohemagglutinin blast proliferation in an in
12 vitro PHA assay is an antibody that shows
13 inhibition in the assay, as described on Column
14 110 --
15          MR. McELWAIN:  Objection.
16     Q.   -- is that right?
17     A.   No, I didn't say that, and I don't think
18 that the description of the human PHA blast
19 proliferation assay says that.
20     Q.   So what does it mean in the context of the
21 patent for an antibody to inhibit
22 phytohemagglutinin blast proliferation in an in
23 vitro PHA assay?
24          MR. McELWAIN:  Objection.

1   mean by that?
2             MR. McELWAIN:  But in the context of the
3   patent, Matt, what do you mean by that?  If you're
4   talking about the claim, talk about the claim.  If
5   you're talking about the specification, talk about
6   that.  But this is just some sort of weird game
7   here.
8        Q.   Maybe this is just a misunderstanding.
9             Do you have an opinion as to what that
10  phrase, "inhibits phytohemagglutinin blast
11  proliferation in an in vitro PHA assay" means?
12       A.   Do I have an opinion about what it means?
13  No, I really don't have an opinion.  But my
14  understanding of what it means is that, one
15  conducts a human PHA blast proliferation assay, as
16  described here in Column 110.
17       Q.   And what's described in Column 110 is that
18  PHA blast proliferation is stimulated by IL-12,
19  right?
20            MR. McELWAIN:  Objection.
21       A.   It says that, "PHA blast proliferation,
22  which proliferation is stimulated by IL-12."
23            That that would be the way that the human
24  PHA blast proliferation assay is conducted.

Page 138

1  not testifying.
2      A.   I -- I'm not offering an opinion.  I am
3  making a declaration as to -- generically here --
4  what the inhibition of interferon-gamma production
5  -- what -- what constitutes an assay where the --
6  where one looks at the inhibition of
7  interferon-gamma production.
8      Q.   So if I understand your testimony, you're
9  not offering an opinion as to what the term,
10 "inhibits interferon-gamma production" means in the
11 context of the patent; is that right?
12     A.   I -- I am -- no.  I am not making a
13 definition of that, no.
14     Q.   Okay.  Let's go back to the patent.
15          How does the patent describe how to test
16 for inhibition of production of interferon-gamma,
17 or inhibition of interferon-gamma production?
18     A.   Again, in Column 111, Section D describes
19 the assay that's used for the interferon-gamma
20 induction assay.
21     Q.   And it's -- it reads for -- I'll just read
22 the first part of it.
23     A.   Uh-huh.
24     Q.   You let me know if I misread it.

Page 139

1  "The interferon-gamma induction assay is
2  described as measuring -- "I guess "-- the ability
3  of antiIL-12 antibodies to inhibit the production
4  of interferon-gamma by PHA blasts, which production
5  is stimulated by IL-12"; is that right?
6      A.   That's correct.
7      Q.   Is there any other part of the patent that
8  describes how to measure the inhibition of
9  interferon-gamma production?
10     A.   I honestly can't say whether there is or
11 isn't.
12     Q.   You don't know, one way or the other?
13     A.   I don't remember whether there is or not.
14     Q.   Are you offering an opinion in relation
15 to, you know, your declaration, as to what it means
16 for an antibody to inhibit IL-12 binding to its
17 receptor in an IL-12 receptor-binding assay?
18     A.   Am I offering my opinion -- so can you
19 rephrase that question and explain what you mean by
20 "offering an opinion"?
21     Q.   Sure.  There's -- I'm not trying to be
22 tricky.
23     A.   And I'm not trying to be evasive.
24     Q.   So have you, in -- in the process of