# AKIN GUMP
## STRAUSS HAUER & FELD LLP
Attorneys at Law

**DIANNE B. ELDERKIN**
215.965.1340/1.215.965.1200
delderkin@akingump.com

July 11, 2011

*Via Federal Express*

The Honorable F. Dennis Saylor, IV
United States District Court
Donohue Federal Building
595 Main Street
Worcester, MA 01608

Re: *Abbott GmbH & Co., KG et al. v. Centocor Ortho Biotech, Inc. et al.*, C.A. No. 4:09-cv-11340

Dear Judge Saylor:

      We represent the Centocor entities in the above-captioned litigations and are writing to you concerning the Supplemental Expert Report of (Abbott's expert) James D. Marks, M.D. Ph.D. (attached as Exhibit 1).  This supplemental report, directed to the issue of infringement, was received by Centocor at the close of business last Friday (July 8, 2011), seven and a half weeks after Abbott served its initial expert reports on infringement, without any explanation or prior notice from Abbott.  The Supplemental Report sets forth a new theory for why Centocor's accused CNTO 1275/Stelara antibody meets the "human antibody" limitation of the claims, as construed by the Court, literally and under the doctrine of equivalents – and neither of these positions have been set forth in Abbott's infringement contentions.  Because the Supplemental Report is untimely and in violation of the Local Patent Rules, it should be stricken.

The relevant facts are set forth below:

May 5, 2011:   The Court issued its claim construction order including a definition for the term "human antibody" that appears in each of the asserted claims (D.I. 162).

May 10, 2011:   Centocor wrote to Abbott advising that "in view of the Court's construction of the term 'human antibody' to mean 'an antibody that is derived from human DNA and not the DNA of any non-human species' we plan to seek leave to amend our noninfringement contentions to present our position that CNTO 1275/Stelara is not a human antibody pursuant to this definition.  In particular, we plan to amend our contentions to state that CNTO 1275/Stelara is an antibody that contains at least one CDR that is derived from the DNA of a non-human species." (Ex. 2, Letter from A. Verrecchio to J. Oyloe dated May 10, 2011).

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
*Attorneys at Law*

The Honorable F. Dennis Saylor, IV
July 11, 2011
Page 2

May 16, 2011: The parties exchange opening expert reports. Abbott provides Centocor with a 61 page report from Dr. James Marks, M.D., Ph.D., on the issue of infringement. (Ex. 3, Expert Report of James D. Marks, M.D., PH.D.).

May 17, 2011: Centocor writes to Abbott to seek clarification of Dr. Marks' opinions. Specifically, Centocor asks whether Abbott intends to supplement Dr. Marks' report relative to the Court's construction of the term 'human antibody." (Ex. 4, Letter from A. Verrecchio to R. Weiner dated May 17, 2011).

May 17, 2011: Abbott writes to Centocor confirming that Dr. Marks' report and opinions reflect his consideration of the Court's construction of the term "human antibody." Abbott also advises that Dr. Marks does not intend to supplement his report "at this time." (Ex. 5, Letter from R. Weiner to A. Verrecchio dated May 17, 2011).

May 31, 2011: During a conference call with the Court, the Court directs the parties to file their amended contentions (Abbott infringement contentions and Centocor invalidity and non-infringement contentions) by no later than June 10, 2011. (Ex. 6, Electronic Clerk's Notes of May 31, 2011 Status Conference).

June 10, 2011: The parties exchange amended contentions. Abbott cites to the Marks Report and exhibits in support of its contentions (Ex. 7, Abbott's Third Supplemental Contentions) but does not present the theories now included in Dr. Marks' Supplemental Expert Report.

June 28, 2011: The parties participate in a status conference with the Court. Abbott initiated the call to seek a further extension of the time for responding to the expert report of Gerald Murphy (Centocor had already given Abbott a two week extension for all expert reports and Abbott wanted an additional month to complete one of its reports). The Court granted Abbott an extension through July 22, 2011, for providing a rebuttal report on the issues addressed by Centocor's expert, Mr. Murphy. Abbott does not indicate during the call that it intended to rely on infringement positions not set forth in its Contentions. (Ex. 8, Electronic Clerk's Notes of June 28, 2011 Status Conference).

