# EXHIBIT 3



Not Reported in F.Supp.2d, 1998 WL 832609 (S.D.N.Y.), 49 U.S.P.Q.2d 1361
**(Cite as: 1998 WL 832609 (S.D.N.Y.))**

United States District Court, S.D. New York.
Jack HERMAN, Plaintiff,
v.
WILLIAM BROOKS SHOE COMPANY, Cabela's
Inc., Gander Mountain, Inc., Gates–Mills, Inc., W.L.
Gore & Associates, Inc., L.L. Bean, Inc., Recreational
Equipment, Inc., Raven Industries, Inc., Red Wing
Shoe Company, Inc., Rocky Shoes and Boots, Inc.,
Norm Thompson Outfitters, Inc., and U.S. Cavalry,
Inc., Defendants.

No. 95 CIV. 1324(PKL).
Dec. 1, 1998.

John F. Ward, Esq., Ward & Olivo, New York.

John M. Calimafde, Esq., Hopgood, Calimafde, Kalil
& Judlowe, New York.

David H. Pfeffer, Esq., Morgan & Finnegan, L.L.P.,
New York.

MEMORANDUM ORDER
LEISURE, District J.
   *1 Plaintiff brings this action against various
companies for alleged infringement of his Patent
Number 4,550,446 (the "Patent"), regarding a water-
proof, yet breathable, sock. Pursuant to Rule 59 of the
Federal Rules of Civil Procedure and Local Civil Rule
6.3 of the Local Rules of the United States District
Courts for the Southern and Eastern Districts of New
York, plaintiff moves for reconsideration of the
Court's Opinion and Order, dated April 13, 1998,
separating bench trial of the issue of inequitable
conduct from jury trial of the issues of patent validity
and infringement.

   For the reasons stated in this Memorandum Or-
der, plaintiff's motion is GRANTED.

BACKGROUND
I. The Patent Application Proceedings
   The Court presumes familiarity with the relevant
facts set forth in several previous decisions in this
matter. *See Herman v. William Brooks Shoe Co., No.
95 Civ. 1324, 1996 WL 208198 (S.D.N.Y. Apr.26,
1996)* [hereinafter "*Herman I* "]; *Herman v. William
Brooks Shoe Co., No. 96–1421, 1997 WL 130313
(Fed.Cir. March 21, 1997)* [hereinafter "*Herman II* "];
*Herman v. William Brooks Shoe Co., No. 95 Civ.
1324, 1998 WL 171485 (S.D.N.Y. Apr.13, 1998)*
[hereinafter "*Herman III* "]. Briefly stated, plaintiff
conceived of an idea to make socks that are imper-
vious to water outside the sock, but that allow water-
vapor generated by the foot to be expelled. Such a
sock likely would prove quite useful to runners and
other outdoor-sports enthusiasts.

   On March 31, 1982, plaintiff filed a patent ap-
plication for his sock invention with the Patent and
Trademark Office ("PTO"). On October 17, 1983, the
PTO rejected all of the claims in plaintiff's application
for failure to comply with statutory requirements.
Plaintiff subsequently amended his application and the
PTO again rejected it, this time on the ground that
plaintiff's invention was unpatentable due to "prior
art", including a patent previously issued to another
inventor. In June 1984, plaintiff's attorney filed a
written response to the PTO's most recent rejection of
his application and conducted an interview with the
patent examiner. In October 1984, the PTO rejected
plaintiff's application for the third time, based on the
"prior art" previously cited by the PTO as well as on
two additional patents issued to other inventors.

   On March 22, 1985, plaintiff submitted an affi-
davit (the "Affidavit") to the PTO attempting to es-
tablish that plaintiff had completed his invention be-
fore the filing of the applications underlying the pa-
tents cited by the PTO. On that same date, plaintiff
filed additional amendments to his patent application
(the "Amendments") setting forth, among other
things, reasons why the patents cited by the PTO are
purportedly irrelevant to plaintiff's application.

   Soon after plaintiff's submission of the Affidavit
and Amendments, the PTO withdrew its objections
and the Patent issued.

II. Defendants' Inequitable Conduct Defense
   *2 Plaintiff alleges defendants have willfully in-

Not Reported in F.Supp.2d, 1998 WL 832609 (S.D.N.Y.), 49 U.S.P.Q.2d 1361
**(Cite as: 1998 WL 832609 (S.D.N.Y.))**

fringed the Patent. Defendants raise a number of defenses, including that (i) the Patent is unenforceable due to plaintiff's inequitable conduct before the PTO; and (ii) the Patent is invalid due to "prior art"—including the patents cited in the PTO's denials of plaintiff's application—which "prior art" "anticipates" plaintiff's invention and/or renders it "obvious" to a person of ordinary skill in the art.

