# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ABBOTT GMBH & CO., KG; ABBOTT BIORESEARCH CENTER, INC.; and ABBOTT BIOTECHNOLOGY LTD., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 09-11340-FDS |
| v. | ) ) ) | |
| CENTOCOR ORTHO BIOTECH, INC., and CENTOCOR BIOLOGICS, INC., | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM AND ORDER ON
## MOTION FOR RECONSIDERATION

**SAYLOR, J.**

This is a patent dispute involving a pharmaceutical product. Plaintiffs Abbott GmbH & Co., KG; Abbott Bioresearch Center, Inc.; and Abbott Biotechnology Ltd. (collectively "Abbott") seek a judgment that the drug Stelara, manufactured by defendants Centocor Ortho Biotech, Inc., and Centocor Biologics, Inc. (collectively "Centocor"), infringes its patents. Centocor seeks declarations of non-infringement and invalidity of Abbott's patents and seeks review of a decision of the Patent and Trademark Office's ("PTO") Board of Patent Appeals and Interferences.

The Court issued its final claim construction order on May 5, 2011, and ruled on cross-motions for summary judgment relating to validity and infringement on March 9, 2012. Centocor has moved for reconsideration of two aspects of the March 9 ruling. For the following reasons, the motion will be denied. However, the Court will amend the March 9 memorandum and order

to clarify its construction of the scope of certain claims of the '485 patent.[1]

## I. Background

The relevant statutory, factual, and procedural background is provided in the amended memorandum and order on the parties' cross-motions for summary judgment.

## II. Standard of Review

The Court has "substantial discretion and broad authority" to grant a motion for reconsideration pursuant to Fed. R. Civ. P. 59(e). *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 81-82 (1st Cir. 2008). A motion for reconsideration will be granted upon a showing of (1) a "manifest error of law," (2) new evidence, or (3) a misunderstanding or other error "not of reasoning but apprehension." *Id.* Rule 59(e) motions cannot be used to "advance a new argument that could (and should) have been presented prior to the district court's original ruling." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 11 (1st Cir. 2003). Nor is a Rule 59(e) motion an appropriate means to "repeat old arguments previously considered and rejected." *Nat'l Metal Finishing Co., Inc. v. Barclays American/Commercial, Inc.*, 899 F.2d 119, 123 (1st Cir. 1990).

## III. Analysis

### A. Written Description

The first aspect of the March 9 Order that Centocor contests is the denial of its motion for summary judgment that claims 1, 3, 4, 6-11, 15, 18, 19, and 24-26 of the '485 patent (the "p19 claims") are invalid for failure to satisfy the written-description requirement of 35 U.S.C. § 112.[2]

---

[1] The amended memorandum and order will also correct a number of typographical errors, correct minor errors noted by Centocor, and make other stylistic and editorial changes.

[2] The March 9 memorandum and order incorrectly listed the claims that were subject to Centocor's motion as claims 1-3, 6-11, 15, 18-19, and 24-26 of the '485 patent. (March 9 Order at 44). The amended memorandum and order will set forth the corrected list.

### 1. Prior Decision

The claims at issue are generally directed to antibodies to interleukin-12 ("IL-12") and interleukin-23 ("IL-23"). IL-12 is composed of two smaller molecules, a p35 subunit and a p40 subunit.[3] IL-23 contains the same p40 subunit that exists in IL-12, but with a p19 subunit forming its second component instead of the p35 subunit contained in IL-12. The specification of the '485 patent makes one reference to the p19/p40 molecule that is IL-23:

> I. Binding to a Novel IL-12 Molecule
>
> An alternative IL-12 heterodimer has been described, in which the p35 subunit is replaced by a novel p19 molecule. P19 was identified using 3D homology searching for IL-6/IL-12 family members, and is synthesized by activated dendritic cells. P19 binds to p40 to form a p19/p40 dimer, which has IL-12-like activity, but is not as potent as the p35/p40 heterodimer in IFNγ production. Antibodies which recognize p40 alone, but preferably in the context of a p70 molecule (e.g., J695 and Y61, see Example 3H) are expected to also neutralize both the p35/p40 molecules and the p19/p40 molecules.

('485 Patent, col. 111). Thus, the specification indicated the inventor's expectation that because IL-12 and IL-23 share a common p40 subunit, antibodies that bind to that subunit in IL-12 will also do so in IL-23.

