# EXHIBIT 4

Not Reported in F.Supp.2d, 2008 WL 4489692 (N.D.Tex.)
**(Cite as: 2008 WL 4489692 (N.D.Tex.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Texas,
Wichita Falls Division.
Dedra SOUTHARD, individually and as Independent Administrator of the of the Estate of Troy Lee Aylor and DeWayne Aylor
v.
UNITED REGIONAL HEALTH CARE SYSTEM, INC. d/b/a United Regional Health Care System.

No. 7-06-CV-11-L.
Aug. 5, 2008.

West KeySummary**Evidence 157** 🗝️**538**

157 Evidence
    157XII Opinion Evidence
        157XII(C) Competency of Experts
            157k538 k. Due Care and Proper Conduct in General. Most Cited Cases

**Evidence 157** 🗝️**555.10**

157 Evidence
    157XII Opinion Evidence
        157XII(D) Examination of Experts
            157k555 Basis of Opinion
                157k555.10 k. Medical Testimony. Most Cited Cases

    Expert medical testimony of two defense witnesses was stricken in an action alleging violation of the Emergency Medical Treatment and Active Labor Act (EMTALA). Neither witness practiced medicine in the state. Neither witness's report addressed the issue of whether the defendant's own procedures were followed in the patient's screening examination in the emergency department. Medicare Act, § 102, 42 U.S.C.A. § 1395.

H. Dustin Fillmore, III, Fillmore Law Firm, Fort Worth, TX, Harold White, Banner Briley & White, Wichita Falls, TX, for Dedra Southard.

Joseph A. Turano, Strasburger & Price, Dallas, TX, for United Regional Health Care System, Inc.

*ORDER*

WM. F. SANDERSON, JR., United States Magistrate Judge.

    **\*1** Pursuant to the District Court's order of reference filed on June 9, 2008, on August 4, 2008, came on to be heard Plaintiffs' Objections and Motion to Strike Regarding Defendant's Experts Paul K. Bronston, M.D., and Hugh H. West, M.D. filed on June 6, 2008, and having considered the relevant pleadings and the statements and arguments of counsel for the parties the court finds and orders as follows:

    This case is brought under the provisions of the Emergency Medical Treatment and Active Labor Act (EMTALA), 42 U.S.C. § 1395 dd. The EMTALA was enacted to prevent "patient dumping," which is the practice of refusing to treat patients who are unable to pay. *See Marshall v. East Carroll Parish Hospital,* 134 F.3d 319, 322 (5th Cir.1998) (collecting cases). As a requirement of the Act a hospital with an emergency department must provide for an appropriate medical screening examination within the capability of its emergency department, including ancillary services routinely available to the department to determine whether or not an emergency medical condition ... exists. § 1395 dd(a). This section in turn requires that a hospital develop a screening procedure designed to identify such critical conditions which are presented in symptomatic patients and to apply that screening procedure uniformly to all patients with similar complaints. *See e.g. Baber v. Hospital Corp. of America,* 977 F.2d 872, 879 (4th Cir.1992). The statutory language further makes clear that the standard which is applied to the screening examination is individualized and based upon the capabilities of each hospital's emergency department. *Id.* at 879-880. Thus, the elements of the screening process applied to a large metropolitan hospital

with expensive and sophisticated diagnostic equipment may be more numerous than those adopted by a smaller hospital's emergency department. The appropriate question is whether a hospital's emergency department's screening process was performed equitably in comparison to its other patients with similar symptoms. *Marshall, supra,* 134 F.3d at 322.

In the present case Defendant's Rule 30(b)(6) representative, Kimberly Stringfello, testified at her deposition that Defendant did not have an established screening process for emergency department patients, that the responsibility of determining what was required as an *appropriate medical screening examination* under the EMTALA was delegated to the hospital's emergency department physicians-in this instance Dr. Armando Moreno.[FN1] Therefore, the steps in the screening procedures identified by Dr. Moreno as being appropriate are those which "set the parameters for an appropriate screening." *Cruz-Queipo v. Hospital Espanol Auxilio,* 417 F.3d 67, 70 and n. 4 (1st Cir.2005). In addition a hospital must comply with its own procedures in administering the screening examination. *Id. See also Battle v. Memorial Hospital at Gulfport,* 228 F.3d 544, 558 (5th Cir.2000) (citing *Repp v. Anadarko Municipal Hospital,* 43 F.3d 519, 522 (10th Cir.1994)).

> FN1. Plaintiffs argue that Defendant had written screening protocols for chest pain patients. However, it is not necessary to address or resolve this question of fact in this order.

**\*2** Both Drs. Bronston and West have expressed the opinion that the EMTALA was not violated by the hospital. Neither practices medicine in Texas nor is there any indication that either has familiarized himself with the capabilities of the hospital's emergency department. Dr. Bronston exonerates Defendant of any violation of the EMTALA based upon his conclusion that Dr. Moreno's good faith judgment that further testing and/or hospitalization was not required was sufficient.[FN2]

> FN2. Although Dr. Bronston's report states that he analyzed "this case in detail for any EMTALA 'process' errors which could constitute EMTALA violations," his report does not address the fact that the medical records documented that the patient had "current chest pain," nor does it address the fact that Dr. Moreno testified on one occasion that he had spoken with a cardiac specialist, Dr. Samuelson, while the patient was in the emergency room, which he later admitted was incorrect, or the fact that Dr. Moreno admitted that he should have consulted a specialist when the patient presented at the emergency room. Dr. West's report likewise is silent with respect to these matters.

The bona fides or motivation of the agents and employees of a hospital's emergency department is irrelevant to whether the provisions of the EMTALA have been violated. *See e.g. Power v. Arlington Hospital Association,* 42 F.3d 851, 857-58 (45h Cir.1994). Although a qualified expert is not necessarily prohibited from expressing an opinion on an ultimate issue of fact, where as here, the expert's opinion is based on an erroneous legal premise, it is appropriate to exclude such testimony.[FN3] Moreover, neither doctor's report addresses the issue of whether Defendant's own procedures were followed in the patient's screening examination in the emergency department. There appears little need to have expert testimony on that which constitutes an "appropriate medical screening examination." *See Cruz-Queipo, supra,* 417 F.3d at 70, setting out the First Circuit's definition. Accordingly, Plaintiffs' motion will be granted as it relates to Defendants' experts' opinions on whether the requirements of the EMTALA were satisfied. *See* Rules of Evidence 702- and 403.

> FN3. On the other hand, as the *Power* court noted, if plaintiffs make a *prima facie* showing that Mr. Aylor was treated differently from other patients who presen-

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.

ted with similar symptoms, Defendant may present the testimony of Dr. Moreno that the steps followed were reasonable under the particular circumstances. *Id.* at 858.

It further appears that Defendant has obtained opinions from the doctors as to whether or not disparate treatment is demonstrated when Mr. Aylor's medical records are compared to those of other persons treated in Defendant's emergency department. In his report Dr. West sets out reasons why the opinions of Plaintiffs' medical experts relating to disparate treatment should be rejected. Plaintiffs have failed to show that either doctor is incompetent to attack or rebut the opinions which their expert witnesses have expressed. Therefore, Plaintiffs' motion to strike with regard to the issue of disparate treatment is denied.

A copy of this order shall be transmitted to counsel for the parties.

SO ORDERED.

N.D.Tex.,2008.
Southard v. United Regional Health Care System, Inc.
Not Reported in F.Supp.2d, 2008 WL 4489692 (N.D.Tex.)

END OF DOCUMENT

© 2012 Thomson Reuters. No Claim to Orig. US Gov. Works.