# CENTOCOR DEPOSITION EXHIBIT 237

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION

| | |
|---|---|
| ABBOTT GMBH & CO., KG, ABBOTT BIORESEARCH CENTER, INC., and ABBOTT BIOTECHNOLOGY LTD., <br><br> Plaintiffs, <br><br> v. <br><br> CENTOCOR ORTHO BIOTECH, INC. and CENTOCOR BIOLOGICS, LLC., <br><br> Defendants. | Civil Action No. 4:09-cv-11340-FDS <br><br><br> **Jury Trial Demanded** |

**NOTICE OF DEPOSITION PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 30(b)(6)**

PLEASE TAKE NOTICE that Defendants Centocor Ortho Biotech, Inc. and Centocor Biologics, LLC ("Centocor") will take the deposition upon oral examination of the corporate Plaintiffs Abbott GmbH & Co. KG, Abbott Bioresearch Center, Inc., and Abbott Biotechnology Ltd. (collectively, "Abbott") pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, before a Notary Public or other officer authorized to administer oaths. The deposition will take place on October 1, 2010, beginning at 9:00 AM, or other such date as may be agreed upon by the parties, at the offices of Akin Gump Strauss Hauer & Feld, Two Commerce Square, 2001 Market Street, Suite 4100, Philadelphia, PA 19103, or other such place as shall be mutually agreed. The deposition will be recorded stenographically and may be videotaped.

Abbott shall designate one or more officers, agents, or other persons who can testify on its behalf with respect to the facts known or reasonably available to it regarding the matters listed

CENTOCOR
EXHIBIT 237
C.A. No.09cv11340

in Attachment A hereto. The deposition will proceed in accordance with the Federal Rules of Civil Procedure and will continue from day to day (Sundays and holidays excluded) until completed, unless otherwise agreed.

You are invited to attend and cross-examine.

Date: September 3, 2010

By: /s/ Matthew A. Pearson
Dianne B. Elderkin (*pro hac vice*)
delderkin@akingump.com
Barbara L. Mullin (*pro hac vice*)
bmullin@akingump.com
Steven D. Maslowski (*pro hac vice*)
smaslowski@akingump.com
Angela Verrecchio (*pro hac vice*)
averrecchio@akingump.com
Matthew A. Pearson (*pro hac vice*)
mpearson@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
Two Commerce Square
2001 Market Street, Suite 4100
Philadelphia, PA 19103-7013
215-965-1200
FAX: 215-965-1210

Domingo M. LLagostera (*pro hac vice*)
dllagostera@akingump.com
AKIN GUMP STRAUSS HAUER & FELD LLP
1111 Louisiana Street, 44th Floor
Houston, TX 77002-5200
713-220-5800
FAX: 713-236-0822

Heather P. Repicky (BBO # 663347)
NUTTER MCLENNEN & FISH LLP
World Trade Center West
155 Seaport Boulevard
Boston, MA 02210
617-439-2000
FAX: 617-310-9000

Attorneys for Defendants
CENTOCOR ORTHO BIOTECH, INC. and
CENTOCOR BIOLOGICS, LLC.

2

## ATTACHMENT A

The Definitions set forth in Centocor's First Set of Interrogatories are herein incorporated by reference in their entirety.

### Topics

Pursuant to Rule 30(b)(6) of the Federal Rules of Civil Procedure, and in accordance with this Notice, Abbott is requested to designate one or more officers, directors, agents, employees, and/or other persons who can testify on its behalf concerning the following topics:

1. The conception, reduction to practice, and diligence in reducing to practice the alleged invention(s) claimed in each of the asserted claims of the 128 patent or the 485 patent and documents reflecting the same.

2. Activity that Abbott contends evidences that Abbott did not suppress or conceal the alleged invention(s) claimed in each of the asserted claims of the 128 patent or the 485 patent prior to March 25, 1999 and documents reflecting the same.

3. All efforts or planned efforts by Abbott or on Abbott's behalf to determine whether or not Stelara™ infringes each of the claims of the 128 patent or the 485 patent and documents reflecting the same.

