# EXHIBIT C

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ABBOTT GMBH & CO., KG, ABBOTT BIORESEARCH CENTER, INC., ABBOTT BIOTECHNOLOGY, LTD. | ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| CENTOCOR ORTHO BIOTECH, INC., CENTOCOR BIOLOGICS, LLC. | ) ) ) |
| Defendant. | ) ) ) |

C.A. No. 4:09-CV-11340 (FDS)

JURY TRIAL DEMANDED

**ABBOTT'S PROPOSED PRELIMINARY JURY INSTRUCTIONS**
**FOR LIABILITY PHASE**

**TABLE OF CONTENTS**

Page

I.    DUTY OF THE JURY.........................................................................................1

II.   WHAT A PATENT IS AND HOW ONE IS OBTAINED ..................................1

III.  SUMMARY OF CONTENTIONS.....................................................................4

IV.   EVIDENCE........................................................................................................5

      A.    EVIDENCE GENERALLY......................................................................5

      B.    DIRECT AND CIRCUMSTANTIAL EVIDENCE .................................5

      C.    WITNESS TESTIMONY ........................................................................6

            1.    DECIDING WHAT TESTIMONY TO BELIEVE OR NOT BELIEVE....6

            2.    DEPOSITIONS............................................................................6

      D.    EXPERT TESTIMONY ...........................................................................7

      E.    THINGS THAT ARE NOT EVIDENCE.................................................7

V.    OUTLINE OF TRIAL ........................................................................................8

## I.      DUTY OF THE JURY

1.      Members of the jury: Now that you have been sworn, I will give you some preliminary instructions to guide you in your participation in the trial. It will be your duty to find from the evidence presented by the parties what the facts are. You and you alone will be the judges of facts. After deciding what the facts are, you will then apply the law, which I will give you, to those facts to reach your verdict in this case. I will explain the law to be applied to those facts.  I will also give you a verdict form. The verdict form contains certain questions from the Court that ask for your verdict in this case. It will be your duty to answer these questions after determining, from the evidence presented, what the facts are in this case and applying those facts to the law that I give you. You must follow the law even if you do not agree with it. Nothing I say or do during the course of the trial is intended to indicate, or should be taken by you as indicating, what your verdict should be.

**Source:**

Parties' Joint Proposed Preliminary Instructions, *Centocor Ortho Biotech, Inc. and New York University v. Abbott Laboratories, Abbott Bioresearch Center, Inc. and Abbott Biotechnology Ltd.*, Civil Action No. 2:07-cv-139 (E.D. Tex.) ("*Centocor v. Abbott* Joint Proposed Preliminary Instructions") at 1-2.

## II.     WHAT A PATENT IS AND HOW ONE IS OBTAINED

2.      This case involves a dispute relating to two United States patents. Before summarizing the positions of the parties and the issues involved in the dispute, let me take a moment to explain what a patent is and how one is obtained.

3.      Patents are granted by the United States Patent and Trademark Office (sometimes called "the PTO"). A valid United States patent gives the patent holder the right for up to 20 years from the date the patent application was filed to prevent others from making, using, offering to sell, or selling the patented invention within the United States, or from importing it

into the United States, without the patent holder's permission. A violation of the patent holder's rights is called infringement. The patent holder may try to enforce a patent against persons believed to be infringers by a lawsuit filed in federal court.

4.     The process of obtaining a patent is called patent prosecution. To obtain a patent, one must first file an application with the PTO. The PTO is an agency of the Federal Government and employs trained Examiners who review applications for patents. The application includes what is called a "specification," which contains a written description of the claimed invention telling what the invention is, how it works, how to make it, and how to use it. The specification concludes with one or more numbered sentences. These are the patent "claims." When the patent is eventually granted by the PTO, the claims define the boundaries of its protection and give notice to the public of those boundaries.

5.     After the applicant files the application, an Examiner reviews the application to determine whether or not the claims are patentable (appropriate for patent protection) and whether or not the specification adequately describes the invention claimed. In examining a patent application, the Examiner reviews certain information about the state of the technology at the time the application was filed. The PTO searches for and reviews information that is publicly available or that is submitted by the applicant. This information is called "prior art." The Examiner reviews this prior art to determine whether or not the invention is truly an advance over the state of the art at the time. Prior art is defined by law, and I will give you, at a later time during these instructions, specific instructions as to what constitutes prior art. However, in general, prior art includes information that demonstrates the state of technology that existed before the claimed invention was made or before the application was filed. A patent lists the prior art that the Examiner considered; this list is called the "cited references."

