# EXHIBIT E

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| ABBOTT GMBH & CO., KG, ABBOTT BIORESEARCH CENTER, INC., ABBOTT BIOTECHNOLOGY, LTD.<br><br>Plaintiffs,<br><br>v.<br><br>CENTOCOR ORTHO BIOTECH, INC., CENTOCOR BIOLOGICS, LLC.<br><br>Defendant. | C.A. No. 4:09-CV-11340 (FDS)<br><br>JURY TRIAL DEMANDED |

**JOINT PROPOSED JURY INSTRUCTIONS**
**FOR WILLFUL INFRINGEMENT AND DAMAGES PHASE**

**TABLE OF CONTENTS**

Page

I. PRELIMINARY INSTRUCTIONS ....................1

A. WILLFUL INFRINGEMENT ....................1

B. DAMAGES ....................1

II. INSTRUCTIONS AT THE CLOSE OF EVIDENCE ....................2

A. WILLFUL INFRINGEMENT ....................2

1. CENTOCOR'S PROPOSED ADDITIONAL WILLFUL INFRINGEMENT INSTRUCTION ....................2

B. DAMAGES ....................3

1. INTRODUCTION ....................3

2. ABBOTT'S PROPOSED LOST PROFITS INSTRUCTION ....................4

3. CENTOCOR'S PROPOSED LOST PROFITS INSTRUCTION ....................7

4. REASONABLE ROYALTY - ENTITLEMENT ....................9

5. REASONABLE ROYALTY − DEFINITION ....................9

6. REASONABLE ROYALTY − RELEVANT FACTORS ....................10

## I. PRELIMINARY INSTRUCTIONS

### A. WILLFUL INFRINGEMENT

1. Now that you have decided that Abbott's patents are not invalid, you will need to make a finding as to whether Centocor's infringement of the patents was willful. If you decide that any infringement was willful, that decision should not affect any damages award you give. I will take willfulness into account later.

2. To persuade you that any infringement was willful, Abbott must prove that the infringement was willful by clear and convincing evidence.

**Source:**

The Federal Circuit Bar Association Model Patent Jury Instructions (Feb. 2012) ("FCBA Model Patent Jury Instructions") at 8.

### B. DAMAGES

3. You will also need to decide any money damages to be awarded to Abbott to compensate it for Centocor's infringement. A damages award should put Abbott in approximately the same financial position that it would have been in had the infringement not occurred, but in no event may the damages award be less than what Abbott would have received had it been paid a reasonable royalty. I will instruct you later on the meaning of a reasonable royalty. The damages you award are meant to compensate Abbott and not to punish Centocor. You may not include in your award any additional amount as a fine or penalty, above what is necessary to compensate Abbott for the infringement, in order to punish Centocor.

4. Abbott has the burden to establish the amount of its damages by a preponderance of the evidence. This is a lower standard than the clear and convincing standard you have used so far. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale,

even if slightly, in its favor. In other words, you should award those damages that Abbott establishes it more likely than not suffered.

5. I will give you more detailed instructions on the calculation of damages at the conclusion of the case.

**Source:**

FCBA Model Patent Jury Instructions at 7, 8.

## II. INSTRUCTIONS AT THE CLOSE OF EVIDENCE

### A. WILLFUL INFRINGEMENT

6. As a result of your verdict, Centocor has now been found to have infringed Abbott's valid patents. You must go on and address the additional issue of whether or not this infringement was willful.

7. Willfulness requires you to determine by clear and convincing evidence that Centocor acted recklessly. To prove that Centocor acted recklessly, Abbott must persuade you that Centocor actually knew or should have known that its actions constituted an unjustifiably high risk of infringement of a valid and enforceable patent.

#### 1. CENTOCOR'S PROPOSED ADDITIONAL WILLFUL INFRINGEMENT INSTRUCTION

8. To determine whether Centocor had this state of mind, all facts are to be considered which may include, but are not limited to:

(1) Whether or not Centocor acted in accordance with the standards of commerce for its industry;

(2) Whether or not Centocor intentionally copied a product of Abbott that is covered by the 128 or 485 patent;

(3) Whether or not there is a reasonable basis to believe that Centocor did not infringe or had a reasonable defense to infringement;

(4) Whether or not Centocor made a good-faith effort to avoid infringing the 128 and 485 patents, for example, whether Centocor attempted to design around the 128 and 485 patents;

(5) Whether or not Centocor tried to cover up its infringement; and

(6) if Centocor argues that it did not act recklessly because it relied on a legal opinion that advised Centocor either (1) that Stelara did not infringe the 128 or 485 patents or (2) that the 128 and 485 patents were invalid, whether or not the opinion was of a quality that reliance on its conclusions was reasonable.

