# EXHIBIT 10



**HIGHMARK, INC., Plaintiff-Appellee, v. ALLCARE HEALTH MANAGEMENT SYSTEMS, INC., Defendant-Appellant.**

2011-1219

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

*2012 U.S. App. LEXIS 16450*

**August 7, 2012, Decided**

**PRIOR HISTORY:** [*1]
Appeal from the United States District Court for the Northern District of Texas in case no. 03-CV-1384, Judge Terry Means.
*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 706 F. Supp. 2d 713, 2010 U.S. Dist. LEXIS 31798 (N.D. Tex., 2010)*

**DISPOSITION:** AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellee health care provider brought an action against defendant patent owner seeking a declaration of non-infringement of the patent for a method of managing health care systems, and the owner counterclaimed for infringement. The owner appealed the order of the U.S. District Court for the Northern District of Texas which granted the provider an award of attorney fees under *35 U.S.C.S. § 285* based on frivolous claims and litigation misconduct.

**OVERVIEW:** The district court found that the owner frivolously claimed that a preamble was not limiting and that the owner's claim construction was proper. The district court also found that the owner engaged in litigation misconduct by asserting a meritless claim based on res judicata, shifting its construction of a patent claim, and making misrepresentations to a transferor court. The appellate court first held that the owner's claim that the preamble was not limiting was objectively and subjectively unreasonable since patent limitations clearly relied upon the preamble, and the preamble recited an integrated health management system which required patient and employer interaction. However, there was support in the specification for the owner's position that the patent covered entry of both symptoms and treatment in a diagnostic smart system, and the owner immediately dropped its res judicata claim upon learning that the provider was not sufficiently related to a prior litigation. Further, the owner's rewording of its proposed claim construction did not alter the substance of the construction, and sanctions for misrepresentations were properly within the province of the transferor court.

**OUTCOME:** The order awarding attorney fees to the provider was affirmed in part with regard to the owner's claim regarding the preamble, the order was reversed in part with regard to owner's proposed claim construction, the res judicata issue, and the misrepresentations, and the case was remanded for a redetermination of the amount of attorney fees.

**LexisNexis(R) Headnotes**

*Patent Law > Remedies > Collateral Assessments > Attorney Fees*

[HN1] Under *35 U.S.C.S. § 285*, a court in exceptional patent cases may award reasonable attorney fees to the prevailing party. Once it is determined that the party seeking fees is a prevailing party, determining whether to award attorneys' fees under *§ 285* is a two-step process. First, a prevailing party must establish by clear and convincing evidence that the case is exceptional. An award of fees against a patentee can be made for a frivolous claim, inequitable conduct before the Patent and Trademark Office, or misconduct during litigation. Second, if the case is deemed exceptional, the court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award. The amount of the attorney fees awarded depends on the extent to which the case is exceptional.

*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN2] It is established law under *35 U.S.C.S. § 285* that, absent misconduct in the course of litigation or in securing a patent, sanctions may be imposed against a patentee only if two separate criteria are satisfied: (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless. The requirement that the litigation be objectively baseless does not depend on the state of mind of the party at the time the action was commenced, but rather requires an objective assessment of the merits. To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits. Furthermore, even if the claim is objectively baseless, it must be shown that lack of objective foundation for the claim was either known or so obvious that it should have been known by the party asserting the claim. This is known as the subjective prong of the inquiry. This same objective/subjective standard applies for both patentees asserting claims of infringement and alleged infringers defending against claims of infringement.

*Evidence > Inferences & Presumptions > Presumptions > Creation of Presumptions*
*Patent Law > Jurisdiction & Review > Standards of Review > Clearly Erroneous Review*
*Patent Law > Jurisdiction & Review > Standards of Review > De Novo Review*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN3] The threshold objective prong of the test for imposing sanctions in a patent case is a question of law based on underlying mixed questions of law and fact and is subject to de novo review. That determination must be made by a court as a matter of law rather than by a jury. An appellate court reviews a determination of objective reasonableness without deference since it is a question of law. With respect to the subjective prong, there is a presumption that an assertion of infringement of a duly granted patent is made in good faith. Thus, the subjective prong must be established with clear and convincing evidence. The appellate court reviews factual findings as to subjective bad faith for clear error.

*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN4] The objective prong of the test for imposing sanctions in a patent case requires a retrospective assessment of the merits of the entire litigation determined based on the record ultimately made in infringement proceedings. The question is whether, in light of that record, no reasonable litigant could realistically expect success on the merits. The objective prong is a single backwards-looking inquiry into the reasonableness of the claims in light of the full record.

*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN5] In considering a party's subjective state of mind in patent litigation for purposes of sanctions, a court takes into account the totality of the circumstances. Unlike the objective prong, which is a single retrospective look at the entire litigation, the subjective prong may suggest that a case initially brought in good faith may be continued in bad faith depending on developments during discovery and otherwise.

*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN6] A court applies the objective/subjective standard for imposing sanctions in a patent case on a claim by claim basis. Because the rationale for awarding fees against a patentee for the filing of frivolous claims is to reimburse the alleged infringer for defending an action improperly brought, in these situations attorneys' fees can only be shifted insofar as each claim is found frivolous.

*Patent Law > Infringement Actions > Claim Interpretation > Construction Preferences*

[HN7] The preamble of a patent claim is limiting where the limitations in the body of the claim rely upon and derive antecedent basis from the preamble.

*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN8] A claim of patent infringement is brought in subjective bad faith if the objective unreasonableness of the claim was either known or so obvious that it should have been known by the patentee.

*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN9] Even where infringement allegations are objectively unreasonable, a patentee may have reason to believe that its allegations are supportable so as to negate a finding of bad faith.

*Civil Procedure > Sanctions > General Overview*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN10] A lack of sanctions against attorneys is not in itself a ground for barring sanctions against a client. *Fed. R. Civ. P. 11* sanctions against an attorney may form a basis for an exceptional-case finding for purposes of sanctions in a patent case, but the absence of *Rule 11* sanctions does not mandate the opposite conclusion.

*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN11] Simply being wrong about patent claim construction does not subject a party to sanctions where the construction is not objectively baseless.

*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN12] An exceptional-case finding to warrant sanctions in a patent case can be supported by litigation misconduct. Litigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings, and includes advancing frivolous arguments during the course of the litigation or otherwise prolonging litigation in bad faith. A finding of exceptionality based on litigation misconduct, however, usually does not support a full award of attorneys' fees. Instead, the fee award must bear some relation to the extent of the misconduct and compensate a party for the extra legal effort to counteract the misconduct.

*Patent Law > Jurisdiction & Review > Standards of Review > De Novo Review*
*Patent Law > Remedies > Collateral Assessments > Attorney Fees*
[HN13] For purposes of sanctions in a patent case, in evaluating the frivolity of particular arguments made during the course of the litigation, the arguments must be shown to be at least objectively unreasonable. Thus, under *35 U.S.C.S. § 285* a party cannot be sanctioned for making frivolous arguments during the course of the litigation if the arguments themselves were not objectively unreasonable at the time they were made. An appellate court determines whether a particular argument was objectively unreasonable without deference to the district court's determination.

*Civil Procedure > Sanctions > General Overview*
[HN14] A court generally should sanction conduct beyond that occurring in trial only when a party engages in bad-faith conduct which is in direct defiance of the sanctioning court.

**COUNSEL:** CYNTHIA E. KERNICK, Reed Smith, LLP, of Pittsburgh, Pennsylvania, argued for plaintiff-appellee. With her on the brief were JAMES C. MARTIN, KEVIN S. KATONA and THOMAS M. POHL.

DONALD R. DUNNER, Finnegan, Henderson, Farabow, Garrett & Dunnerr, LLP, of Washington, DC, argued for defendant-appellant. With him on the brief were ERIK R. PUKNYS, of Palo Alto, California. Of counsel on the brief was DAN S. BOYD, The Boyd Law Firm, P.C., of Dallas, Texas.

**JUDGES:** Before NEWMAN, MAYER, and DYK, Circuit Judges. Opinion for the court filed by Circuit Judge DYK. Dissenting in part opinion filed by Circuit Judge Mayer.

**OPINION BY:** DYK

**OPINION**

   DYK, *Circuit Judge*.