June 29, 2011: The parties exchange rebuttal reports (except for Abbott's rebuttal to Mr. Murphy). Abbott serves Centocor with a 268 page rebuttal report from Dr. Marks. (Ex. 9, Rebuttal Expert Report of James D. Marks, M.D., PH.D.).

July 1, 2011: While the parties are trying to arrange a comprehensive deposition schedule, Abbott advises Centocor that Dr. Marks has clinical obligations and family

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
Attorneys at Law

The Honorable F. Dennis Saylor, IV
July 11, 2011
Page 3

>vacation that limits his availability such that his deposition must be taken on Saturday, July 16, in Palo Alto, California (Ex. 10, E-mail from J. Oyloe to A. Verrecchio dated July 1, 2011). By this time, Centocor had already agreed to depose three other Abbott experts this week (Abbott's experts Rebecca Rich, Geoffrey Davis and Julie Davis, Ex. 10, E-mail from A. Verrecchio to J. Oyloe dated July 1, 2011).

July 7, 2011:   Dr. Marks executes a 25 page Supplemental Expert Report on issues of infringement. (Ex. 1 at 24).

July 8, 2100:   Abbott waits until the close of business on Friday to send Dr. Marks' Supplemental Expert Report to Centocor, even though Dr. Marks signed and dated his report the day before. There is no explanation, and there had been no prior notice, of Abbott's intention to do this (Ex. 11, E-mail from J. Oyloe to A. Verrecchio dated July 8, 2011). In addition to providing a new theory of "literal" infringement, *this is the first time Abbott ever suggested any theory of infringement under the doctrine of equivalents*. (Ex. 1 at 20-23).

July 11 week:   There are three expert depositions scheduled for this week – before the deposition of Dr. Marks. (Abbott has provided reports from nine different experts and will provide a report from a 10th expert on July 22, so scheduling has been a challenge).

The Supplemental Expert Report from Dr. Marks is untimely and improper.

In construing the term "human antibody," the Court adopted Abbott's proposed claim construction verbatim (D.I. 132 at 8). Before Dr. Marks provided his original expert report on infringement, Centocor expressly advised Abbott that it was Centocor's position that Stelara is not a "human antibody" under the Court's claim construction. Indeed, Centocor went so far as to point out the particular region of its antibody – a CDR – that is derived from the DNA of a non-human species. Abbott was on notice of this before Dr. Marks submitted his original infringement report, but, rather than addressing the point in Dr. Marks' opening infringement report, it held back until weeks after Centocor had served its responsive expert reports on infringement.

When Abbott provided its Third Supplemental Infringement Contentions to Centocor on June 10, it did not include the positions articulated in Dr. Marks' Supplemental Expert Report. Abbott did not seek Centocor's consent to supplement its contentions, nor did it seek the Court's permission to do so. Abbott simply served this Supplemental Expert Report on Centocor a week

**AKIN GUMP**
**STRAUSS HAUER & FELD** LLP
— Attorneys at Law

The Honorable F. Dennis Saylor, IV
July 11, 2011
Page 4

before the expert is due to be deposed.  This is the type of last-minute ambush that the Local Rules' orderly presentation of contentions is designed to prevent.

      The Supplemental Marks Report is in contravention of the Federal Rules of Civil Procedure and the Local Patent Rules and should be stricken.  Under different circumstances, this issue could have waited until after Centocor deposed Dr. Marks and could have been decided through a written motion to strike.  But Centocor already has 330 pages of substantive reports – excluding this supplement – to cover during Dr. Marks' deposition this Saturday.  Further, the particular timing of this supplement makes it difficult for Centocor's counsel to confer adequately with its own expert before this deposition.  Since we have been advised that the deposition of Dr. Marks must be taken this Saturday, we are bringing it to the Court's attention now to seek guidance on how to proceed.

      Respectfully submitted,

      *Dianne Elderkin*

      Dianne B. Elderkin

Encl.
cc:    Robert J. Gunther (via e-mail)