The proceedings thus far in this case have focused on defendants' claim that plaintiff engaged in inequitable conduct before the PTO. Inequitable conduct consists of "affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive." *Baxter Int'l, Inc. v. McGaw, Inc.,* 149 F.3d 1321, 1327 (Fed.Cir.1998); *see also ATD Corp. v. Lydall, Inc.,* Nos. 97–1308, 97–1356, 1998 WL 690811, at *11 (Fed.Cir. Oct.6, 1998).

Determination of a claim of inequitable conduct involves a two-step process. First, the court must assess whether there is clear and convincing evidence both that the information at issue is material and that the patent applicant possessed an intent to deceive. *See Baxter,* 149 F.3d at 1327. Second, if such a threshold showing is made, then the court must weigh the strength of the evidence of materiality and intent and determine the ultimate question of whether the party's conduct is "so culpable that the patent should be held unenforceable." *Id.* In that weighing process, "the more material the [information], the less evidence of intent will be required in order to find that inequitable conduct has occurred." *Id.*

By Memorandum Order dated April 26, 1996, the Court granted defendants' motion for summary judgment that plaintiff engaged in inequitable conduct in obtaining the Patent. *See Herman I, 1996 WL 208198, passim.* The Court found that the Affidavit plaintiff submitted to the PTO falsely states that plaintiff completed his invention prior to the filing of the applications for the patents cited by the PTO. *See id.* at *4–5. The Court held that the false information is material *per se* under controlling law. *See id.* at *5. In addition, the Court found no genuine issue of material fact that plaintiff intended to deceive the PTO by submitting the affidavit. *See id.* at *6–7. The Court further found no genuine issue of material fact that in view of the evidence of materiality and intent, plaintiff's submission of the Affidavit constitutes inequita-

ble conduct. *See id.* at *7.

By decision dated March 21, 1997, the United States Court of Appeals for the Federal Circuit affirmed the Court's determination on the issue of materiality and reversed with respect to the Court's intent finding. *See Herman II, 1997 WL 130313, at *2–3.* As to the intent issue, the Federal Circuit found that inconsistencies in the record established a genuine issue of material fact as to whether plaintiff intended to deceive the PTO by submitting the Affidavit. *See id.* at *2–3. The Federal Circuit remanded for this Court to conduct an evidentiary hearing as to whether plaintiff possessed the requisite intent. *See id.* at *3.

**\*3** By Opinion and Order dated April 13, 1998, the Court granted defendants' motion for separate bench trial of the outstanding issues regarding plaintiff's alleged inequitable conduct. *See Herman III, 1998 WL 171485, at *3.* The Court relied on its power to bifurcate trial pursuant to Rule 42(b) of the Federal Rules of Civil Procedure and on the fact that inequitable conduct is considered a purely "equitable" doctrine triable by courts. *See id.* at *3. Plaintiff now moves for reconsideration of that decision, asserting that he is entitled to jury trial of defendants' inequitable conduct claim.

DISCUSSION

I. Standard of Decision on Motion for Reconsideration
Pursuant to Fed.R.Civ.P. 59 and Local Civil Rule 6.3, a party may move to alter or amend a judgment no later than ten days after its entry. The standard for granting a motion for reconsideration is "strict", and generally will be denied "unless the moving party can point to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Shrader v.. CSX Trans., Inc.,* 70 F.3d 255, 257 (2d Cir.1995); *see also Adams v. United States,* 686 F.Supp. 417, 418 (S.D.N.Y.1988). A party moving for reconsideration may not, however, advance any facts, issues, or arguments not previously presented to the Court.[FN1] *See First Fin. Ins. Co. v. Allstate Interior Demolition Corp.,* No. 96 Civ. 8243, 1998 WL 567900, at *3 (S.D.N.Y. Sept.3, 1998).