In its motion for summary judgment, Centocor contended that such an expectation alone was insufficient to support claims to antibodies to antigens other than IL-12 because the patent did not disclose the structure of the p19 subunit that distinguishes IL-23. The Court denied that motion because it found that there were factual disputes as to whether the patents' disclosure of various antibodies within the scope of the p19 claims was sufficient to support the full breadth of those claims.

---

[3] The notation used to describe these subunits indicates their molecular mass. Thus, the p35 subunit of IL-12 has a molecular mass of 35 kilodaltons, while the p40 subunit has a mass of 40 kilodaltons.

### 2. The Claims

Centocor now contends that the Court incorrectly interpreted the scope of claims 1, 11, 15, 18, 19, and 24-26 in reaching its decision.[4] Those claims provide:

1. A pharmaceutical composition comprising an isolated human antibody, or antigen-binding portion thereof, which is capable of binding to an epitope of the p40 subunit of IL-12, and further comprising an additional agent.

11. A composition of any one of claims 1-4, wherein the antibody, or antigen-binding portion thereof, dissociates from the p40 subunit of IL-12 with a $K_d$ of $1\times10^{-10}$ M or less or a $K_{off}$ rate constant of $1\times10^{-3}$ $s^{-1}$ or less, as determined by surface plasmon resonance.

15. A pharmaceutical composition comprising an isolated human antibody, or antigen-binding portion thereof, which is capable of binding to an interleukin comprising a p40 subunit, and further comprising an additional agent.

18. The position [sic] of claim 15, wherein the interleukin comprises a p40 subunit and a p19 subunit.[5]

19. The composition of any one of claims 15-18 wherein the antibody, or antigen binding portion thereof, binds to an epitope of the p40 subunit.

24. The composition of claim 15, wherein the antibody, or antigen binding portion thereof, dissociates from the p40 subunit of the interleukin with a $K_d$ of $1\times10^{-10}$ M or less or a $k_{off}$ rate constant of $1\times10$-3 $s^{-1}$ or less, as determined by surface plasmon resonance.

25. The composition of claim 15, wherein the antibody, or antigen binding portion thereof, neutralizes a biological activity of the interleukin.

26. The composition of claim 15, wherein the antibody, or antigen binding portion thereof, inhibits phytohemagglutinin blast proliferation in an in vitro PHA assay with an $IC_{50}$ of $1\times10^{-9}$ M or less, or which inhibits human IFNγ production with an $IC_{50}$ of $1\times10^{-10}$ M or less.

---

[4] Centocor does not seek reconsideration of the March 9 order with respect to claims 3, 4, or 6-10.

[5] The anomalous use of the word "position" in claim 18 appears to be an error. The parties treat the claim as if it referred to a "composition," as will the Court for purposes of this motion.

('485 Patent, col. 381-83).

Centocor's motion concerns two sets of these claims. The first set consists of claims 15, 18, 25, and 26, which are directed to antibodies to antigens that contain a p40 subunit. Claim 15 refers to an antibody "capable of binding to an interleukin comprising a p40 subunit . . . ." In patent claims, the term "comprising" is understood to mean "including but not limited to." *CIAS, Inc. v. Alliance Gaming Corp.*, 504 F.3d 1356, 1360-61 (Fed. Cir. 2007).[6] Claim 15 is thus directed to antibodies for interleukins that have a p40 subunit, regardless of what other subunit they may have. It is not limited to antibodies that bind to a particular epitope on those interleukins.[7] Claims 18, 25, and 26 are dependent on claim 15 and do not include any limitations with respect to the epitope to which the claimed antibody must bind. Centocor is therefore correct that "[e]ach of these claims recites antibodies that bind to an antigen that *has* a p40 subunit, but none of these claims requires that the antibodies *bind to* that p40 subunit." (Def.'s Mem. at 6).

The second set of claims at issue consists of claims 1, 11, 15, 19, 25, and 26, which are directed to antibodies that bind to a class of antigens that includes, but is not limited to, IL-12 and IL-23. Claim 1 refers to an antibody capable of binding to "an epitope of the p40 subunit of IL-12." Claim 11 is dependent on claim 1, but limits its scope to antibodies that dissociate from the subunit at a rate that is below a particular threshold. Thus, claims 1 and 11 encompass antibodies that bind to an epitope on the p40 subunit, but are not limited to antibodies that do so while the

---

[6] In ordinary English—that is, outside the patent claim context—the term "comprise" means to contain, or to consist of, as in the expression, "the whole comprises the parts." *See* BRYAN A. GARNER, GARNER'S MODERN AMERICAN USAGE 175 (3d. ed. 2009).