4. All efforts or planned efforts by Abbott or on Abbott's behalf to test, analyze, study, assay, or conduct experiments on Stelara™ and/or an antibody in Stelara™ and documents reflecting the same.

5. All efforts or planned efforts by Abbott or on Abbott's behalf to create or synthesize an antibody with an amino acid sequence generally corresponding to SEQ ID NO:7 and/or SEQ ID NO:8 as set forth in U.S. Patent No. 6,902,734, and/or to test, analyze, study, assay, or conduct experiments on such an antibody and documents reflecting the same.

6. All affinity testing and/or analysis, including but not limited to testing performed using surface plasmon resonance and including all facts and circumstances surrounding any such testing and/or analysis, and documents reflecting the same, of the binding to IL-12 and/or IL-23, including but not limited to on rate, on rate constant, off rate, off rate constant, association constant, and/or dissociation constant, of:

    i) any antibody in Stelara™;

    ii) J695 or ABT-874;

    iii) Y61;

    iv) ABT-147;

    v) an antibody with an amino acid sequence generally corresponding to SEQ ID NO:7 and/or SEQ ID NO:8 as set forth in U.S. Patent No. 6,902,734;

    vi) C17.15;

    vii) C8.6.2;

    viii) any anti-IL-12 antibody; or

    ix) any anti-IL-23 antibody.

7. All testing and/or analysis of the inhibition of biological activity of IL-12 and/or IL-23, including all facts and circumstances surrounding any such testing and/or analysis, and documents reflecting the same, of:

    i) any antibody in Stelara™;

    ii) J695 or ABT-874;

    iii) Y61;

    iv) ABT-147;

v)   an antibody with an amino acid sequence generally corresponding to SEQ ID NO:7 and/or SEQ ID NO:8 as set forth in U.S. Patent No. 6,902,734;

vi)   C17.15;

vii)  C8.6.2;

viii) any anti-IL-12 antibody; or

ix)   any anti-IL-23 antibody.

8. All testing and/or analysis of the $IC_{50}$ in a phytohemagglutinin blast proliferation assay, including all facts and circumstances surrounding any such testing and/or analysis, and documents reflecting the same, of:

i)    any antibody in Stelara™;

ii)   J695 or ABT-874;

iii)  Y61;

iv)   ABT-147;

v)    an antibody with an amino acid sequence generally corresponding to SEQ ID NO:7 and/or SEQ ID NO:8 as set forth in U.S. Patent No. 6,902,734;

vi)   C17.15;

vii)  C8.6.2;

viii) any anti-IL-12 antibody; or

ix)   any anti-IL-23 antibody.

9. All testing and/or analysis of the $IC_{50}$ for inhibition of interferon-γ production, including all facts and circumstances surrounding any such testing and/or analysis, and documents reflecting the same, of:

i)    any antibody in Stelara™;

ii)    J695 or ABT-874;

iii)   Y61;

iv)   ABT-147;

v)    an antibody with an amino acid sequence generally corresponding to SEQ ID NO:7 and/or SEQ ID NO:8 as set forth in U.S. Patent No. 6,902,734;

vi)   C17.15;

vii)  C8.6.2;

viii) any anti-IL-12 antibody; or

ix)   any anti-IL-23 antibody.

10.    All testing and/or analysis of the $IC_{50}$ for the inhibition of IL-12 and/or IL-23 binding to a receptor in a receptor binding assay, including all facts and circumstances surrounding any such testing and/or analysis, and documents reflecting the same, of:

i)    any antibody in Stelara™;

ii)   J695 or ABT-874;

iii)  Y61;

iv)   ABT-147;

v)    an antibody with an amino acid sequence generally corresponding to SEQ ID NO:7 and/or SEQ ID NO:8 as set forth in U.S. Patent No. 6,902,734;

vi)   C17.15;

vii)  C8.6.2;

viii) any anti-IL-12 antibody; or

ix)   any anti-IL-23 antibody.