6.      After the prior art search and examination of the application, the Examiner

informs the applicant in writing of what the Examiner has found and whether the Examiner

considers any claim to be patentable and, thus, would be "allowed." This writing from the

Examiner is called an "Office Action." If the Examiner rejects the claims, the applicant has an

opportunity to respond to the Examiner to try to persuade the Examiner to allow the claims, and

to change the claims or to submit new claims. This process may go back and forth for some time

until the Examiner is satisfied that the application meets the requirements for a patent and the

application issues as a patent, or that the application should be rejected and no patent should

issue. Sometimes, patents are issued after appeals within the PTO or to a court. The papers

generated during these communications between the Examiner and the applicant are called the

"prosecution history."

7.      The fact that the PTO grants a patent does not necessarily mean that any invention

claimed in the patent, in fact, deserves the protection of a patent. For example, the PTO may not

have had available to it all other prior art that will be presented to you. A person accused of

infringement has the right to argue here in federal court that a claimed invention in the patent is

invalid because it does not meet the requirements for a patent. While a patent issued by the PTO

is presumed to be valid, it is your job to consider the evidence presented by the parties and

determine independently whether or not the defendant has proven, by clear and convincing

evidence, that the patents here are invalid. As I will explain later, that means that you must be

persuaded that it is highly probable that the facts are as the defendant contends, i.e., you must be

left with a clear conviction that the patents are invalid.

**Source:**
The Federal Circuit Bar Association Model Patent Jury Instructions (Feb. 2012) ("FCBA Model
Patent Jury Instructions") at 2-3, 8-9; Final Instructions, *Centocor Ortho Biotech, Inc. and New
York University v. Abbott Laboratories, Abbott Bioresearch Center, Inc. and Abbott*

*Biotechnology Ltd.*, Civil Action No. 2:07-cv-139 (E.D. Tex.) ("*Centocor v. Abbott* Final Instructions") at 2-3.

## III.   SUMMARY OF CONTENTIONS

8.      To help you follow the evidence, I will now give you a summary of the positions of the parties. The parties in this case are the plaintiffs Abbott GmbH & Co., KG, Abbott Bioresearch Center, Inc., and Abbott Biotechnology, Ltd., which will be referred to collectively as "Abbott" and the defendants Centocor Ortho Biotech, Inc. and Centocor Biologics, LLC, which will be referred to collectively as "Centocor."  The case involves United States Patent Nos. 6,914,128 and 7,504,485, each obtained by 22 inventors, and transferred by those inventors to Abbott. For your convenience, the parties and I will often refer to each patent by the last three numbers of its patent number, namely, as the "'128 patent" and the "'485 patent."  The parties and I may also refer to these patents collectively throughout trial as the "Abbott patents," "the '128 and '485 patents" or "the patents-in-suit." You will be provided with a copy of each patent. You will have many chances during this trial to familiarize yourselves with the patents.

9.      Patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The patent claims at issue in this trial are claims 7, 29, 30, 32, and 64 of the '128 patent and claims 7, 8, 9, 11, and 24 of the '485 patent. I will refer to these claims as the "asserted claims." It has already been determined that Stelara infringes the asserted claims. Centocor, however, alleges that the asserted claims are invalid. It is your job to decide whether the asserted claims of the '128 and '485 patents are invalid.

**Sources:**

FCBA Model Patent Jury Instructions at 4, 12; *Centocor v. Abbott* Joint Proposed Preliminary Instructions at 3; National Jury Instruction Project, Model Patent Jury Instruction 2.1 (June 17, 2009) at 14.

IV.     **EVIDENCE**

A.     **EVIDENCE GENERALLY**

10.     As I explained, it is the duty of the jury to decide what the facts are from the evidence presented by the parties. I will now explain what does, and what does not, constitute evidence. The evidence from which you will find the facts will consist of sworn testimony of witnesses, documents and other things received into the record as exhibits, and any facts that the attorneys agree to or that the Court may instruct you to find. You must consider only the evidence in this case; however, you may draw such reasonable inferences from the evidence as you feel are justified in the light of common experience. You may make deductions and reach conclusions that reason and common sense lead you to make from the evidence. Your common sense is one of the best tools you have in evaluating the evidence and deciding this case. You should base your decision on all the evidence, regardless of which party presented it.