**Sources:**

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assoc., Inc.*, No. 2012-1510, Slip op. at 9 (Fed. Cir. June 14, 2012) ("In considering the objective prong of *Seagate*, the judge may when the defense is a question of fact or a mixed question of law and fact allow the jury to determine the underlying facts relevant to the defense in the first instance . . . ."); FCBA Model Patent Jury Instructions at 34-35 and authorities cited therein (35 U.S.C. § 284; *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (standard for finding willfulness); *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001) (burden of proof for willfulness).

**B. DAMAGES**

**1. INTRODUCTION**

9. Now that you have decided that the '128 and '485 patents are not invalid, you must consider what amount of damages to award to Abbott for Centocor's infringement of those patents. I will now instruct you about the measure of damages.

10. The damages you award must be adequate to compensate Abbott for the infringement. They are not meant to punish Centocor. Your damages award should put Abbott

in approximately the same financial position that it would have been in had the infringement not occurred.

11. Abbott has the burden to establish the amount of its damages by a preponderance of the evidence. A preponderance of the evidence means that the fact that is to be proven is more likely true than not, i.e., that the evidence in favor of that fact being true is sufficient to tip the scale, even if slightly, in its favor. In other words, you should award those damages that Abbott establishes it more likely than not suffered.

12. There are different types of damages that Abbott may be entitled to recover. In this case, Abbott seeks lost profits and a reasonable royalty. Lost profits consist of any actual reduction in business profits Abbott suffered as a result of Centocor's infringement. A reasonable royalty is defined as the money amount Abbott and Centocor would have agreed upon as a fee for use of the invention at the time prior to when infringement began.

13. I will give more detailed instructions regarding damages shortly. Note, however, that Abbott is entitled to recover no less than a reasonable royalty for each infringing sale of Stelara.

**Sources:**

FCBA Model Patent Jury Instructions at 8, 60 and authorities cited therein (35 U.S.C. § 284; *Dow Chem. Co. v. Mee Indus., Inc.*, 341 F.3d 1370, 1381-82 (Fed. Cir. 2003); *Integra Lifesciences I, Ltd. v. Merck KGaA*, 331 F.3d 860, 870 (Fed. Cir. 2003); *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-09 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc); *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir. 1983)).

## 2. ABBOTT'S PROPOSED LOST PROFITS INSTRUCTION

14. In this case, Abbott seeks to recover lost profits for some of Centocor's sales of Stelara, and a reasonable royalty on the rest of Centocor's sales. To recover lost profits (as opposed to reasonable royalties), Abbott must show a causal relationship between the

infringement and Abbott's loss of profit. Simply stated, lost profits damages are the profits Abbott lost because of Centocor's infringement. They are not the profits Centocor made. Abbott has the burden to show that it was more probable than not that it would have made additional profits if Centocor had not infringed.

15. Abbott may receive damages for lost profits only on any product which competes with the defendants' Stelara product. Whether that product practices the claimed invention is irrelevant to the issue of Abbott's entitlement to lost profits. Abbott may not receive lost profits damages for other products or services that might be sold along with the competing product for convenience or business advantage, but that are not functionally part of the competing product.

16. You must also consider whether or not, if Centocor's infringing product was not available, some or all of the people who bought from Centocor would have bought a different, non-infringing product from Centocor or from somebody else, rather than buy from Abbott. In deciding whether or not people who bought from Centocor would have bought a non-infringing product, you should consider whether or not there was such a demand for the patented aspects of the infringing product, Stelara, that purchasers would not have bought a noninfringing product.

17. It is not necessary for Abbott to prove that Abbott and Centocor were the only two suppliers in the market in order for the plaintiffs to demonstrate entitlement to lost profits. If the realities of the marketplace are such that "non-infringing substitutes" were available from suppliers who would have made some, but not all, of the sales that were made by Centocor, then Abbott may be entitled to lost profits on a portion of the infringing sales. The burden is on Abbott, however, to show a reasonable probability that it would have sold that portion if Centocor's Stelara product had never existed.