Allcare Health Management Systems, Inc. ("Allcare") appeals from an order of the United States District Court for the Northern District of Texas finding this case exceptional under *35 U.S.C. § 285* and awarding attorneys' fees and costs to Highmark, Inc. ("Highmark"). *See Highmark, Inc. v. Allcare Health Mgmt. Sys. Inc. ("Exceptional Case Order"), 706 F. Supp. 2d 713, 738 (N.D. Tex. 2010)*. The district [*2] court found the case exceptional because it concluded that Allcare had pursued frivolous infringement claims, asserted meritless legal positions during the course of the litigation, shifted its claim construction positions, and made misrepresentations in connection with a motion to transfer venue. We affirm in part, reverse in part, and remand.

BACKGROUND

I

Allcare owns *U.S. Patent No. 5,301,105 ("the '105 patent")*, which is directed to "managed health care systems" used to interconnect and integrate physicians, medical care facilities, patients, insurance companies, and financial institutions, *'105 Patent* col. 1 ll. 4-11, particularly with respect to utilization review. In health care, "utilization review" is the process of determining whether a health insurer should approve a particular treatment for a patient. In general, the patent's claims cover a method of determining whether utilization review is necessary in a particular instance, and whether a recommended treatment is appropriate. If utilization review is required, the method prevents authorization and payment until the appropriateness of the treatment has been determined and the treatment has been approved.

At issue in this case [*3] are claims 52, 53, and 102. Independent claim 52 recites:

> A method of managing a comprehensive health care management system utilizing a data processor, data bank memories, input means and payment means comprising:
>
> (a) entering into said data processor data identifying each of a predetermined plurality or persons;
>
> (b) entering into one of said data bank memories an identification of predetermined procedures requiring utilization review;
>
> (c) entering through said input means into said data processor data symbolic of patient symptoms for tentatively identifying a proposed mode of treatment and, when said proposed mode of treatment includes one of said predetermined procedures requiring utilization review, producing indicia indicative thereof; and
>
> (d) preventing payment therefor by said payment means until said utilization review has been obtained and data indicative thereof has been entered into said system.

*'105 patent* col. 21 ll. 22-41. Claim 53 depends from claim 52 and claims the additional step of producing some sort of indicia when the proposed mode of treatment includes ancillary services, such as by pharmacists, prosthesis providers, dentists, and the like. *'105 patent* col. 21 ll. [*4] 43-49, col. 14 ll. 35-38. Independent claim 102 recites:

> A method of managing an integrated health care management system having input means, payment means and memory storage comprising:
>
> (a) storing through said input means into said memory storage personal health profile data for each of a predetermined plurality of persons;
>
> (b) storing into said

memory storage symptoms and treatment data for each of a predetermined plurality of health profiles and problems;

(c) storing in said memory storage criteria for identifying treatments requiring utilization review;

(d) storing in said memory storage criteria for identifying treatments requiring second opinions;

(e) entering into said system information identifying a proposed medical treatment for one of said plurality of persons;

(f) identifying whether or not said proposed medical treatment requires utilization review; and

(g) preventing said system from approving payment for said proposed medical treatment if said proposed medical treatment requires utilization review until such utilization review has been conducted.

*'105 patent* col. 28 ll. 8-30.

II

Highmark, a Pennsylvania insurance company, filed suit against Allcare in the Western District of Pennsylvania [*5] seeking a declaratory judgment of non-infringement, invalidity, and unenforceability of all claims of the *'105 patent*. After the case was transferred to the Northern District of Texas, Allcare counterclaimed for infringement, asserting infringement of claims 52, 53, and 102. During the course of the case, the district court appointed a special master to resolve issues of claim construction, including various limitations in claims 52 and 102. These claim construction disputes are described below. The special master issued a claim construction report, Special Master's Report and Recommended Decisions on Claim Construction ("*Claim Construction Report*"), *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, No. 4:03-CV-1384-Y (N.D. Tex. Dec. 20, 2006), which the district court adopted, *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, No. 4:03-CV-1384-Y (N.D. Tex. Mar. 23, 2007).

Highmark moved for summary judgment of non-infringement. While Allcare opposed Highmark's motion with respect to claims 52 and 53, it did not oppose the motion with regard to claim 102 and formally withdrew the infringement allegations with respect to that claim. The district court reappointed the special master, [*6] who recommended that summary judgment of non-infringement of claims 52 and 53 be granted. Special Master's Report and Recommended Decisions on Summary Judgment Motions ("*Summary Judgment Report*"), *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, No. 4:03-CV-1384-Y, slip op. at 15 (N.D. Tex. Apr. 25, 2008). The district court adopted the special master's recommendations, Amended Order Adopting Findings and Recommendations of Special Master, *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., No. 4:03-CV-1384-Y, 2008 U.S. Dist. LEXIS 68648 (N.D. Tex. Sept. 2, 2008)*, and entered final judgment of non-infringement in favor of Highmark, Amended Final Judgment, *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, No. 4:03-CV-1384-Y (N.D. Tex. Oct. 15, 2008). Allcare appealed. On July 13, 2009, this court affirmed the district court's judgment under *Federal Circuit Rule 36* without a written opinion. *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 329 F. App'x 280 (Fed. Cir. 2009)*.

While the previous appeal was pending before this court, Highmark moved for an exceptional case finding with respect to Allcare and an award of attorneys' fees and expenses under *section 285* and for sanctions against Allcare's attorneys under [*7] *Rule 11 of the Federal Rules of Civil Procedure*.

After reviewing the record, the district court found the case exceptional and that Allcare's attorneys had violated *Rule 11. Exceptional Case Order, 706 F. Supp. 2d at 738-39*. The court based both its exceptional case finding and the Rule 11 sanctions on the same conduct.

The court found that Allcare's claims for infringement of claims 52 and 102 were frivolous. The court also found that Allcare engaged in litigation misconduct by asserting a frivolous position based on *res judicata* and collateral estoppel, shifting its claim construction position throughout the course of the proceedings before the district court, and making misrepresentations to the Western District of Pennsylvania in connection with a motion to transfer venue. After finding the case exceptional under *section 285*, the district court entered judgment awarding High-mark $4,694,727.40 in attorneys' fees and $209,626.56 in expenses, and it also invoked its inherent power to impose sanctions and awarded $375,400.05 in expert fees and expenses. The district court did not determine how much of the monetary awards were attributable to each issue.

Shortly after the district court's [*8] exceptional case finding and judgment awarding fees and expenses, Allcare's attorneys withdrew from the case based on conflicts of interest and separately moved for reconsideration of the Rule 11 sanctions. To support the motions for reconsideration, the attorneys provided additional evidence concerning their representation of Allcare. Based on these filings, the district court vacated the Rule 11 sanctions against the attorneys. After the court vacated the attorney sanctions, Allcare moved to reconsider the exceptional case finding and the judgment awarding attorneys' fees, or in the alternative to grant a new trial or hold an evidentiary hearing. This motion was denied. Allcare timely appealed. We have jurisdiction pursuant to *28 U.S.C. § 1295(a)*.

DISCUSSION

[HN1] Under *35 U.S.C. § 285*, a "court in exceptional cases may award reasonable attorney fees to the prevailing party." Once it is determined that the party seeking fees is a prevailing party, determining whether to award attorneys' fees under *35 U.S.C. § 285* is a two-step process. *Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1327-28 (Fed. Cir. 2003)*. First, a prevailing party must establish by clear and convincing evidence that [*9] the case is "exceptional." *Id. at 1327*. An award of fees against a patentee can be made for a frivolous claim, inequitable conduct before the Patent and Trademark Office, or misconduct during litigation. *Beckman Instruments, Inc. v. LKB Produkter AB, 892 F.2d 1547, 1551 (Fed. Cir. 1989)*. Second, if the case is deemed exceptional, a court must determine whether an award of attorneys' fees is appropriate and, if so, the amount of the award. *Forest Labs., 339 F.3d at 1328*. "[T]he amount of the attorney fees [awarded] depends on the extent to which the case is exceptional." *Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1344 (Fed. Cir. 2001)*.

There is no dispute that Highmark is the prevailing party in this litigation. We consider the various grounds relied on by the district court for finding this case exceptional.

I

The central issue is whether Allcare's infringement counterclaims against Highmark were frivolous. [HN2] It is established law under *section 285* that absent misconduct in the course of the litigation or in securing the patent, sanctions may be imposed against the patentee only if two separate criteria are satisfied: (1) the litigation is brought in subjective bad faith, and (2) [*10] the litigation is objectively baseless. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005)*. The requirement that the litigation be objectively baseless "does not depend on the state of mind of the [party] at the time the action was commenced, but rather requires an objective assessment of the merits." *Id. at 1382*. "To be objectively baseless, the infringement allegations must be such that no reasonable litigant could reasonably expect success on the merits." *Dominant Semiconductors Sdn. Bhd. v. OSRAM GmbH, 524 F.3d 1254, 1260 (Fed. Cir. 2008)* (internal quotation marks omitted).