> FN1. Defendants do not contend that any aspect of plaintiff's motion for reconsideration was not previously raised.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832609 (S.D.N.Y.), 49 U.S.P.Q.2d 1361
**(Cite as: 1998 WL 832609 (S.D.N.Y.))**

II. Trial of Inequitable Conduct Defense

Analysis of whether there is a Seventh Amendment right to jury trial of a given claim generally hinges on whether the claim was considered one "at common law" or one "at equity" in late 18th-century England. *See, e.g., Feltner v. Columbia Pictures Television, Inc.,* 523 U.S. 340, ——, 118 S.Ct. 1279, 1284, 140 L.Ed.2d 438 (1998). In the instant case, there are three principal claims: (i) plaintiff's claim that defendants infringed plaintiff's Patent; (ii) defendants' claim that the Patent is invalid due to "prior art"; and (iii) defendants' claim that the Patent is unenforceable due to plaintiff's inequitable conduct. It is undisputed that the infringement and validity claims are considered ones "at common law" and, thus, are triable by jury. The treatment of defendants' inequitable conduct claim is somewhat more complicated and is the subject of plaintiff's present motion.

The doctrine of inequitable conduct derives from the doctrine of unclean hands and is, therefore, considered to be one "at equity." *See Gardco Mfg., Inc. v. Herst Lighting Co.,* 820 F.2d 1209, 1212 (Fed.Cir.1987); *see also Cabinet Vision v. Cabnetware,* 129 F.3d 595, 599 n. 4 (Fed.Cir.1997). Consequently, both parties agree that if the inequitable conduct claim were the only one in the action, then there would be no constitutional right to jury trial of that claim.

Pursuant to the Supreme Court's decision in *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959), however, jury trial of factual issues raised by an equitable claim is required if the issues are common to factual issues raised by legal claims in the case. In the *Beacon Theatres* case, plaintiff sought declaratory and injunctive relief against defendant under the Sherman Act. *See id.* at 501–03. Defendant counterclaimed and cross-claimed, raising antitrust allegations that shared a common fact issue with plaintiff's antitrust claim as to whether plaintiff and defendant were competitors. *See id.* at 503–04. The district court chose to determine the common factual issue in a bench trial, to be followed by jury trial of the remaining issues raised by defendant's antitrust claims. *See id.*

**\*4** The Supreme Court reversed, holding that determination of the common factual issue by the district court violated defendant's Seventh Amendment right to jury trial of that issue. *See id.* at 506–07.

Given the importance of jury trial in the constellation of constitutional rights, the Court held that determination by courts of issues common to jury-triable claims is warranted "only under the most imperative circumstances". *Id.* at 510–11.

The Supreme Court has since reaffirmed on numerous occasions its holding in *Beacon Theatres* that the constitutional right to jury trial of legal claims demands that factual issues common between legal and equitable claims be determined by jury. *See Lytle v. Household Manu., Inc.,* 494 U.S. 545, 550–52, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990); *Parklane Hosiery Co., Inc. v. Shore,* 439 U.S. 322, 334, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Ross v. Bernhard,* 396 U.S. 531, 537–38, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970); *Meeker v. Ambassador Oil Corp.,* 375 U.S. 160, 160, 84 S.Ct. 273, 11 L.Ed.2d 261 (1963); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 472, 479, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962).

Plaintiff contends defendants' inequitable conduct claim has factual issues in common with the jury-triable claim of the Patent's validity. Specifically, plaintiff argues that if the Court reaches "step two" of the inequitable conduct analysis (weighing of the materiality and intent elements), then the Court must address how important a reasonable patent examiner would have found the Affidavit given plaintiff's separate arguments in the Amendments that the patents cited by the PTO are irrelevant. *See Regents of the Univ. of California v. Eli Lilly & Co.,* 119 F.3d 1559, 1574 (Fed.Cir.1997) ("Information is material if a reasonable examiner would have considered it important to the patentability of the claim ."). Plaintiff argues that assessment of the persuasiveness of the arguments in the Amendments overlaps with the jury's assessment of the Patent's validity, since both concern the relevance of the "prior art" cited by the PTO.

The Court agrees with plaintiff. A principal consideration in determining the level of materiality of the Affidavit is the apparent importance of that submission in light of plaintiff's other submissions, including the Amendments. As part of that assessment, the Court must determine whether the arguments in the Amendments seem persuasive, *i.e.,* whether plaintiff appears to have established in the Amendments that the "prior art" cited by the PTO is irrelevant.