[7] An epitope is a portion of an antigen to which an antibody binds.

5

p40 subunit is bound to the p35 subunit to form IL-12.[8] The remaining claims in the second subset are also not limited to antibodies that bind to a particular interleukin. As previously noted, claim 15 claims antibodies that bind to "an interleukin comprising a p40 subunit." Claims 19, 24, and 25 each incorporate claim 15 and add an additional limitation: claim 19 requires that the antibody bind "to an epitope of the p40 subunit," claim 24 requires that it dissociates at a rate below a particular threshold, and claim 25 requires that it neutralize a biological activity of the interleukin. Finally, claim 26 is based on claim 25 and adds a limitation that the neutralization occur within a specified range of $IC_{50}$ values.[9] Thus, none of the claims in the second sets are limited to antibodies that bind to IL-12 or IL-23; rather, they claim antibodies to interleukins that share certain of the defining characteristics of those antigens.

### 3. Centocor's Objections

Centocor contends that two aspects of the Court's March 9 memorandum and order suggest that the Court understood the scope of those claims to be narrower than it in fact is, and that the error was significant to the denial of Centocor's summary judgment motion. Specifically, Centocor asserts that the Court interpreted the first set of the claims at issue to encompass only antibodies that bind to a particular epitope (the p40 subunit) and the second set to encompass only antibodies to IL-12 and IL-23.

---

[8] Although these claims appear to be directed to IL-12 specifically, claim 2 incorporates claim 1 but adds the limitation "when the p40 subunit is bound to the p35 subunit of IL-12." ('485 patent col. 381). By the doctrine of claim differentiation, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005), claim 1 cannot be so limited. This inference raises the question of what significance exists in the reference to "the p40 subunit *of IL-12*." The notation embodied in the label, "p40," refers only to molecular weight, not protein structure. Thus, it is evident that claim 1 includes the words "of IL-12" not to limit the antigen reference to p40 when it is bound to the p35 subunit of IL-12, but simply to specify what molecule it refers to.

[9] $IC_{50}$ is a measure of the neutralizing effect of an antibody.

In reaching its conclusion, the Court relied in part on the statement in the patent specification that "[a]ntibodies which recognize p40 alone, but preferably in the context of a p70 molecule . . . are expected to also neutralize both the p35/p40 molecules and the p19/p40 molecules." ('485 Patent, col. 111). The Court reasoned that by describing "a feature IL-12 and IL-23 have in common—a specific p40 subunit to which the disclosed antibodies bind," that statement supported Abbott's argument that its disclosure of antibodies that bind to the subunit adequately represented the p19 claims. (March 9 Order at 46-47). That conclusion does not presuppose that the claims encompass only antibodies that bind to an epitope on the p40 subunit or only those that bind to IL-23.

Centocor also contends that the Court explicitly construed the claims more narrowly than their text allows. The Court described the p19 claims that were the subject of Centocor's summary judgment motion as "claims that encompass antibodies that bind to the p40 subunit of both IL-12 and IL-23." It also referred to the claimed subject matter as "antibodies that bind to the p40 subunit that occurs in both IL-12 . . . and IL-23 . . . ." As Abbott points out, these statements are accurate, albeit incomplete, because they use language of inclusion rather than exclusion and so do not unduly limit the scope of the claims. Nonetheless, they are misleading as descriptions of the p19 claims, because they do not explain that the claims also encompass antibodies that bind to other epitopes of the interleukins and may encompass antibodies that bind to other interleukins entirely. The Court will therefore issue an amended memorandum and order on the motions of summary judgment to clarify its description of p19 claims.