11. All testing and/or analysis, including all facts and circumstances surrounding any such testing and/or analysis, and documents reflecting the same, of the location or identity of an epitope of IL-12 and/or IL-23 bound by:

- i) any antibody in Stelara™;
- ii) J695 or ABT-874;
- iii) Y61;
- iv) ABT-147;
- v) an antibody with an amino acid sequence generally corresponding to SEQ ID NO:7 and/or SEQ ID NO:8 as set forth in U.S. Patent No. 6,902,734;
- vi) C17.15;
- vii) C8.6.2;
- viii) any anti-IL-12 antibody; or
- ix) any anti-IL-23 antibody.

12. All analysis of amino acid sequence or corresponding gene sequence, including but not limited to a comparison of sequence identity, homology, and/or similarity to sequences of other proteins, and documents reflecting the same, of:

- i) any antibody in Stelara™;
- ii) J695 or ABT-874;
- iii) Y61;
- iv) ABT-147;
- v) an antibody with an amino acid sequence generally corresponding to SEQ ID NO:7 and/or SEQ ID NO:8 as set forth in U.S. Patent No. 6,902,734;
- vi) any anti-IL-12 antibody; or

      vii)    any anti-IL-23 antibody.

13. All efforts or planned efforts by Abbott or on Abbott's behalf, whether successful or unsuccessful, to develop, make, create, manufacture, produce, or develop methods for using an antibody or antibody fragment, including but not limited to an antibody or antibody fragment that binds to IL-12 or any portion thereof, IL-23 or any portion thereof, p40 or any portion thereof, p35 or any portion thereof, or p19 or any portion thereof and documents reflecting the same.

14. The status of Abbott's development of human and/or humanized antibodies that bind to IL-12 or any portion thereof, IL-23 or any portion thereof, p40 or any portion thereof, p35 or any portion thereof, or p19 or any portion thereof and documents reflecting the same.

15. The corporate structure and governance of Abbott GmbH & Co., KG, Abbott Bioresearch Center, Inc., and Abbott Biotechnology Ltd., including their business units and the duties of the corporate officers, directors, and/or business unit managers (and their recent predecessors) and documents reflecting the same.

16. The relationship between Abbott GmbH & Co., KG, Abbott Bioresearch Center, Inc., and Abbott Biotechnology Ltd., including any financial obligations, arrangements, licenses, and/or payments between the entities that relate to the 128 patent, the 485 patent, or any related patent or patent application and documents reflecting the same.

17. Whether Abbott is seeking lost profit damages in this case and, if so, an identification of all products that Abbott will rely upon in support of its claim for lost profits and documents reflecting the same.

18. The title to, or any interest in, and changes in title or interest in, the 128 patent and the 485 patent, or any alleged inventions disclosed or claimed in those patents and documents reflecting the same.

19. Abbott's communications with any customer or potential customer of Abbott regarding Centocor or any products manufactured or sold by Centocor, including but not limited to any communications comparing Centocor products to any Abbott products and documents reflecting the same.

20. Abbott's communications with any customer or potential customer of Abbott regarding, or relating to, any or all of the 128 and 485 patents, and any alleged infringement of any of these patents by Centocor and documents reflecting the same.

21. The features/benefits that Abbott believes are, or represents to customers are, reasons for customers to switch from any other product to any product that is covered or made pursuant to the alleged inventions in either the 128 or 485 patents or any product that Abbott may rely upon in support of its claim for lost profits and/or a reasonable royalty and documents reflecting the same.

22. The breakdown of how any product that Abbott may rely upon in support of its claim for lost profits and/or a reasonable royalty is sold in terms of the sales and distribution channels from Abbott or any other party to end-users and documents reflecting the same.