**Source:**

*Centocor v. Abbott* Joint Proposed Preliminary Instructions at 4.

B.     **DIRECT AND CIRCUMSTANTIAL EVIDENCE**

11.     The evidence you may consider will be either direct or circumstantial. Direct evidence is direct proof of a fact, such as the testimony by a witness about what the witness personally saw or heard or did. Circumstantial evidence is proof of facts from which you may infer or conclude that other facts exist. The law makes no distinction between the weight to be given to either direct or circumstantial evidence, and it's up to you to decide how much weight to give to any evidence.

12.     Evidence is also often introduced in a piecemeal fashion. You as jurors need to keep an open mind as the evidence comes in. Wait until all the evidence is before you make any decision.

**Source:**

*Centocor v. Abbott* Joint Proposed Preliminary Instructions at 5.

      **C.**      **WITNESS TESTIMONY**

            **1.**      **DECIDING WHAT TESTIMONY TO BELIEVE OR NOT BELIEVE**

13.      I will now explain how to consider sworn testimony. In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe. You may believe everything a witness says or part of it or none of it. In considering the testimony of any witnesses, you may take into account: the opportunity and ability of the witness to see or hear or know the things that the witness testifies to; the witness's memory; the witness's manner while testifying; the witness's interest in the outcome of this case; and any bias or prejudice. You may also consider whether: other evidence contradicts the witness's testimony; the reasonableness of the witness's testimony in light of all the evidence, and any other factors that bear on believability.

14.      The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. The testimony of a single witness may be sufficient to prove any fact, even if a greater number of witnesses may have testified to the contrary, if, after considering all the other evidence, you believe that single witness.

**Source:**

*Centocor v. Abbott* Joint Proposed Preliminary Instructions at 6.

            **2.**      **DEPOSITIONS**

15.      During the trial of this case, certain sworn testimony may be shown to you or read to you by way of deposition. That is the testimony of a witness, who, for some reason, cannot be present to testify from the witness stand. It is usually presented either in writing, by reading

deposition testimony to you, or by showing you a video clip of the witness testifying at deposition. This testimony is entitled to the same consideration and is to be judged as to credibility and weight in the same way as if the witness had been present and had given, from the witness stand, the testimony that was read or shown to you.

**Source:**

*Centocor v. Abbott* Joint Proposed Preliminary Instructions at 7.

### D.     EXPERT TESTIMONY

16.     When knowledge of a technical subject matter may be helpful to the jury, a person who has special training or experience in that technical field – called an expert witness – is permitted to state his or her opinion on those technical matters. However, you are not required to accept that opinion. As with any other witness, it is up to you to decide whether to rely upon it.

**Source:**

*Centocor v. Abbott* Joint Proposed Preliminary Instructions at 8.

### E.     THINGS THAT ARE NOT EVIDENCE

17.     I have explained that evidence will include sworn witness testimony, sworn deposition testimony, expert testimony, and documents and exhibits admitted during the trial. Now I want to explain to you the things that are not evidence and that must not be considered by you in deciding what the facts are in the case.

18.     First, statements, arguments, and questions by attorneys are not evidence.

19.     Likewise, attorney objections to questions are not evidence. Attorneys have an obligation to their client to object when the other side offers testimony or other evidence which the attorney believes is not properly admissible. By objecting, the lawyer is simply requesting that I make a decision on a particular rule of law. Do not draw any conclusion from such

objections or from my rulings on the objections. These relate to legal questions that I have to determine and should not influence your thinking. The Court can sustain the objection, in which case the evidence will not be admitted. When the Court has sustained an objection to a question addressed to a witness, you must disregard the question entirely and draw no inference from the wording of it or speculate as to what the witness would have said had the Court permitted an answer to the question.

20.     The Court also may overrule an attorney's objection, in which case the evidence may be admitted. Upon allowing testimony or other evidence to be introduced over the objection of an attorney, the Court does not, unless expressly stated, indicate any opinion as to the weight or the effect of such evidence.

21.     During the course of the trial, I may ask a question of a witness. If I ask a question, it doesn't indicate I have any opinion about the facts of the case. Usually I'm just trying to make sure the record comes out clearly. Nothing I say or do should lead you to believe that I have any opinion about the facts or what your verdict should be.