18. Abbott must also show that it had the manufacturing and marketing capability to make the sales it said it lost. This means Abbott must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

19. If Abbott has proved that it is entitled to lost profits due to infringement by Centocor, then you are to find the amount of profits that it lost. Abbott must prove the amount of its lost profits to a reasonable probability. The amount of lost profits damages should not include amounts that are merely speculation. On the other hand, Abbott only needs to show that there is a reasonable probability it would have made the lost sales had the infringement not occurred. That is, the evidence should be sufficient to enable you to make a fair and reasonable approximation. It is Centocor's burden to produce evidence of any lost sales it contends would not have been reasonably captured by Abbott. Any doubts concerning the precision of the damages amount must be resolved against Centocor.

**Sources:**

Final Instructions in *Centocor Ortho Biotech, Inc. and New York University v. Abbott Laboratories, Abbott Bioresearch Center, Inc. and Abbott Biotechnology Ltd.*, Civil Action No. 2:07-cv-139 (E.D. Tex.) ("Centocor v. Abbott Final Instructions") at 16-17; 35 U.S.C. § 284; *Bluebonnet Sav. Bank, F.S.B. v. United States*, 266 F.3d 1348, 1355 (Fed. Cir. 2001) ("The ascertainment of damages is not an exact science, and where responsibility for damage is clear, it is not essential that the amount thereof be ascertainable with absolute exactness or mathematical precision: It is enough if the evidence adduced is sufficient to enable a court or jury to make a fair and reasonable approximation.") (internal quotations omitted); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) ("The patentee need only show that there was a reasonable probability that the sales would have been made 'but for' the infringement. . . . The burden then shifts to the infringer to show that the inference is unreasonable for some or all of the lost sales.") (citing *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991)); *Kaufman*, 926 F.2d at 1141-42 ("Any doubts regarding the calculatory precision of the damage amount must be resolved against the infringer"); *Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 502-07 (1964); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Carella v. Starlight Archery*, 804 F.2d 135,

141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

### 3. CENTOCOR'S PROPOSED LOST PROFITS INSTRUCTION

20. In this case, Abbott seeks to recover lost profits for some of Centocor's sales of Stelara, and a reasonable royalty on the rest of Centocor's sales. To recover lost profits (as opposed to reasonable royalties), Abbott must show a causal relationship between the infringement and Abbott's loss of profit. Simply stated, lost profits damages are the profits Abbott lost because of Centocor's infringement. They are not the profits Centocor made. Abbott has the burden to show that it was more probable than not that it would have made additional profits if Centocor had not infringed.

21. Abbott may receive damages for lost profits only on any product which competes with the defendants' Stelara product. Whether that product practices the claimed invention is irrelevant to the issue of Abbott's entitlement to lost profits. Abbott may not receive lost profits damages for other products or services that might be sold along with the competing product for convenience or business advantage, but that are not functionally part of the competing product.

22. You must also consider whether or not, if Centocor's infringing product was not available, some or all of the people who bought from Centocor would have bought a different, non-infringing product from Centocor or from somebody else, rather than buy from Abbott. In deciding whether or not people who bought from Centocor would have bought a non-infringing product, you should consider whether or not there was such a demand for the patented aspects of the infringing product, Stelara, that purchasers would not have bought a noninfringing product.

23. It is not necessary for Abbott to prove that Abbott and Centocor were the only two suppliers in the market in order for the plaintiffs to demonstrate entitlement to lost profits. If the realities of the marketplace are such that "non-infringing substitutes" were available from

suppliers who would have made some, but not all, of the sales that were made by Centocor, then Abbott may be entitled to lost profits on a portion of the infringing sales. The burden is on Abbott, however, to show a reasonable probability that it would have sold that portion if Centocor's Stelara product had never existed.

24. Abbott must also show that it had the manufacturing and marketing capability to make the sales it said it lost. This means Abbott must prove it is more probable than not that it could have made and sold, or could have had someone else make or sell for it, the additional products it says it could have sold but for the infringement.

25. If Abbott has proved that it is entitled to lost profits due to infringement by Centocor, then you are to find the amount of profits that it lost. Abbott must prove the amount of its lost profits to a reasonable probability. The amount of lost profits damages should not include amounts that are merely speculation. That is, the evidence should be sufficient to enable you to make a fair and reasonable approximation. If Abbott has met its burden of proving lost sales, then the burden shifts to Centocor to produce evidence of any lost sales it contends would not have been reasonably captured by Abbott.