Furthermore, even if the claim is objectively baseless, it must be shown that lack of objective foundation for the claim "was either known or so obvious that it should have been known" by the party asserting the claim. *In re Seagate Tech., LLC, 497 F.3d 1360, 1371 (Fed. Cir. 2007)*; see also *iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011)*. This is known as the subjective prong of the inquiry. This same objective/subjective standard applies for both patentees asserting claims of infringement and alleged infringers defending against claims of infringement. *See* [*11] *iLOR, 631 F.3d at 1377*.

We have recently clarified that [HN3] "the threshold objective prong . . . is a question of law based on underlying mixed questions of law and fact and is subject to *de novo* review." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 682 F.3d 1003, 2012 WL*

2149495, at *1 (Fed. Cir. 2012); *see also Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1236 (Fed. Cir. 2011). That determination must be made by the court as a matter of law rather than by the jury. We review the court's determination of objective reasonableness without deference since it is a question of law. *Bard*, 682 F.3d 1003, 2012 WL 2149495, at *1.[1] With respect to the subjective prong, "there is a presumption that an assertion of infringement of a duly granted patent is made in good faith." *Medtronic Navigation, Inc. v. BrainLAB Medizinische Com-putersyteme GmbH*, 603 F.3d 943, 954 (Fed. Cir. 2010). Thus, the subjective prong of *Brooks Furniture* must be established with clear and convincing evidence.[2] *iLOR*, 631 F.3d at 1377; *see also Medtronic*, 603 F.3d at 954. We review factual findings as to subjective bad faith for clear error. *See Forest Labs.*, 339 F.3d at 1328; *see also Powell*, 663 F.3d at 1236.

> 1   The [*12] dissent urges that *Bard* was wrongly decided in holding that de novo review was required. As explained in *Bard*, the objective reasonableness test was based on the objective prong of the standard for sham litigation explained in *Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.*, 508 U.S. 49, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993). The Supreme Court in *Professional Real Estate* held that objective reasonableness in this context is an issue decided by the court as a matter of law. *508 U.S. at 63*.
>
> The dissent nonetheless urges that treating objective reasonableness as a question of law is inconsistent with *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990), and *Pierce v. Underwood*, 487 U.S. 552, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988). These cases held that appeals courts must apply deferential standards of review to district court Rule 11 sanctions and determinations under the Equal Access to Justice Act ("EAJA") that a litigation position was "substantially justified." *Rule 11* and EAJA are materially different from *section 285*, and the Supreme Court in *Cooter* and *Pierce* identified relevant distinguishing factors.
>
> First, in *Pierce*, the Supreme Court recognized that where there is potential for a "substantial amount of [monetary] [*13] liability produced by the District Judge's decision," more "intensive[]" review by the appellate court is necessary. *487 U.S. at 563*. Because the median award in EAJA cases was less than $3,000, deferential review was appropriate. Under *section 285*, however, the award of fees is routinely in the millions of dollars as it is here, thus supporting de novo review. Also in *Pierce*, the Court noted that the language of the EAJA statute itself "suggests some deference to the district court upon appeal," and recognizes deferential review where an agency awards fees. *Id. at 559*.
>
> Second, while both *Rule 11* and *section 285* have both subjective and objective components, *Rule 11* review is not easily separated into these separate components as is the standard under *section 285*. *See Cooter*, 496 U.S. at 401-02. Because deferential review is particularly appropriate as to the subjective determination, *see id.*, a deferential standard for the whole of *Rule 11* is required. Under the *Brooks Furniture* standard, where the *section 285* inquiry is easily divided into objective and subjective components, only the subjective prong is reviewed under a deferential standard.
>
> Third, the inquiries under *Rule 11* and [*14] EAJA look to the situation existing at the time a particular claim or representation was made, analyzing only the facts and law present at that time determine whether the claim or representation was justified. Such inquiries are necessarily fact intensive. On the other hand, as explained below, the inquiry under the objective prong of *Brooks Furniture* is a retrospective assessment of the merits of the entire litigation and does not rely on the facts present at a particular time and is "based on the record ultimately made in the infringement proceedings." *Bard*, 682 F.3d 1003, 2012 WL 2149495, at *4; *see also Seagate*, 497 F.3d at 1371 (stating that the objective prong is "determined by the record developed in the infringement proceeding"). In other words, the objective reasonableness determination does not require fact finding. The question is simply whether the record established in the proceeding supports a reasonable argument as to the facts and law.
>
> Finally, the policy goals of sanctioning and

deterring poor litigation practices present in *Cooter* (which suggest deference to the district court because it is best situated to achieve these goals) are not present here. *See Fed. R. Civ. P. 11* advisory [*15] committee's note to 1993 amendments ("[T]he purpose of Rule 11 sanctions is to deter rather than to compensate . . . ."). The purpose of *section 285*, unlike that of *Rule 11*, is not to control the local bar's litigation practices--which the district court is better positioned to observe--but is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust, based on the baselessness of the suit or because of litigation or Patent Office misconduct, to require it to bear its own costs. *See Badalamenti v. Dunham's, Inc., 896 F.2d 1359, 1364 (Fed. Cir. 1990)*; *Cent. Soya Co., Inc. v. Geo. A. Hormel & Co., 723 F.2d 1573, 1578 (Fed. Cir. 1983)*.

2   As *Seagate* noted, under the subjective prong, "to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer *acted despite* an objectively high likelihood that its actions constituted infringement of a valid patent." *497 F.3d at 1371* (emphasis added).

II

Highmark contends that the *Brooks Furniture* objective reasonableness standard applies only with respect to the initial filing of the infringement counterclaim [*16] and does not apply to determining whether Allcare's continued litigation of baseless claims was frivolous. Appellee's Br. 41. That is not correct. Rather, [HN4] the objective prong requires a retrospective assessment of the merits of the entire litigation determined "based on the record ultimately made in the infringement proceedings." *Bard, 682 F.3d 1003, 2012 WL 2149495, at *4* (directing the district court to determine in the first instance, "based on the record ultimately made in the infringement proceedings, whether a reasonable litigant could realistically expect [its positions] to succeed" (internal quotation marks omitted)); *iLOR, 631 F.3d at 1378*; *Seagate, 497 F.3d at 1371* (stating that the objective prong is "determined by the record developed in the infringement proceeding"). The question is whether, in light of that record, "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 60, 113 S. Ct. 1920, 123 L. Ed. 2d 611 (1993)*. The objective prong is a single backwards-looking inquiry into the reasonableness of the claims in light of the full record. *See iLOR, 631 F.3d at 1377-78* (citing *Brooks Furniture, 393 F.3d at 1382*).

Similarly, [*17] [HN5] in considering a party's subjective state of mind, we are "to take into account the totality of circumstances." *Mach. Corp. of Am. v. Gullfiber AB, 774 F.2d 467, 473 (Fed. Cir. 1985)*; *Forest Labs., 339 F.3d at 1330* (considering the record as a whole in determining whether the patentee maintained its infringement counterclaim in bad faith). Unlike the objective prong, which is a single retrospective look at the entire litigation, the subjective prong may suggest that a case initially brought in good faith may be continued in bad faith depending on developments during discovery and otherwise. *See Computer Docking Station Corp. v. Dell, Inc., 519 F.3d 1366, 1380 (Fed. Cir. 2008)*.

However, [HN6] we apply the objective/subjective standard on a claim by claim basis. *ICU Med., Inc. v. Alaris Med. Sys., Inc., 558 F.3d 1368, 1379-81 (Fed. Cir. 2009)* (affirming the district court's determination that the patentee's assertion of only one claim was objectively baseless and brought in bad faith); *see also Mathis v. Spears, 857 F.2d 749, 761 (Fed. Cir. 1988)*. Because the rationale for awarding fees against a patentee for the filing of frivolous claims is "to reimburse the alleged infringer for defending [*18] an action improperly brought," *Mach. Corp., 774 F.2d at 474*, in these situations attorneys' fees can only be shifted insofar as each claim is found frivolous, *see Mathis, 857 F.2d at 761* (awarding attorneys' fees only for the frivolous claims); *see also Beckman, 892 F.2d at 1554* (holding that when "one party prevails on some claims in issue while the other party prevails on other claims, this fact should be taken into account when determining the amount of fees under *§ 285*"). Thus, here we will treat separately the finding that infringement claim based on claim 102 rendered the case exceptional and the finding that the infringement claim based on claim 52 rendered the case exceptional. *See Carter v. ALK Holdings, Inc., 605 F.3d 1319, 1323-26 (Fed. Cir. 2010)* (addressing separately whether each of three counts asserted by the plaintiff was frivolous).