In making such an assessment, the Court would

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832609 (S.D.N.Y.), 49 U.S.P.Q.2d 1361
**(Cite as: 1998 WL 832609 (S.D.N.Y.))**

address the same factual issue the jury is to decide with respect to defendants' invalidity claim. Moreover, the Court's assessment could preclude jury consideration of that factual issue. If the Court were to find the arguments in the Amendments unpersuasive, then the Court would be likely further to find the Affidavit submitted by plaintiff was the determinative factor in the PTO's decision to issue the Patent. Assuming an adequate showing of intent were made, the Court might then find plaintiff engaged in inequitable conduct. In that case, the jury would be precluded from assessing the "prior art" issue already addressed by the Court, since the Court would have deemed the Patent unenforceable. The Court would, in other words, be "resolv[ing] issues common to both [the inequitable conduct and validity] claims, issues that otherwise would ... be[ ] resolved by a jury." *Lytle,* 494 U.S. at 551–52.

**\*5** At the same time, a possibility of inconsistent factual findings would exist if the Court were to weigh the inequitable conduct issues prior to jury trial of the invalidity claim. For example, if the Court found plaintiff's arguments in the Amendments persuasive that the "prior art" cited by the PTO is irrelevant, then the Court might find the Amendments, rather than the Affidavit, were likely to have been the principal consideration of the PTO in issuing the Patent. In view of that determination, the Court might find that the lack of importance of the Affidavit, considered in conjunction with the evidence of intent, does not rise to the level of inequitable conduct. Jury trial of the invalidity claim might then proceed, with the jury potentially making a conflicting factual finding that the "prior art" cited by the PTO invalidates the Patent.

*Gardco Manufacturing, Inc. v. Herst Lighting Co.,* 820 F.2d 1209 (Fed.Cir.1987), cited by defendants, is inapposite. In that case, the district court held that plaintiff's failure to disclose "prior art" constituted inequitable conduct. *Id.* at 1211. In considering the materiality of the "prior art", the district court found that it was highly material, but did not find it so significant that its disclosure to the PTO would have changed the PTO's decision to issue plaintiff a patent. *See id.* at 1211, 1213. Thus, the district court's finding as to the level of materiality of the "prior art" could not have precluded, or conflicted with, jury findings as to the separate invalidity claim. *See id.; see also id.* at 1214 (validity arguments made in context of inequitable conduct claim "might have been relevant if the district court had found that 'but for' the failure to disclose the [information], the patent would not have issued").

By contrast, as described above, in the instant case it is possible that weighing of the inequitable conduct issues will result in a determination by the Court that arguments made in the Amendments were likely to have caused PTO's change in position. Moreover, as also described, such a finding could preclude, or conflict with, jury findings on the invalidity claim. Given those possibilities, preservation of plaintiff's Seventh Amendment jury trial right dictates that a jury assess the significance of the "prior art" addressed by the Amendments before the Court reaches "step two" of the inequitable conduct analysis. Following the jury trial, the Court would be able to incorporate the jury's findings as to the importance of the Amendments into the Court's weighing of the inequitable conduct claim.

The only aspect of plaintiff's motion remaining to be addressed is the appropriate treatment of the "step one" issue of whether a threshold showing of intent to deceive has been made. The intent issue is not common to any jury-triable issue; therefore, Court determination of the issue is appropriate. The Court finds, however, that bench trial of this single issue prior to the jury trial would not be the most efficient use of judicial resources. *See* Fed.R.Civ.P. 42(b). Therefore, pursuant to Rule 39(c) of the Federal Rules of Civil Procedure, the issue of intent will be presented to the jury, in its advisory capacity, along with those issues and claims that are jury-triable. *See, e.g., Ultradent Products v. Life–Lite Cosmetics,* 127 F.3d 1065, 1072–73 (Fed.Cir.1997). Following the jury trial, the Court will make findings as to the intent issue and, if necessary, as to "step two" of the inequitable conduct analysis.

CONCLUSION

**\*6** For the reasons stated above, defendant's motion for reconsideration is hereby GRANTED. The parties shall appear for a pre-trial conference before this Court at the United States Courthouse, 500 Pearl Street, New York, New York, on December 18, 1998, at 10:00 a.m., in Courtroom 18B.

SO ORDERED.

S.D.N.Y.,1998.

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 1998 WL 832609 (S.D.N.Y.), 49 U.S.P.Q.2d 1361
**(Cite as: 1998 WL 832609 (S.D.N.Y.))**

Herman v. William Brooks Shoe Co.
Not Reported in F.Supp.2d, 1998 WL 832609
(S.D.N.Y.), 49 U.S.P.Q.2d 1361

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.