It is worth noting, however, that Centocor should not be surprised by the language used in the original memorandum and order. The focus of Centocor's argument at that stage was on the

7

sufficiency of the patent's written description with respect to the p19 subunit of IL-23 and antibodies to that interleukin, not of other potential antigens, so the outer bounds of the claims were not put directly at issue. Moreover, the description of the p19 claims adopted by the Court corresponds almost verbatim to the summary of those claims that Centocor itself used in its briefings. In those filings, Centocor represented that the claims "encompass antibodies that bind to a p40 subunit that is bound to a p19 subunit." (Def.'s Undisputed Fact # 1). It also described the claims as "broad enough to encompass not only antibodies that bind to IL-12, but also antibodies that bind to 'the p40 subunit of IL-12'—when that subunit is bound to the p35 subunit of IL-12 *or* when it is bound to 'a p19 subunit.'" (Def.'s Mem. on Mot. # 3, at 2). If Centocor believed its motion hinged on a precise articulation of the outer limits of those claims, it ought to have used more precise language itself.

In any event, Centocor's motion for reconsideration is premised on a misunderstanding of the basis of the Court's denial of summary judgment. Summary judgment is inappropriate not because the Court interprets the claims of the '485 patent to be narrowly tailored, but because factual disputes exist as to whether the disclosed antibodies are adequately representative of the scope of subject-matter that is claimed. This fact-bound issue, which may be a mere matter of degree, is better suited to resolution by the finder of fact. *See Capon v. Eshhar*, 418 F.3d 1349, 1360 (Fed. Cir. 2005).

### B. Anticipation by Stelara

The second aspect of the March 9 Order that Centocor contests is the denial of its motion for summary judgment that claims 64 and 70 of the '128 patent and claims 1-4, 6-11, 15-19, and 24-26 of the '485 patent are invalid because they were anticipated by Centocor's invention of

Stelara. The Court found that disputes of fact as to the relative priority of invention as between the parties precluded summary judgment that Stelara anticipated the patents within the meaning of 35 U.S.C. § 102(g).

Centocor renews its objection that Abbott cannot prove a priority date that is earlier than Stelara's purported invention date of April 30, 1998, because Stuart Friedrich, a scientist named as an inventor on the patents, did not join Abbott's research team until August 1998.[10] Because the standard for inventorship under the patent act requires that "[a] person must contribute to the conception of the claimed invention to qualify as a joint inventor," *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297, 1303 (Fed. Cir. 2010), Centocor asserts that the inclusion of Mr. Friedrich as a joint inventor in the patents proves that conception was not completed before August 1998.

In the March 9 Order, the Court concluded that questions about Friedrich's status as a joint inventor did not warrant summary judgment for Centocor on the issue of priority because other evidence suggested that Abbott actually invented specific embodiments within the scope of the claims first. With respect to the relationship between Friedrich's arrival and Abbott's invention date, the Court considered Federal Circuit precedents holding that priority as to a genus claim dates back to the invention of any species within that genus. *See In re Zletz*, 893 F.2d 319, 323 (Fed. Cir. 1989) ("Priority as to a genus may indeed be shown by prior invention of a single species . . . but the genus will not be patentable to an applicant unless he has generic support therefor."); *see also In re Stempel*, 44 C.C.P.A. 820, 826 (1957) ("[U]nder the law all the

---

[10] For the purposes of deciding that motion, the Court assumed that Stelara was invented by April 30, 1998. Centocor now contends that it has "proven an April 30, 1998 invention date" and attempts to shift the burden of proving priority to Abbott. (Def.'s Mem. at 12). This assertion misstates the Court's order, which merely assigned Stelara that invention date for purposes of that motion. As the defendant in this infringement action, Centocor has the burden of proving invalidity on anticipation grounds by clear and convincing evidence. *Apotex USA, Inc. v. Merck & Co., Inc.*, 254 F.3d 1031, 1036 (Fed. Cir. 2001).

9

applicant can be required to show is priority with respect to so much of the claimed invention as the [prior art] reference happens to show. When he has done that he has disposed of the reference.").[11] Because priority to a genus claim requires less than what is required to establish patentability, the Court concluded that "it is plausible that Abbott invented a species of pharmaceutical composition within the scope of its claims before Centocor's priority date of April 30, 1998, but nevertheless required contributions from Mr. Friedrich after that date in order to establish the patentability of Abbott's genus claims under 35 U.S.C. § 112." Because the record contained evidence suggesting that Abbott in fact did conceive a species of the invention before Centocor developed Stelara in April 1998, the Court ruled that summary judgment for Centocor was not warranted. (March 9 Order at 61-62; Oyloe Ex. 31, Priority Op. at 89, 98, 102; Oyloe Ex. 50, Murphy Rpt. ¶¶ 105-06, 121-22; Oyloe Exs. 111-15, 118).