23. Abbott's cost accounting methodology and documents reflecting the same.

24. For any product on which Abbott claims to have lost profits as a result of Centocor's alleged infringement of the 128 patent and/or the 485 patent and for any Abbott product that Abbott contends is relevant to any lost profit analysis, and (1) for each product, (2) on a country-

by-country basis, and (3) individually for Abbott GmbH & Co., KG, Abbott Bioresearch Center, Inc., and Abbott Biotechnology Ltd.:

    i)    actual and projected gross and net sales, including unit sales and revenues, of the product on a monthly and quarterly basis and documents reflecting the same;

    ii)    actual and projected gross and net profits and/or losses from sales of the product on a monthly and quarterly basis, including the methodology for calculating such profits and/or losses and documents reflecting the same;

    iii)    costs and expenses associated with the product on a monthly and quarterly basis and documents reflecting the same;

    iv)    pricing and pricing trends, including how such prices compare with competing products and documents reflecting the same;

    v)    the primary features/benefits of the product from a sales/marketing perspective and documents reflecting the same;

    vi)    the features/benefits that Abbott, or anyone acting on Abbott's behalf, relies on in selling or attempting to sell the product and documents reflecting the same;

    vii)    Abbott's methods of marketing and selling its products including, but not limited to, the advertising, marketing, and/or promotion of these products and documents reflecting the same;

    viii)    the difference(s) in features/benefits between each product and products sold by any other entity, including Centocor, and documents reflecting the same ;

    ix)    the research and development costs, including identification of what documents would illustrate or show these costs and documents reflecting the same; and

x)      Abbott's standard costs related to the products and all costs related to the products including, without limitation, direct materials and labor, manufacturing overhead, research and development, advertising and marketing, sales force, rebates, documents, incentives, allowances, promotions, giveaways, recalls, and any other direct or allocated expense and documents reflecting the same.

25.    For any product on which Abbott claims to have lost profits as a result of Centocor's alleged infringement of the 128 patent and/or the 485 patent and for any Abbott product that Abbott contends is relevant to any lost profit analysis, each entity that is involved in the manufacture, use, sale, offer for sale, importation, and/or exportation of the product anywhere in the world, and, for each such entity, that entity's role in those activities and documents reflecting the same.

26.    For each market, domestic or non-domestic, that Abbott believes is relevant for purposes of the damages calculation in this litigation, and on a country-by-country basis:

i)      the primary competing products and competitors and documents reflecting the same;

ii)     the breakdown or composition of the market in terms of categories and/or competitors and documents reflecting the same;

iii)    the market share of Abbott and its competitors, currently and historically, and documents reflecting the same ;

iv)     the degree to which Abbott competes for the same customer(s) as Centocor and documents reflecting the same; and

v)      the product features that Abbott believes drive sales in the market and documents reflecting the same.

27. For ABT-874, and for each domestic or non-domestic market, all studies or analyses and documents reflecting the same regarding:

    i)     the anticipated primary competing products and competitors;

    ii)     the breakdown or composition of the market in terms of categories and/or competitors;

    iii)     the degree to which ABT-874 is expected to compete with any Centocor product;

    iv)     the degree to which ABT-874 is expected to compete with Humira;

    v)     the degree to which ABT-874 is expected to compete with any anti-TNF product; and

    vi)     the product features of ABT-874 that Abbott believes will drive sales in the market.

28. Abbott's domestic and non-domestic forecasting, budgeting, and financial or strategic planning, and documents reflecting the same, relating to any product that Abbott may rely upon in support of its claim for lost profits and/or a reasonable royalty, including any evaluations or criteria of profitability, profits studies, return-on-investment analyses, or pricing guidelines and including sales, market, budget, cost, margin, or revenue forecasts or projections, business plans, marketing plans, consultant reports, or strategy or competitive analyses, as well as an identification of the information used in any such financial or strategic planning (such as third-party data sources).

29. Abbott's domestic and non-domestic forecasting, budgeting, and financial or strategic planning, and documents reflecting the same, relating to ABT-874, including any evaluations or criteria of profitability, profits studies, return-on-investment analyses, or pricing guidelines and including sales, market, budget, cost, margin, or revenue forecasts or projections, business plans,

marketing plans, consultant reports, or strategy or competitive analyses, as well as an identification of the information used in any such financial or strategic planning (such as third-party data sources).

30. For the product(s) on which Abbott claims to have lost profits as a result of Centocor's alleged infringement of the 128 patent or the 485 patent, Abbott's manufacturing and marketing capacity as to that product from 2009 to present and documents reflecting the same.