22.     Other items that are not evidence and must not form any basis for your findings of fact including any evidence that I instruct you to ignore and anything that you may see or hear when the Court is not in session, even if what you see or hear is done or said by one of the parties or by one of the witnesses.

**Source:**

*Centocor v. Abbott* Joint Proposed Preliminary Instructions at 9-10.

**V.     OUTLINE OF TRIAL**

23.     The trial will now begin. First, each side may make an opening statement. An opening statement is not evidence. It is simply an opportunity for the lawyers to explain what they expect the evidence will show.

24.     There are generally two standards of proof you would apply to the evidence in patent cases, depending on the issue you are deciding: one is the preponderance of the evidence standard and the other is the clear and convincing standard.  To determine whether the '128 and '485 patents are invalid, you must use only the higher clear and convincing standard of proof. That is because a patent issued by the United States Patent Office is presumed to be valid, so Centocor bears the burden of proof by clear and convincing evidence that the patents are invalid.

25.     Clear and convincing evidence is a more exacting standard than proof by a preponderance of the evidence, which only requires that the party's claim be more likely true than not true. When a party has the burden of proving any claim or defense by clear and convincing evidence, it means the party must persuade you that it is highly probable that the facts are as that party contends, i.e., you must be left with a clear conviction that the claim is invalid. Nevertheless, the clear and convincing standard is not as high as the burden of proof applied in a criminal case, which is beyond a reasonable doubt.

26.     After the opening statements, Centocor will present its evidence that the asserted claims of the '128 and '485 patents are invalid. To prove invalidity of any claim, Centocor must persuade you by clear and convincing evidence that the claim is invalid. Abbott will then present its evidence responding to Centocor's evidence that the asserted claims of the '128 and '485 patents are invalid.

27.     After the evidence has been presented, the attorneys will make closing arguments and I will give you final instructions on the law that applies to the case.  These closing arguments by the attorneys are not evidence. After the closing arguments and instructions, you will then decide the case.

28.     Please be aware that following your deliberation and verdict regarding invalidity of the '128 and '485 patents, the trial will not be over.  There will be a second phase of the trial, during which Abbott and Centocor will present evidence on additional issues in this case, which I will inform you about at that time.

**Source:**

FCBA Model Patent Jury Instructions at 8-9; *Centocor v. Abbott* Final Instructions at 2-3.

Dated:  August 29, 2012                              Respectfully Submitted,

                                                     /s/  Robert J. Gunther, Jr.
                                                     Robert J. Gunther, Jr. (admitted *pro hac vice*)
                                                     Jane M. Love (admitted *pro hac vice*)
                                                     Anne-Marie Yvon (admitted *pro hac vice*)
                                                     Violetta G. Watson (admitted *pro hac vice*)
                                                     Paula Estrada de Martin (admitted *pro hac vice*)
                                                     WILMER CUTLER PICKERING
                                                     HALE AND DORR LLP
                                                     7 World Trade Center
                                                     New York, New York 10007
                                                     Tel: (212) 230-8800
                                                     Fax: (212) 230-8888

                                                     William F. Lee (BBO #291960)
                                                     Anne M. McLaughlin (BBO # 666081)
                                                     WILMER CUTLER PICKERING
                                                     HALE AND DORR LLP
                                                     60 State Street
                                                     Boston, Massachusetts 02109
                                                     Tel: (617) 526-6000
                                                     Fax: (617) 526-5000

William G. McElwain (BBO # 332510)
Amy K. Wigmore (admitted *pro hac vice*)
Amanda L. Major (admitted *pro hac vice*)
Jacob S. Oyloe (admitted *pro hac vice*)
Rachel L. Weiner (admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE and DORR LLP
1875 Pennsylvania Avenue, NW
Washington, DC 20006
Tel: (202) 663-6000
Fax: (202) 663-6363

William W. Kim (admitted *pro hac vice*)
Arthur W. Coviello (admitted *pro hac vice*)
WILMER CUTLER PICKERING
HALE and DORR LLP
950 Page Mill Road
Palo Alto, California 94304
Tel: (650) 858-6000
Fax: (650) 858-6100

*Attorneys for Abbott GmbH & Co., KG,*
*Abbott Bioresearch Center, Inc., and*
*Abbott Biotechnology, Ltd.*