**Sources:**

Final Instructions in *Centocor Ortho Biotech, Inc. and New York University v. Abbott Laboratories, Abbott Bioresearch Center, Inc. and Abbott Biotechnology Ltd.*, Civil Action No. 2:07-cv-139 (E.D. Tex.) ("Centocor v. Abbott Final Instructions") at 16-17; 35 U.S.C. § 284; *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995) (en banc) (*citing Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1141 (Fed. Cir. 1991)); *Aro Mfg. Co. v. Convertible Top Co.*, 377 U.S. 476, 502-07 (1964); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1377-79 (Fed. Cir. 2003); *Micro Chem., Inc. v. Lextron, Inc.*, 318 F.3d 1119, 1123 (Fed. Cir. 2003); *Gargoyles, Inc. v. United States*, 113 F.3d 1572, 1577-78 (Fed. Cir. 1997); *BIC Leisure Prods., Inc. v. Windsurfing Int'l, Inc.*, 1 F.3d 1214, 1218-19 (Fed. Cir. 1993); *Carella v. Starlight Archery*, 804 F.2d 135, 141 (Fed. Cir. 1986); *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 552 (Fed. Cir. 1984); *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978).

**4. REASONABLE ROYALTY - ENTITLEMENT**

26. Abbott is entitled to at least a reasonable royalty to compensate it for Centocor's infringement. If you find that Abbott has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then you must award Abbott a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

**Sources:**

FCBA Model Patent Jury Instructions at 69 and authorities cited therein (35 U.S.C. § 284; *Crystal Semiconductor Corp. v. Tritech Microelectronics Int'l, Inc.*, 246 F.3d 1336 (Fed. Cir. 2001); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc)).

**5. REASONABLE ROYALTY − DEFINITION**

27. A royalty is a payment made to a patent holder in exchange for the right to make, use, or sell the claimed invention. A reasonable royalty is the amount of royalty payment that a patent holder and the infringer would have agreed to in a hypothetical negotiation taking place at a time prior to when the infringement first began. In considering this hypothetical negotiation, you should focus on what the expectations of the patent holder and the infringer would have been had they entered into an agreement at that time, and had they acted reasonably in their negotiations. In determining this, you must assume that both parties believed the patent was valid and infringed and the patent holder and infringer were willing to enter into an agreement. The reasonable royalty you determine must be a royalty that would have resulted from the hypothetical negotiation, and not simply a royalty either party would have preferred. Evidence of things that happened after the infringement first began can be considered in evaluating the reasonable royalty only to the extent that the evidence aids in assessing what royalty would have resulted from a hypothetical negotiation. Although evidence of the actual profits an alleged infringer made may be used to determine the anticipated profits at the time of the hypothetical

negotiation, the royalty may not be limited or increased based on the actual profits the alleged infringer made.

**Sources:**

FCBA Model Patent Jury Instructions at 70 and authorities cited therein (*Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292 (Fed. Cir. 2011); *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam); *Golight*, *Inc. v. Wal-Mart Stores*, *Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker*, *Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard*, *Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970).)

## 6. REASONABLE ROYALTY − RELEVANT FACTORS

28. In determining the reasonable royalty, you should consider all the facts known and available to the parties at the time the infringement began. Some of the kinds of factors that you may consider in making your determination are:

(1) The royalties received by the patentee for the licensing of the patent-in-suit, proving or tending to prove an established royalty.

(2) The rates paid by the licensee for the use of other patents comparable to the patent-in-suit.

(3) The nature and scope of the license, as exclusive or nonexclusive, or as restricted or nonrestricted in terms of territory or with respect to whom the manufactured product may be sold.

(4) The licensor's established policy and marketing program to maintain his or her patent monopoly by not licensing others to use the invention or by granting licenses under special conditions designed to preserve that monopoly.

(5) The commercial relationship between the licensor and licensee, such as whether they are competitors in the same territory in the same line of business, or whether they are inventor and promoter.

(6) The effect of selling the patented specialty in promoting sales of other products of the licensee, the existing value of the invention to the licensor as a generator of sales of his nonpatented items, and the extent of such derivative or convoyed sales.

(7) The duration of the patent and the term of the license.

(8) The established profitability of the product made under the patents, its commercial success, and its current popularity.

(9) The utility and advantages of the patented property over the old modes or devices, if any, that had been used for working out similar results.