A

The district court found that Allcare's claim 102

infringement litigation warranted an exceptional case finding. We agree.

Claim 102 is directed to "[a] method of managing an integrated health care management system." *'105 patent* col. 28 ll. 8-9. The key question with respect to claim 102 was whether the preamble term "integrated health [*19] care management system" was a claim limitation and, if so, whether it required patient and employer interaction. On appeal, Allcare contends that it was not unreasonable to argue that the preamble was not limiting or, if limiting, that it did not require patient and employer interaction.

[HN7] The preamble of claim 102 clearly falls within those cases where the preamble is held to be limiting because the "limitations in the body of the claim rely upon and derive antecedent basis from the preamble." *Eaton Corp. v. Rockwell Int'l Corp., 323 F.3d 1332, 1339 (Fed. Cir. 2003)*. Here, claim 102's recitation of "said system" in elements (e) and (g) can only derive its antecedent basis from the "integrated health care management system" from the preamble. It is also clear from the specification that an "integrated health care management system" required patient and employer interaction in addition to the participation of the health care provider and insurer. The patent specification begins by explicitly stating that "[t]his invention relates to managed health care systems . . . which integrate physicians, medical care facilities, patients, insurance companies and/or other health care payers, employers [*20] and bank and/or other financial institutions." *'105 patent* col. 1 ll. 1-11. The specification goes on to explain that "[t]he preferred embodiment of the present invention includes the *integrated interconnection and interaction* of the patient, health care provider, bank or other financial institution, utilization reviewer/case manager and employer." *'105 patent* col. 1 ll. 54-58 (emphasis added). In distinguishing the prior art in the background of the invention, the specification also explains that previous payment systems have not "included *integration of the active participation* by a patient's employer or inclusion of a patient's own available cash balances." *'105 patent* col. 1 ll. 44-47 (emphasis added). The invention was thus intended to "provide[] full integration of each of the aforementioned activities." *'105 patent* col. 1 ll. 50-51. Moreover, one of the objects of the invention is "to provide an integrated health care management system including *interactive participation* with patients' employers and banks." *'105 patent* col. 2 ll. 11-14.

Allcare agreed early in the case in a Joint Claim Construction statement that the preamble to claim 102 was limiting. *See* J.A. 5665 ("The parties [*21] also agree that the preamble term 'integrated health care management system' is construed as a claim limitation . . . ."). Indeed, Allcare's own proposed construction of the preamble specified that the system "integrates (*i.e.*, . . . includes) physicians, medical care facilities, *patients*, insurance companies and/or other health care payers, *employers* and banks and/or other financial institutions." *Claim Construction Report*, slip op. at 43-44 (emphases added). Allcare thus contemplated that an integrated health care management system somehow required interaction with patients and employers. Even now, Allcare offers no plausible arguments that the preamble should not have been limiting or that it did not require patient and employer interaction.

There was also no plausible argument that Highmark's method involved the interconnection and interaction of patients and employers as was required by claim 102. Allcare's expert even conceded as much during deposition. J.A. 22885.[3] Allcare has not even argued that Highmark's method included such interaction. Thus, Allcare's infringement claims with respect to claim 102 were objectively unreasonable.

3

> Q. How does the employee/member [i.e., patient] [*22] interact with the bank in the Highmark system?
>
> A. The employee--from the information that I read, the employee does not appear to interact with the bank. . . .
>
> Q. Is there any interaction between the employee/member and the employer in Highmark's system?
> A. The employer--interaction between the employee and the employer in the Highmark system, based on my--my opinion is without my report no.

Allcare also argues on appeal that its infringement

allegations with respect to claim 102 do not warrant an exceptional case finding because they were not brought in subjective bad faith. [HN8] A claim is brought in subjective bad faith if the objective unreasonableness of the claim "was either known or so obvious that it should have been known" by the patentee. *See Seagate, 497 F.3d at 1371*. That is clearly so here. Allcare knew or should have known that its allegation of infringement of claim 102 was unreasonable, and this is not a situation in which Allcare acted in good faith at the inception of the litigation, but because of later developments acted in bad faith in continuing the litigation.

To be sure, [HN9] even where infringement allegations are objectively unreasonable, a patentee may have reason to believe [*23] that its allegations are supportable so as to negate a finding of bad faith.[4] But here, Allcare has made no such showing at any point in the litigation. Allcare points only to a survey of health care management and insurance organizations regarding their medical authorization and claims payment systems performed by Seaport Surveys, Inc. ("Seaport") to demonstrate that it had reason to believe its infringement allegations with respect to claim 102 were supportable. Allcare, however, never demonstrated how the survey (or anything else in the record) supported its claim construction position with respect to claim 102. The survey also did not show that Highmark was infringing under the correct claim construction. The district court did not clearly err in concluding that All-care's claim 102 allegations were brought in subjective bad faith.

---

4   Thus, for example, an adequate pre-filing investigation may negate a claim of bad faith. The district court here found that Allcare did not conduct an adequate prefiling investigation. Since we have concluded that Allcare engaged in bad faith from the inception--because it knew or should have known that the allegation of infringement of claim 102 was [*24] frivolous--we need not examine the prefiling investigation. Furthermore, apart from the *section 285* inquiry, failure to conduct an adequate pre-filing investigation, in some circumstances, independently supports an award of attorneys' fees under *Rule 11. See Hoffmann-La Roche Inc. v. Invamed Inc., 213 F.3d 1359, 1363 (Fed. Cir. 2000)*. Here, the district court did not sanction Allcare under *Rule 11* for its failure to conduct an adequate pre-filing investigation.

---

Allcare also argues that the district court's vacating sanctions against Allcare's attorneys is inconsistent with the district court's exceptional case finding against All-care. This is incorrect. [HN10] A lack of sanctions against attorneys is not in itself a ground for barring sanctions against a client. *Rule 11* sanctions against an attorney may form a basis for an exceptional case finding. *See Brooks Furniture, 393 F.3d at 1381* ("A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as . . . conduct that violates *Fed. R. Civ. P. 11* . . . ."). But the absence of Rule 11 sanctions does not mandate the opposite conclusion. Allcare also contends that new evidence [*25] brought up during the reconsideration of Rule 11 sanctions mandates reversal of the exceptional case finding. However, the additional evidence relied on by the district court in vacating the Rule 11 sanctions had no bearing on the interpretation of claim 102 or Allcare's knowledge of whether Highmark's systems were infringing. The district court thus did not clearly err in concluding that Allcare's allegations of infringement of claim 102 warranted an exceptional case finding.

B

We reach a different conclusion with respect to the claim 52 infringement claims because we conclude that Allcare's position was not objectively unreasonable. Highmark's theory is that it did not infringe because it did not satisfy element (c) of claim 52. Element (c) requires "entering . . . data symbolic of patient symptoms for tentatively identifying a proposed mode of treatment . . . ." *'105 patent* col. 21 ll. 31-34. It was not disputed that this limitation covered the patent's preferred embodiment--what the parties refer to as a "diagnostic smart system"--which automatically generates a list of recommended treatments based on the patient symptoms reported by the healthcare providers. J.A. 11584. The question [*26] was whether this limitation was also met where a physician enters both the symptoms and the proposed diagnosis or treatment as done in Highmark's system, referred to as a traditional "utilization review smart system," i.e., a system which does not automatically generate treatment options. The district court found that it did not, and we affirmed.

The district court's exceptional case finding with respect to claim 52 centered on Allcare's lack of basis for its claim construction position. Allcare's position was that

claim 52 covered systems where the physician entered both the "data symbolic of patient symptoms" and the "proposed mode of treatment," and the system did not automatically propose a treatment. While the claim language "entering . . . data symbolic of patient symptoms for tentatively identifying a proposed mode of treatment" favors the construction ultimately adopted by the district court, it does not foreclose Allcare's construction.