Centocor contends that the Court's reasoning was a manifest error of law. Reiterating that "the critical question for joint conception is who conceived . . . the subject matter of the claims at issue," *Falana v. Kent State Univ.*, 669 F.3d 1349, 1357 (Fed. Cir. 2012),[12] Centocor contends that "[a]lthough prior invention of a genus can be shown by prior invention of a single species, that can only be done when the species invention was *made by all of the inventors of the*

---

[11] Abbott continues to defend its patent on this basis, arguing that its priority dates to its invention of particular antibodies species within the claimed genuses before Friedrich joined the research team because "the first party to conceive and reduce to practice . . . a species of a generic count [i]s entitled to the award of priority as to such genus." *Lawson v. Bruce*, 222 F.2d 273, 274 (C.C.P.A. 1955) (discussing *Kyrides v. Anderson*, 121 F.2d 514 (C.C.P.A. 1941)); *see also In re Taub,* 348 F.2d 556, 562 (C.C.P.A. 1965) ("[O]ne may establish priority for a generic claim on the basis of a showing that he was prior as to a single species."). Because this legal issue was resolved in the March 9 order, the Court will not revisit its prior judgment and will devote the remainder of this memorandum and order to new arguments raised by Centocor.

[12] Notably, however, the statements to this effect in both *Vanderbilt v. ICOS* and *Falana* were made in the context of claims under 35 U.S.C. § 256 to correct inventorship, not to determine validity in an infringement action.

10

*claim.*" (Def.'s Mem. at 12). For this reason, it asserts that the presence of an named inventor who joined an research project after the purported date of invention provides conclusive proof that the date is incorrect.

The first case that Centocor cites is *Samson v. Crittenden*, 1989 Pat. App. LEXIS 25 (B.P.A.I. Sept. 27, 1989). That case was an interference proceeding in which the junior party consisted of three purported joint inventors, Samson, Wilson, and Mars. The group contended that Samson, working alone, had conceived of the relevant invention before he first joined efforts with Wilson and Mars in 1984, and that his own earlier invention gave the group priority over the senior party. *Id.* at *9. The BPAI rejected their argument, holding that "[s]ince [the last joint inventor] did not become involved with the project until late November 1984, only activities which occurred after that time may be relied upon by [the joint inventive group] to establish joint conception and reduction to practice on their behalf." *Id.* at 11. However, the board's decision was also based in part on procedural rules for interference proceedings that require determination of the relative priority as between the parties. The BPAI also relied in part on a factual finding that "contrary to the assertions in the junior party's brief, [Samson] merely had an idea or desired result in mind" prior to the 1984 collaboration. Thus, the Board's refusal to grant priority based on evidence of Samson's pre-1984 work was independently supported by procedural considerations and a factual assessment of the record that are not applicable in this case. Here, by contrast, substantial evidence suggests that Abbott did conceive of the claimed genus of antibodies before Friedrich's apparent arrival in 1998.

The second case that Centocor cites is *Perkins v. Engs*, 118 F.2d 924 (C.C.P.A. 1941), in which the Court of Customs and Patent Appeals upheld the decision of the PTO Board of

Appeals in an interference proceeding. In doing so, that court reasoned that "[t]he question of priority must be determined from the beginning of the joint activities of appellants." *Perkins*, 118 F.2d at 928. However, that statement was made as an *ad hoc* determination that "the Board of Appeals did not err in affirming the refusal of the Examiner of Interferences to consider any testimony of appellants prior to . . . the time when the joint activities of appellants began." As in *Samson*, the court in *Perkins* rooted its determination in the "facts in the instant case" and the procedural rules applicable in interference proceedings. *Id.* Those considerations are not dispositive here.