31. Demand for products covered by the 485 and/or 128 patents and documents reflecting the same.

32. The presence or absence of acceptable non-infringing substitutes to products patented under the 485 and/or 128 patents and documents reflecting the same.

33. The amount of profit that Abbott would have made on any sales of any product that Abbott may rely upon in support of its claim for lost profits and/or a reasonable royalty and documents reflecting the same.

34. Whether or not, and to what extent, the alleged inventions claimed in the 485 or 128 patents have been commercially successful, including any evidence that supports any alleged commercial success, and documents reflecting the same.

35. For any product that Abbott asserts makes use of the alleged inventions of the 485 or 128 patents, the portion of the realizable profit that should be credited to these inventions, as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements and documents reflecting the same.

36. The portion of the profit or the selling price that may be customary to allow for the use of the 485 or 128 patents or analogous inventions and documents reflecting the same.

37. For any product marked with the 485 and/or 128 patents, the dates on which Abbott first marked such product and documents reflecting the same.

38. Any Abbott policy relating to licensing of intellectual property, and particularly relating to the licensing of intellectual property relating the 128 patent, the 485 patent, or any other antibody-related technology and documents reflecting the same.

39. Any licenses that Abbott has negotiated, whether resulting in an executed license or not, relating to the 128 patent, the 485 patent, or any other antibody technology and documents reflecting the same.

40. Any royalties received or paid by Abbott relating to the 128 patent, the 485 patent, or any other antibody-related technology and documents reflecting the same.

41. Any license or license negotiation Abbott intends to rely upon for any purpose in this litigation, including any facts or license(s) or other agreements that Abbott will rely upon in support of a claim that a particular reasonable royalty is the proper measure of damages in the event that infringement of the 128 patent and/or 485 patent is found, and documents reflecting the same.

42. Any communications between Centocor and/or Johnson and Johnson, on the one hand, and Abbott, on the other hand, regarding a potential license to the 128 patent and/or 485 patent, or any patent(s) in the same patent family and documents reflecting the same.

43. The evidence and factual basis of Abbott's contention that Abbott will suffer severe and irreparable harm unless Centocor's infringement is enjoined by this Court and documents reflecting the same.

44. The evidence and factual basis of Abbott's contention that Abbott has suffered, and will continue to suffer, substantial damages and documents reflecting the same.

45. The evidence and factual basis of Abbott's contention that it is entitled to a permanent injunction and documents reflecting the same.

46. The claims of the 128 patent and/or the 485 patent, if any, that cover J695 or ABT-874 and documents reflecting the same.

47. The prosecution of the applications leading to the 128 patent, the 485 patent, of any patents or patent applications to which the 128 patent or the 485 patent claim priority, or of any patents or patent applications which claim priority to the 128 patent or 485 patent and documents reflecting the same.

48. The prosecution of U.S. Patent Applications 08/820,692, 09/016,346, and 09/398,555 and application WO 98/41232 and documents reflecting the same.

49. Abbott's document retention or destruction policies in effect at any time since Abbott first contemplated research on an anti-human IL-12 and/or IL-23 antibody or the market for anti-human IL-12 and/or IL-23 antibody, or contemplated making and selling an anti-human IL-12 and/or IL-23 antibody product and documents reflecting the same.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing Defendants' First Notice of 30(b)(6) Deposition of Plaintiffs was served via electronic mail on counsel of record, as follows, on September 3, 2010.

Robert J. Gunther, Jr.
WILMER CUTLER PICKERING HALE & DORR, LLP
399 Park Avenue
New York, New York 10022
Email: robert.gunther@wilmerhale.com

Amy K. Wigmore
Jacob Oyloe
WILMER CUTLER PICKERING HALE & DORR, LLP
1875 Pennsylvania Ave., NW
Washington, DC 20006
Email: amy.wigmore@wilmerhale.com
Email: jacob.oyloe@wilmerhale.com

Maria Vento
William W. Kim
WILMER CUTLER PICKERING HALE & DORR, LLP
1117 California Avenue
Palo Alto, California 94304
Email: maria.vento@wilmerhale.com
Email: william.kim@wilmerhale.com

/s/ Matthew A. Pearson