(10) The nature of the patented invention, the character of the commercial embodiment of it as owned and produced by the licensor, and the benefits to those who have used the invention.

(11) The extent to which the infringer has made use of the invention and any evidence probative of the value of that use.

(12) The portion of the profit or of the selling price that may be customary in the particular business or in comparable business to allow for the use of the invention or analogous inventions.

(13) The portion of the realizable profits that should be credited to the invention as distinguished from nonpatented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer.

(14) The opinion and testimony of qualified experts.

(15) The amount that a licensor (such as the patentee) and a licensee (such as the infringer) would have agreed upon (at the time the infringement began) if both had been reasonably and voluntarily trying to reach an agreement; that is, the amount which a

prudent licensee—who desired, as a business proposition, to obtain a license to manufacture and sell a particular article embodying the patented invention—would have been willing to pay as a royalty and yet be able to make a reasonable profit and which amount would have been acceptable by a prudent patentee who was willing to grant a license.

29. No one factor is dispositive and you can and should consider the evidence that has been presented to you in this case on each of these factors. You may also consider any other factors which in your mind would have increased or decreased the royalty the infringer would have been willing to pay and the patent holder would have been willing to accept, acting as normally prudent business people. The final factor establishes the framework which you should use in determining a reasonable royalty, that is, the payment that would have resulted from a negotiation between the patent holder and the infringer taking place at a time prior to when the infringement began.

**Sources:**

FCBA Model Patent Jury Instructions at 70 and authorities cited therein (*ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860 (Fed. Cir. 2010) (per curiam); *Golight, Inc. v. Wal-Mart Stores, Inc.*, 355 F.3d 1327, 1338 (Fed. Cir. 2004); *Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1108-10 (Fed. Cir. 1996); *Mahurkar v. C.R. Bard, Inc.*, 79 F.3d 1572, 1579-81 (Fed. Cir. 1996); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1554 (Fed. Cir. 1995) (en banc); *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970)).

August 29, 2012 Respectfully submitted,


| /s/ Robert J. Gunther, Jr.<br>Robert J. Gunther, Jr.<br>Jane M. Love<br>Anne-Marie Yvon<br>Violetta G. Watson<br>Paula Estrada de Martin<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>7 World Trade Center<br>New York, New York 10007<br>Tel: (212) 230-8800<br>Fax: (212) 230-8888<br><br>William F. Lee (BBO # 291960)<br>Anne M. McLaughlin (BBO # 666081)<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>60 State Street<br>Boston, MA 02109<br>Tel: (617) 526-6000<br>Fax: (617) 526-5000<br><br>William G. McElwain (BBO # 332510)<br>Amy K. Wigmore<br>Amanda L. Major<br>Jacob S. Oyloe<br>Rachel L. Weiner<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>1875 Pennsylvania Avenue, N.W.<br>Washington, D.C. 20006<br>Tel: (202) 663-6000<br>Fax: (202) 663-6363<br><br>William W. Kim<br>Arthur W. Coviello<br>WILMER CUTLER PICKERING HALE AND DORR LLP<br>905 Page Mill Road<br>Palo Alto, CA 94304<br>Tel: (650) 858-6000<br>Fax: (650) 858-6100<br><br>*Attorneys for Abbott GmbH & Co., KG, Abbott Bioresearch Center, Inc. and Abbott Biotechnology, Ltd.* | /s/ Dianne B. Elderkin<br>Dianne B. Elderkin<br>Barbara L. Mullin<br>Steven D. Maslowski<br>Angela Verrecchio<br>Matthew A. Pearson<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>Two Commerce Square<br>2001 Market St., Suite 4100<br>Philadelphia, PA 19103-7013<br>(215) 965-1200<br>Fax: (215) 965-1210<br><br>Emily C. Johnson<br>AKIN GUMP STRAUSS HAUER & FELD LLP<br>1333 New Hampshire Avenue, N.W.<br>Washington, D.C. 20036<br>(202) 887-4000<br>Fax: (202) 887-4288<br><br>Heather B. Repicky (BBO # 663347)<br>NUTTER MCCLENNEN & FISH LLP<br>World Trade Center West<br>155 Seaport Boulevard<br>Boston, Massachusetts 02210<br>(617) 439-2000<br><br>*Attorneys for Centocor Ortho Biotech, Inc. and Centocor Biologics LLC* |
|---|---|