Under *Phillips v. AWH Corp., 415 F.3d 1303, 1315 (Fed. Cir. 2005)* (en banc), we must also look to the specification. There was support in the specification for All-care's position. With respect to the entry of symptoms and treatments, the specification [*27] discloses essentially two embodiments. In the preferred embodiment, a physician first facilitates "the entry of symptoms or other data which can assist in making a diagnosis and identifying . . . recommended treatment protocols." *'105 patent* col. 9 ll. 58-60. The system then "correlat[es] the observed patient symptoms and test results so as to identify the most likely causes of the health problem," as well as "the most appropriate treatment protocols." *'105 patent* col. 9 ll. 61-65. The specification states that the system will only "prepare[] a list of the most likely medical condition . . . [and] the generally approved and/or recommended treatment protocols" when it is "requested" from the system. *'105 patent* col. 6 ll. 64-67. This is what has been referred to as the "diagnostic smart system."

But the specification also discloses an embodiment where, in addition to entering symptom and diagnosis data, "[t]he physician or staff member enters into the System data identifying the proposed pattern of treatment." *'105 patent* col. 10 ll. 3-5. Thereafter, "the System compares the proposed pattern of treatment with . . . recommended treatment protocols and provides an indication of any problem [*28] differences." *'105 patent* col. 10 ll. 5-8. Thus, as the special master recognized, a diagnosis can be made "with or without the assistance of the diagnostic smart system," and the physician can be the one to "enter[] into the system data identifying the proposed treatment." *Claim Construction Report*, slip op. at 3.

We ultimately agreed with the district court that the language of claim 52, and particularly element (c) ("entering . . . data symbolic of patient symptoms for tentatively identifying a proposed mode of treatment"), did not cover the embodiment where the physician entered the symptoms and the proposed treatment. But it was not unreasonable for Allcare to argue that the language of the claim encompassed both embodiments. While Allcare may not have pointed to the specification as an argument in support of its theory, this theory as to the scope of claim 52 was argued repeatedly by Allcare.[5] As we held in *iLOR*, [HN11] "simply being wrong about claim construction should not subject a party to sanctions where the construction is not objectively baseless." *631 F.3d at 1380*. This is not a case where the claim language was not subject to an alternate construction or where "the specification [*29] and prosecution history clearly refute [the patentee's] proposed claim construction." *MarcTec, LLC v. Johnson & Johnson, 664 F.3d 907, 919 (Fed. Cir. 2012)*. Allcare's argument with respect to this element was not "so unreasonable that no reasonable litigant could believe it would succeed." *See iLOR, 631 F.3d at 1378*.

> 5   See *Yee v. City of Escondido, 503 U.S. 519, 534, 112 S. Ct. 1522, 118 L. Ed. 2d 153 (1992)* (holding that where an issue has been properly presented, on appeal "parties are not limited to the precise arguments they made below"); *Interactive Gift Express, Inc. v. Compuserve Inc., 256 F.3d 1323, 1347 (Fed. Cir. 2001)* (holding that although a party cannot change the scope of its claim construction on appeal, it is not precluded "from proffering additional or new supporting arguments, based on evidence of record, for its claim construction").

The burden was on the party seeking sanctions (Highmark) to establish that under this alternative claim construction, the allegations of infringement were objectively unreasonable. There was no showing by Highmark that it would not infringe under an alternate construction of claim 52 covering the system where the physician enters the proposed treatment.

Because we conclude [*30] that Allcare's allegations of infringement of claim 52 were not objectively baseless, we need not reach the question of whether Allcare acted in subjective bad faith. *See Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 547 n.4* ("When making a *section 285* fee award, subjective considerations of bad faith are irrelevant if the challenged claims or defenses are not objectively baseless."); *see also Prof'l Real Estate Investors, 508 U.S. at 60* ("Only if

challenged litigation is objectively meritless may a court examine the litigant's subjective motivation."). We therefore reverse the district court's conclusion that Allcare's allegations of infringement of claim 52 support an exceptional case finding.[6]

> 6 Highmark appears to argue that an exceptional case finding is justified here because Allcare failed to make an adequate pre-filing investigation as required by *Rule 11*. Our cases have not always been clear as to whether the failure to make an adequate pre-filing investigation under *Rule 11* can support an exceptional case finding when the *Brooks Furniture* test has not been satisfied, and it would be a most unusual case in which the infringement case was objectively reasonable [*31] but the pre-filing investigation was unreasonable. We need not decide whether such a finding with respect to the pre-filing investigation could ever support an exceptional case finding because the district court made no finding of a Rule 11 violation with respect to Allcare as opposed to its attorneys, and the Rule 11 violation found with respect to the Allcare attorneys was vacated. As we read the district court opinion, sanctions here were based on a finding that Allcare's claim construction was frivolous, and were not based on any finding that Allcare failed to investigate whether under its proposed claim construction Highmark infringed.

III

Quite apart from the frivolity of the alleged infringement claims, [HN12] an exceptional case finding can also be supported by litigation misconduct. *MarcTec, 664 F.3d at 919* ("[I]t is well-established that litigation misconduct and 'unprofessional behavior may suffice, by themselves, to make a case exceptional under § 285.'" (quoting *Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1106 (Fed. Cir. 2003)))*; *Brooks Furniture, 393 F.3d at 1381* ("A case may be deemed exceptional when there has been . . . misconduct during litigation, . . . conduct that [*32] violates *Fed. R. Civ. P. 11*, or like infractions."). "Litigation misconduct generally involves unethical or unprofessional conduct by a party or his attorneys during the course of adjudicative proceedings," and includes advancing frivolous arguments during the course of the litigation or otherwise prolonging litigation in bad faith. *See Old Reliable, 635 F.3d at 549*; *Computer Docking Station Corp., 519 F.3d at 1379*. A finding of exceptionality based on litigation misconduct, however, usually does not support a full award of attorneys' fees. *See Beckman, 892 F.2d at 1553-54*. Instead, the fee award "must bear some relation to the extent of the misconduct," *Special Devices, 269 F.3d at 1344* (quoting *Read Corp. v. Portec, Inc., 970 F.2d 816, 831 (Fed. Cir. 1992))*, and compensate a party for the "*extra* legal effort to counteract the[] misconduct," *Beckman, 892 F.2d at 1553*.

Here, in addition to determining that Allcare's overall infringement allegations were frivolous, the district court found the case exceptional based on three primary instances of alleged litigation misconduct: (1) asserting a frivolous position based on *res judicata* and collateral estoppel; (2) shifting the claim construction [*33] position throughout the course of the proceedings before the district court; and (3) making misrepresentations to the Western District of Pennsylvania in connection with a motion to transfer venue. None of these actions is sufficient to make this case exceptional under *section 285*.

A

We consider first whether Allcare engaged in litigation misconduct by making frivolous arguments. [HN13] In evaluating the frivolity of particular arguments made during the course of the litigation, the arguments must be shown to be at least objectively unreasonable. Thus, under *section 285* a party cannot be sanctioned for making frivolous arguments during the course of the litigation if the arguments themselves were not objectively unreasonable at the time they were made. *DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc., 567 F.3d 1314, 1339 (Fed. Cir. 2009)* ("Although the district court ultimately concluded that the underlying substance of Medtronic's defense 'lacks merit,' there is no indication, much less a finding, that Medtronic's arguments were baseless, frivolous, or intended primarily to mislead the jury. Although the defense ultimately failed, Medtronic should not have been sanctioned for merely raising [*34] it . . . ."). We determine whether a particular argument was objectively unreasonable without deference to the district court's determination. *See Bard, 682 F.3d 1003, 2012 WL 2149495, at *1*.[7]

> 7 If instead of relying on *section 285* the district court imposed sanctions for frivolous arguments under *Rule 11*, we would apply Rule 11 standards

and the deferential standard of review from *Cooter, 496 U.S. at 405*. But here the district court vacated sanctions under Rule 11 standards and imposed them under only *section 285*.

This issue arises from the following circumstances. Before initiating suit against Highmark, Allcare filed suit against Trigon, a Blue Cross Blue Shield insurance provider like Highmark, in the Eastern District of Virginia, also asserting various claims of the *'105 patent*. As part of the *Trigon* action, the court issued rulings construing some of the disputed claim limitations, primarily in claim 52, in a manner favorable to Allcare. In answering Highmark's complaint, Allcare contended that based on the Blue Cross Blue Shield relationship between Highmark and Trigon, and based on Highmark's knowledge of and participation in the *Trigon* action, Highmark was bound under principles of *res* [*35] *judicata* and collateral estoppel to the district court's rulings in that action. Allcare's theory was one of "virtual representation." However, after Allcare met-and-conferred with Highmark and learned that there was only a limited relationship between Highmark and Trigon, Allcare promptly with-drew the argument.