The more fundamental question in this context is whether, on summary judgment in an infringement action, a Court must find that a patent is invalid whenever there appears to be an inconsistency between when a named inventor joined a research effort and when the invention is asserted to have occurred. Framed in this way, Centocor's argument is absurd. Of course, evidence that an invention was conceived before a named inventor joined the research team may be evidence that the person was improperly named on the patent. Conceivably, an inconsistency between the purported date of an invention and when an alleged inventor joined the team might also give rise to a suspicion that the alleged invention date is incorrect. But who is named on a patent simply cannot serve as conclusive evidence of when invention occurred where other substantial evidence suggests a different date. To illustrate: by Centocor's reasoning, if Abbott (by mistake, or as a joke) had named Louis Pasteur as an inventor in its March 2000 patent application for the '128 patent, that fact would conclusively prove that it invented the IL-12 antibodies now at issue no later than September 28, 1895, the date of Pasteur's death.

Priority is determined by when the relevant invention occurred, *Mahurkar v. C.R. Bard,*

12

*Inc.*, 79 F.3d 1572, 1576-77 (Fed. Cir. 1996), not by whose name appears in a subsequent PTO filing. That inquiry is a question of law that is based on subsidiary factual findings. *Cooper v. Goldfarb*, 154 F.3d 1321, 1327 (Fed. Cir. 1998). Those factual questions include, of course, when the invention was either reduced to practice or conceived and subsequently reduced to practice through diligent effort. *Mahurkar*, 79 F.3d at 1577. Here, there is conflicting evidence with respect to that issue. Some evidence (namely, the inclusion of Friedrich Stuart) suggests that Abbott did not conceive its claimed invention until late 1998, while other evidence (expert reports and documentation of Abbott's research efforts) suggests that it did so substantially earlier than that. That is sufficient to preclude summary judgment on priority.

Centocor's priority challenge is, in essence, a disguised claim for invalidity on grounds of misjoinder. *See generally Trovan, Ltd. v. Sokymat Sa*, 299 F.3d 1292, 1301 (Fed. Cir. 2002) ("A patent is invalid if more or less than the true inventors are named."). Although the defendant in a patent action may challenge validity on this basis, alleging error in inventorship is a "technical defense" that may overcome the presumption of patent validity only if proved by clear and convincing evidence. *Jamesbury Corp. v. United States*, 207 Ct. Cl. 516, 536 (Ct. Cl. 1975). Moreover, the ability of a defendant in an infringement action to contest patent validity for misjoinder or nonjoinder of an inventor is limited by the patentee's statutory right to correct inventorship:

> Whenever through error a person is named in an issued patent as the inventor, . . . the Director may . . . issue a certificate correcting such error.
>
> The error of omitting inventors or naming persons who are not inventors shall not invalidate the patent in which such error occurred if it can be corrected as provided in this section. The court before which such matter is called in question may order correction of the patent on notice and hearing of all parties concerned and the

> Director shall issue a certificate accordingly.

35 U.S.C. § 256. Interpreting this section, one court has held that:

> [S]ection 256 allows deletion of a misjoined inventor whether that error occurred by deception or by innocent mistake. As well, the section allows addition of an unnamed actual inventor, but this error of nonjoinder cannot betray any deceptive intent by that inventor. In other words, the statute allows correction in all misjoinder cases featuring an error and in those nonjoinder cases where the unnamed inventor is free of deceptive intent.

*Stark v. Advanced Magnetics*, 119 F.3d 1551, 1555 (Fed. Cir. 1997). It follows from this right of correction that if a patent erroneously includes someone who is not in fact an inventor of the claim invention, that fact might require correction of the patent, but it does not require invalidation of the patent. At least one other court has rejected the argument that it does. *See Hoffmann-La Roche Inc. v. Cobalt Pharm. Inc.*, 2010 WL 5392683 (D.N.J. Dec. 17, 2010) ("The practical effect of [the interpretation of § 256 in *Stark*] is that it renders [defendant's] misjoinder argument—that [one of several named inventors] is not properly an inventor—impotent to effect invalidation of the patent, since [the patentee] has the unconditional statutory right to correct errors of misjoinder."). Centocor's attempt to recast the same argument as a priority issue does not change that result.

In sum, because the date of Abbott's invention cannot be conclusively determined by reference to when a particular person named as an inventor on the patents began work on them, summary judgment was properly denied as to the issue of priority.

**IV.   Conclusion**

For the foregoing reasons, Centocor's motion for reconsideration of the March 9 memorandum and order is DENIED; however, the Court will issue an amended memorandum and

14

order to clarify its interpretation of the patent claims that are asserted.

**So Ordered.**

/s/ Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  May 4, 2012