Although the Supreme Court later "disapprove[d] the doctrine of preclusion by 'virtual representation,'" *Taylor v. Sturgell, 553 U.S. 880, 885, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008)*, at the time Allcare asserted the defense it was not wholly without merit. The doctrine of virtual representation was "equitable and fact-intensive" in nature, with "no clear test for determining the applicability of the doctrine." *Tyus v. Schoemehl, 93 F.3d 449, 455 (8th Cir. 1996)*. Indeed, the doctrine was unsettled and varied widely in application from circuit to circuit. *Compare id. at 455-56* (describing a seven-factor test for finding virtual representation), *with Klugh v. United States, 818 F.2d 294, 300 (4th Cir. 1987)* (holding that a party is "a virtual representative" only if the party is accountable to the nonparties who file subsequent suit and has "the tacit approval of the court" to act on the nonparties' behalf). [*36] Due to the relationship and similarities between Highmark and Trigon, and Highmark's knowledge of and participation in the *Trigon* action, Allcare had at least some support for its initial contention that Trigon was a virtual representative of Highmark. Thus, it was not objectively unreasonable for Allcare to initially assert this legal argument. When Allcare received information from Highmark regarding the limited relationship between Highmark and Trigon and Highmark's limited involvement in the *Trigon* action, thus leading Allcare to believe it would be unsuccessful in its preclusion argument, it promptly withdrew it. This is not a proper basis for finding the case exceptional under *section 285*. The district court clearly erred by finding that Allcare's brief assertion of this position warrants an exceptional case finding.

B

Highmark also argues that Allcare's "shifting claim construction" with respect to element 52(c) was improper and warrants an exceptional case finding. Allcare originally proposed the following claim construction for the two key (underscored) elements of element 52(c):

> *Data symbolic of symptoms for tentatively identifying*: "any information, coded or otherwise, reflecting [*37] a patient's health, reason for visit or condition, *e.g.*, symptoms, test results and other data, that is relevant to diagnosis and treatment by a care provider, including but not limited to ICD disease codes."

> *Tentatively identifying a proposed mode of treatment*: "the act or process of determining the treatment that is appropriate, subject to later amendment or confirmation."

J.A. 11953-54. Allcare later combined the two key elements and proposed that element 52(c) be construed as
> one or more items of information representative of a sign of disorder or disease with a view toward, as concerns or corresponding to, provisionally putting forth a suggested method of the application of remedies or therapies to a patient for a disease or injury.

J.A. 11954. Allcare again adjusted its proposed claim construction to
> information expressed in a symbolic or representative manner pertaining to the evidence of disease or changes in the physical condition of a patient, with a view toward, as concerns or corresponding to, provisionally *putting forth* a suggested method of the application of remedies or

therapies to a patient for a disease or injury.

J.A. 11954 (emphasis added). Finally, Allcare redrafted [*38] its construction of "tentatively identifying a proposed mode of treatment" to be "provisionally (*i.e.*, non-finally) *naming or recognizing* a suggested method of treatment." J.A. 23006 (emphasis added).

These linguistic shifts in the proposed claim construction are insufficient to constitute litigation misconduct and an exceptional case finding. The constructions proffered by Allcare do not differ in substance. Each demonstrated that it was Allcare's position that the claims were not limited to diagnostic smart systems and that there was no "cause-and-effect" relationship between the entering of symptoms and the automatic identification of the treatment. Allcare's position on this point never changed. Highmark does not cite any authority to support its position that minor word variations in claim construction positions, where the substance of the claim construction does not change, are sanctionable. We also note that some of Allcare's resubmissions of claim construction positions and arguments to the district court were the result of this court's en banc decision in *Phillips*, which issued while the claim construction issues were pending before the district court. Indeed, Highmark itself [*39] conceded that new claim construction briefs in light of *Phillips* were desirable and would benefit the district court. *See* Order Striking Claim-Construction Motion and Related Filings, Directing an Amended Claim-Construction Motion, and Rendering Moot Related Filings and Motions, *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, No. 4:03-CV-1384-Y (N.D. Tex. Aug. 12, 2005), ECF No. 282. Again, the district court clearly erred in finding that Allcare's minor changes in claim construction support an exceptional case finding under *section 285*.

C

Finally, the district court found that misrepresentations made before the Western District of Pennsylvania in connection with a motion to transfer venue supported an exceptional case finding. After Highmark initiated suit in the Western District of Pennsylvania, Allcare sought to transfer the case to the Northern District of Texas. The issue was personal jurisdiction. Highmark contended that Allcare had sufficient contacts with Pennsylvania for personal jurisdiction based in part on a survey it commissioned to locate potential infringers, which led to survey calls to companies in Pennsylvania. Allcare argued that this was not a sufficient "contact" [*40] for purposes of personal jurisdiction. Allcare contended that the survey was not such a contact because Allcare "did not control the manner in which Seaport Surveys, an independent contractor, went about *completing* the surveys." *Exceptional Case Order, 706 F. Supp. 2d at 734* (internal quotation marks omitted). Allcare also contended that it "did not control how Seaport Surveys carried out its surveys, nor did it dictate what companies Seaport opted to call upon." *Id*. In finding this case exceptional, the district court found that these statements were misrepresentations because, although no Allcare employees participated in the actual survey calls, "Allcare participated in and, indeed, controlled every other aspect of the survey." *Id*. This included designing the initial questionnaire, providing a supplemental questionnaire, and effectively controlling which companies were to be interviewed. Thus, the district court found that Allcare's representations to the Western District of Pennsylvania related to its motion to transfer were "at best obfuscatory and [] strain[ed] the bounds of zealous advocacy." *Id. at 735*.

The district court erred in finding the case exceptional based on these [*41] representations. As recognized by the district court in vacating Rule 11 sanctions against the attorneys, "if any court were to issue sanctions based on the [transfer] motion, it would be most appropriate for the Western District of Pennsylvania to do so." Opinion and Order Reconsidering and Vacating Sanctions, *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 732 F. Supp. 2d 653, 672 (N.D. Tex. 2010)*. Indeed, [HN14] a court generally should sanction "conduct beyond that occurring in trial [only] when a party engages in bad-faith conduct which is in direct defiance *of the sanctioning court." FDIC v. Maxxam, Inc., 523 F.3d 566, 591 (5th Cir. 2008)* (internal quotation marks omitted); *see also Chambers v. NASCO, Inc., 501 U.S. 32, 57, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991)*. The district court offered no justification for sanctioning conduct before a different tribunal. On appeal, Highmark likewise offered no authority for the issuance of sanctions for conduct that occurs solely before another tribunal. Thus, these supposed misrepresentations do not support an exceptional case finding.

\* \* \*

We therefore affirm the district court's finding that Allcare's allegations of infringement of claim 102 rendered the [*42] case exceptional under *section 285* and reverse the district court's finding that Allcare's other claims and actions supported an exceptional case finding. Because the district court did not determine the amount of attorneys' fees apportionable to each of the above issues, a remand is necessary. *See Molins PLC v. Textron, Inc., 48 F.3d 1172, 1186 (Fed. Cir. 1995)* (remanding for a calculation of attorneys' fees based on the court's partial reversal of the underpinnings of the exceptional case finding). We remand this case to the district court for a calculation of attorneys' fees based on the frivolity of the claim 102 allegations only.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

Costs

No costs.

**DISSENT BY:** MAYER (In Part)

**DISSENT**

Mayer, *Circuit Judge*, dissenting-in-part.

The court errs when it says that no deference is owed to a district court's finding that the infringement claims asserted by a litigant at trial were objectively unreasonable. *See Ante* at 9 ("We review the [district] court's determination of objective reasonableness without deference since it is a question of law."). When reviewing an exceptional case determination under *35 U.S.C. § 285*, reasonableness is a finding of fact which may be [*43] set aside only for clear error. *See Eon-Net LP v. Flagstar Bancorp, 653 F.3d 1314, 1324 (Fed. Cir. 2011)* ("When reviewing an exceptional case finding for clear error, we are mindful that the district court has lived with the case and the lawyers for an extended period. Having only the briefs and the cold record, and with counsel appearing before us for only a short period of time, we are not in the position to second-guess the trial court's judgment."). Applying this highly deferential standard of review, there is no basis for overturning the trial court's determination that the infringement counterclaims brought by Allcare Health Management Systems, Inc. ("Allcare") against Highmark, Inc. ("Highmark") were frivolous. I would affirm the district court's award of attorney fees and expenses in its entirety.

I.

Congress created this court in 1982 with the goal of promoting greater uniformity in the interpretation and application of the nation's patent laws. *See Markman v. Westview Instruments, Inc., 517 U.S. 370, 390, 116 S. Ct. 1384, 134 L. Ed. 2d 577 (1996)* ("Congress created the Court of Appeals for the Federal Circuit as an exclusive appellate court for patent cases, observing that increased uniformity would strengthen [*44] the United States patent system in such a way as to foster technological growth and industrial innovation." (citations and internal quotation marks omitted)). The fact that we have been vested with exclusive appellate jurisdiction in patent cases does not, however, grant us license to invade the fact-finding province of the trial courts. Our increasing infatuation with de novo review of factual determinations began with claim construction, *see Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1455-56 (Fed. Cir. 1998)* (en banc), and has now infected review of both willful infringement, *see Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc., 682 F.3d 1003, 2012 WL 2149495, at *1 (Fed. Cir. 2012)*, and *section 285* exceptional case determinations. As a result of this appellate overreaching, litigation before the district court has become a mere dress rehearsal for the command performance here. *See Phillips v. AWH Corp., 415 F.3d 1303, 1334 (Fed. Cir. 2005)* (en banc) (Mayer J., dissenting) ("If we persist in deciding the subsidiary factual components of claim construction without deference, there is no reason why litigants should be required to parade their evidence before [*45] the district courts or for district courts to waste time and resources evaluating such evidence."). Encouraging relitigation of factual disputes on appeal is an enormous waste of the litigants' resources and vitiates the critically important fact-finding role of the district courts. *See Anderson v. City of Bessemer City, 470 U.S. 564, 575, 105 S. Ct. 1504, 84 L. Ed. 2d 518 (1985)* ("[T]he parties to a case on appeal have already been forced to concentrate their energies and resources on persuading the trial judge that their account of the facts is the correct one; requiring them to persuade three more judges at the appellate level is requiring too much.").

Absent misconduct during litigation or when securing a patent, sanctions under *section 285* may be awarded only if a two-prong test is satisfied: (1) the litigation is brought in subjective bad faith; and (2) it is objectively baseless. *Old Reliable Wholesale, Inc. v. Cornell Corp., 635 F.3d 539, 543 (Fed. Cir. 2011)*. The

objective baselessness standard under *section 285* "is identical to the objective recklessness standard for enhanced damages" in the willful infringement context. *iLOR, LLC v. Google, Inc., 631 F.3d 1372, 1377 (Fed. Cir. 2011)*. Until *Bard, 682 F.3d 1003, 2012 WL 2149495, at *1*, [*46] this court had correctly applied a highly deferential "clear error" standard of review to the factual underpinnings of an exceptional case determination. *See Nilssen v. Osram Sylvania, Inc., 528 F.3d 1352, 1357 (Fed. Cir. 2008)* ("We review a finding that a case is 'exceptional' within the meaning of *35 U.S.C. § 285* for clear error."); *Q-Pharma, Inc. v. Andrew Jergens Co., 360 F.3d 1295, 1299 (Fed. Cir. 2004)* ("We review a denial of attorney fees under *35 U.S.C. § 285* for an abuse of discretion; however, we review the factual determination whether a case is exceptional under *§ 285* for clear error."); *Forest Labs., Inc. v. Abbott Labs., 339 F.3d 1324, 1328 (Fed. Cir. 2003)* (emphasizing that this court reviews a trial "court's factual findings, including whether the case is exceptional, for clear error"); *Brasseler, U.S.A. I., L.P. v. Stryker Sales Corp., 267 F.3d 1370, 1378 (Fed. Cir. 2001)* ("Whether a case is 'exceptional,' in accordance with *35 U.S.C. § 285*, is a question of fact."). *Bard*, however, rejected this approach, concluding that whether a litigant's conduct was objectively reasonable is a question of law subject to de novo review. *See 682 F.3d 1003, 2012 WL 2149495, at *1*. Because *Bard* usurps [*47] the fact-finding role of the trial courts and is plainly inconsistent with our precedent it is an outlier and of no precedential value. We are bound to follow the standard of review articulated in earlier decisions. *See Johnston v. IVAC Corp., 885 F.2d 1574, 1579 (Fed. Cir. 1989)* ("Where conflicting statements . . . appear in our precedent, the panel is obligated to review the cases and reconcile or explain the statements, if possible. If not reconcilable and if not merely conflicting dicta, the panel is obligated to follow the earlier case law which is the binding precedent."). The law of this circuit can only be superseded by the court en banc. *See Sacco v. Dep't of Justice, 317 F.3d 1384, 1386 (Fed. Cir. 2003)*.

*Bard* is simply wrong when it concludes that a determination of whether conduct is objectively reasonable is a question of law subject to de novo review. *See 682 F.3d 1003, 2012 WL 2149495, at *2*. To the contrary, the question of what constitutes reasonable conduct under varying circumstances is a quintessentially factual inquiry. Indeed, the Supreme Court has acknowledged that reasonableness is a question of fact by recognizing "the jury's unique competence in applying the 'reasonable man' [*48] standard." *TSC Indus. v. Northway, Inc., 426 U.S. 438, 450 n.12, 96 S. Ct. 2126, 48 L. Ed. 2d 757 (1976)*. This court, too, has recognized that the reasonableness of a litigant's conduct is a factual question. *See Nat'l Presto Indus., Inc. v. W. Bend Co., 76 F.3d 1185, 1193 (Fed. Cir. 1996)* ("Whether the infringer had a reasonable belief that the accused activity did not violate the law is a question of fact, as are other questions relevant to the issue of willfulness." (citations omitted)); *see also Rand v. Underwriters at Lloyd's, 295 F.2d 342, 346 (2nd Cir. 1961)* (emphasizing that "when dissimilar inferences may be drawn from undisputed facts, or when the facts are in dispute, 'reasonableness' is a jury question"). As an appellate court, we are ill-suited to weigh the evidence required to make an exceptional case determination. In many cases, a trial court will declare a case exceptional only after spending months--and sometimes even years--reviewing the evidence, hearing testimony, and evaluating the conduct of the litigants. Its intimate familiarity with the facts of the case, and the parties involved, place it in a far superior position to judge whether or not a litigant's claims of infringement were objectively [*49] baseless:

> The district judge is a firsthand observer of the proceedings below. His is the view from the trenches: he sees the shots fired by one party against the other, and he has full knowledge of the circumstances prompting the cross-fire. . . . Since the imposition of sanctions will usually require [an] intensive inquiry into the factual circumstances surrounding an alleged violation, the trial judge is in the best position to review [those] circumstances and render an informed judgment.

*Kale v. Combined Ins. Co., 861 F.2d 746, 758 (1st Cir. 1988)* (citations and internal quotation marks omitted).

*Bard's* assertion that objective reasonableness is a question of law is anomalous given that the exceptional nature of the case must be established by clear and convincing evidence. *See Wedgetail, Ltd. v. Huddleston Deluxe, Inc., 576 F.3d 1302, 1304 (Fed. Cir. 2009)*. The clear and convincing evidence standard applies to questions of fact, not to questions of law. *See, e.g., Star Scientific, Inc. v. R.J. Reynolds Tobacco Co., 537 F.3d*

1357, 1366 (Fed. Cir. 2008) ("The predicate facts must be proven by clear and convincing evidence." (citations and internal quotation marks omitted)). Furthermore, [*50] the *Bard* approach is unnecessarily complex[1] and will undoubtedly spawn unneeded litigation over which issues in a *section 285* determination are issues of fact, which are issues of law, and which are mixed questions of law and fact. *See Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 401, 110 S. Ct. 2447, 110 L. Ed. 2d 359 (1990)* (explaining that there is no "rule or principle that will unerringly distinguish a factual finding from a legal conclusion," and that "[m]aking such distinctions is particularly difficult" in the context of attorney fee awards (citations and internal quotation marks omitted)).

> 1   As a practical matter, the *Bard* approach will be difficult and time-consuming to apply. *Bard* instructs:
>
> > In considering the objective prong of [*In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007) (en banc)], the judge may when the defense is a question of fact or a mixed question of law and fact allow the jury to determine the underlying facts relevant to the defense in the first instance, for example, the questions of anticipation or obviousness. But . . . the ultimate legal question of whether a reasonable person would have considered there to be a high likelihood of infringement of a valid patent should always be decided [*51] as a matter of law by the judge.
>
> *Bard*, 682 F.3d 1003, 2012 WL 2149495, at *4.

Although the Supreme Court has not yet spoken on the appropriate standard of review applicable to *section 285* exceptional case determinations, it has made clear that a highly deferential standard of review applies in analogous proceedings brought under *Rule 11 of the Federal Rules of Civil Procedure. See Cooter, 496 U.S. at 399-405*. Prior to *Cooter*, some circuit courts of appeals had divided review of Rule 11 sanctions into three separate analyses, reviewing fact-findings under a clearly erroneous standard, legal questions under a de novo standard, and the actual sanction decision for abuse of discretion. *Id. at 399*. The Supreme Court rejected this approach, concluding that although Rule 11 determinations involve both factual and legal issues, all aspects of such a determination must be reviewed under a highly deferential abuse of discretion standard. *Id. at 405*. In the Court's view, application of a deferential standard was appropriate because "the district court [was] better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard mandated by *Rule 11*." *Id. at 402*. Significantly, [*52] the Court rejected the view that a determination as to whether a litigant's conduct was reasonable must be reviewed by an appellate court de novo. *Id. at 405* ("An appellate court's review of whether a legal position was reasonable or plausible enough under the circumstances is unlikely to establish clear guidelines for lower courts; nor will it clarify the underlying principles of law." (citations and internal quotation marks omitted)). Similarly, in the context of fee awards under the Equal Access to Justice Act ("EAJA"), *28 U.S.C. § 2412(d)*, the Supreme Court has determined that a deferential abuse of discretion standard applies, even though an EAJA award turns on the question of whether the government's litigation position had a "reasonable basis both in law and fact." *Pierce v. Underwood, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988)*.

*Bard* offers no persuasive explanation as to why the highly deferential standard of review adopted in *Cooter* and *Pierce* should not apply to *section 285* exceptional case determinations. Simply because the *section 285* analysis can touch on issues of patent validity and infringement does not mean that this court can shirk our obligation to afford due deference to the better-informed [*53] judgment of the trial court on factual matters. *See Pullman-Standard v. Swint, 456 U.S. 273, 287, 102 S. Ct. 1781, 72 L. Ed. 2d 66 (1982)* (*Rule 52(a) of the Federal Rules of Civil Procedure* "does not make exceptions or purport to exclude certain categories of factual findings from the obligation of a court of appeals to accept a district court's findings unless clearly erroneous.").

II.

Here, the trial court, in a thorough and well-reasoned opinion, concluded that Allcare engaged in "vexatious and, at times, deceitful conduct" and "maintained infringement claims well after such claims had been shown by its own experts to be without merit."

*Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc., 706 F. Supp. 2d 713, 737 (N.D. Tex. 2010)*. The court found that Allcare failed to conduct any sort of reasonable pre-filing investigation before asserting its infringement counterclaims against Highmark. *Id. at 723-27*. Robert Shelton, Allcare's vice-president, ignored persuasive, publically-available evidence[2] which clearly demonstrated that Highmark's accused system failed to meet key elements of claim 52(c) of *U.S. Patent No. 5,301,105* (the "*'105 patent*"). Claim 52(c) specifically requires "entering . . . data symbolic of patient [*54] symptoms *for* tentatively identifying a proposed mode of treatment." *'105 patent* col. 21 ll. 31-34 (emphasis added). In Highmark's accused system, however, a physician or other medical professional enters both the symptoms and the proposed diagnosis and treatment options. Thus, symptom data is not entered "for" the purpose of "identifying a proposed mode of treatment" as required by claim 52(c). Indeed, Allcare's own expert acknowledged that in the Highmark system symptom data was entered to identify the condition for which the patient was already receiving treatment and *not* "for" the purpose of identifying the proposed mode of treatment. *See* Joint App'x 11586-88; *Highmark, 706 F. Supp. 2d at 731* ("Allcare's allegations were shown to be without support by its own expert's report and deposition testimony. Yet Allcare persisted in its infringement allegations."). Given that Allcare persisted in advancing infringement allegations that were both in direct conflict with the plain claim language and unsupported by the testimony of its own expert, the district court had ample grounds for concluding that Allcare's allegations of infringement of claim 52(c) were frivolous.[3] Because there was [*55] no clear error in the trial court's exceptional case determination, its *section 285* award must be affirmed.

> 2   "[B]y all accounts a large amount of information regarding Highmark's system was available publicly. Allcare even discovered a demonstration version of Highmark's system complete with a representative user interface. This interface displayed what code was used by Highmark's system . . . and what the code was used for (to indicate symptoms rather than to determine a proposed treatment)." *Highmark, 706 F. Supp. 2d at 725* (citations omitted). Had Allcare conducted an even minimal investigation of publically available information regarding the Highmark system, it would have discovered that system did not meet claim 52(c)'s requirement that symptom data is entered "for" the purpose of "identifying a proposed mode of treatment." *'105 patent* col. 21 ll. 31-34.
>
> 3   The court errs when it concludes that an embodiment disclosed in the specification provided reasonable support for Allcare's allegation that the Highmark system met the limitations of claim 52(c). That embodiment plainly did not describe a system in which the physician enters symptoms "for" the purposes of identifying a method [*56] of treatment, *see '105 patent* col. 10 ll. 5-8, and was therefore not covered by claim 52(c).

III.

Finally, it is worth noting that the infringement trial in this case occurred prior to the Supreme Court's decisions in *Bilski v. Kappos, 130 S. Ct. 3218, 177 L. Ed. 2d 792 (2010)*, and *Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 182 L. Ed. 2d 321 (2012)*. Had the trial court had the benefit of these decisions, it could have applied *35 U.S.C. § 101* to invalidate Allcare's *'105 patent* at the summary judgment stage of the proceedings. *See Bilski, 130 S. Ct. at 3225* (noting that whether claims are directed to statutory subject matter is a "threshold test").

"[T]he patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time." *Pfaff v. Wells Elecs., Inc., 525 U.S. 55, 63, 119 S. Ct. 304, 142 L. Ed. 2d 261 (1998)*. A patentee does not uphold his end of this "bargain" if he seeks broad monopoly rights over a basic concept, fundamental principle, or natural law without a concomitant contribution to the existing body of scientific and technological knowledge. In *Bilski*, an application was [*57] rejected as patent ineligible because it did not "add" anything to the basic concept of hedging against economic risk. *130 S. Ct. at 3231* (emphasizing that the application applied the concept of hedging using "well-known random analysis techniques"). In *Mayo*, likewise, process claims were invalidated under *section 101* because they simply described a law of nature and applied it using "well-understood, routine, [and] conventional" means. *132 S. Ct. at 1294*.

A similar analysis applies here. Allcare's claimed

diagnostic system falls outside the ambit of *section 101* because it is directed to the "abstract idea" that particular symptoms are likely caused by particular diseases or conditions. The *'105 patent* describes a system in which a user enters data regarding a patient's symptoms and a computer generates a list of possible diseases or conditions that might be causing such symptoms. Any healthcare provider or patient who has ever consulted a medical treatise or home medical reference book to determine what disease or condition might be causing particular symptoms has practiced a non-computerized version of the claimed method. Because the *'105 patent* simply describes the abstract idea [*58] that certain symptoms are correlated with certain diseases and then applies that idea using conventional computer technology, it fails to meet *section 101*'s subject matter eligibility requirements. *See MySpace, Inc. v. Graphon Corp., 672 F.3d 1250, 1267 (Fed. Cir. 2012)* (Mayer, J., dissenting) ("While running a particular process on a computer undeniably improves efficiency and accuracy, cloaking an otherwise abstract idea in the guise of a computer-implemented claim is insufficient to bring it within *section 101*." (footnote omitted)); *see also Dealertrack, Inc. v. Huber, 674 F.3d 1315, 1333 (Fed. Cir. 2012)* (concluding that claims drawn to a "computer-aided" method of processing information through a clearinghouse fell outside the ambit of *section 101*); *CyberSource Corp. v. Retail Decisions, Inc., 654 F.3d 1366,1375 (Fed. Cir. 2011)* (emphasizing "that the basic character of a process claim drawn to an abstract idea is not changed by claiming only its performance by computers, or by claiming the process embodied in program instructions on a computer readable medium"). Where, as here, a patent describes an abstract idea, but discloses no new technology or "'inventive concept,'" *Mayo, 132 S. Ct. at 1294*, [*59] for applying that idea, a robust application of *section 101* at the summary judgment stage will save both courts and litigants years of needless litigation.