# Exhibit A

```
 1                      UNITED STATES DISTRICT COURT
                         DISTRICT OF MASSACHUSETTS
 2

 3

 4   ABBOTT GMBH & CO., KG, AND         )
     ABBOTT BIORESEARCH CENTER, INC.    )
 5   and ABBOTT BIOTECHNOLOGY LTD.,     )
                    Plaintiffs,         )
 6   v.                                 ) No. 09-11340-FDS
                                        )
 7   CENTOCOR ORTHO BIOTECH, INC.       )
     and CENTOCOR BIOLOGICS, LLC,       )
 8                                      )
                    Defendant.
 9

10
     BEFORE:  THE HONORABLE F. DENNIS SAYLOR, IV
11

12
                          JURY TRIAL DAY 5
13

14
                         September 17, 2012
15
                             8:30 a.m.
16

17

18
                    United States District Court
19                        Courtroom No. 2
                         One Courthouse Way
20                  Boston, Massachusetts  02210

21

22
                         Valerie A. O'Hara
23                        Lee A. Marzilli
                       Official Court Reporters
24        John Joseph Moakley United States Courthouse
                         One Courthouse Way
25                      Boston, MA 02210
           E-mail: vaohara@gmail.com, leemarz@aol.com
```

```
 1   Dr. Marks and Dr. Schier and their co-authors discovered was
 2   that if you made one change, it could affect the activity by a
 3   factor of 30?
 4   A.   Are you talking about paragraph 184?
 5   Q.   Yes.
 6   A.   The last sentence that I wrote was, Further in 1996,
 7   Schier and coworkers described a general approach using
 8   site-directed mutagenesis from improving antibody affinity.  In
 9   that experiment, affinity of a particular antibody was improved
10   by three orders of magnitude.  So when you said 30 fold -- did
11   you say 30 fold, isn't that what you said?
12   Q.   30 times.
13   A.   You said 30 times, so 30 times is not the same as three
14   orders of magnitude.
15   Q.   Well, let's look at what the table says in the publication
16   itself.  Can I have table 4 of Exhibit 1075.  I'll put it on
17   the screen.  Now, this is from the publication that you were
18   discussing with Ms. Mullin, correct?
19   A.   Correct, I showed this table this morning.
20   Q.   Right.  If you look at C65.
21   A.   Yes.
22   Q.   All right.  If you go over for the clones C65 all the way
23   to the right, the k off is 63.0 plus or minus .60, correct?
24   A.   Times 10 to the minus 4.
25   Q.   So let's then just go down four rows to C6MH3-H3, do you
```

1   see?  And there's been one change, one amino acid difference,
2   correct?
3   A.   Correct.
4   Q.   And the k off is 2.5 plus or minus .47, correct?
5   A.   Times 10 to the minus 4, correct.
6          MR. LEE:  Your Honor, this may be a good time to take
7   the second morning break.
8          THE COURT:  All right.
9          THE CLERK:  All rise.
12:01 10              ( A recess was taken at 12:01 and resumed
11       at 12:11 p.m.)
12          THE CLERK:  All rise for the jury.
13          (JURORS ENTERED THE COURTROOM.)
14                  (THE FOLLOWING OCCURRED AT SIDEBAR:)
15          MR. LEE:  I think I know the answer to this question,
16   but I want to ask, so I don't get the wrong answer in front of
17   everybody.  Dr. Siegel gave an opinion that he was applying
18   fair and convincing evidence, he had in mind the presumption of
19   validity which means having to go before the patent office.  I
12:12 20   have part of my examination which would go through the file
21   history with them.  I assume what your Honor has said as well
22   as the objection that you would preclude me from going into it
23   with him because he hasn't --
24          THE COURT:  It's a Rule 403, if he hasn't seen it, all
25   you're really doing is arguing.  In other words, you're not

1    eliciting any actual evidence from him.  Having said that, it's
2    a burden proposition.  If there are points that he didn't
3    consider, obviously it's fair game to elicit that.  I'm
4    struggling to see this is anything other than argument.
5            MR. LEE:  Your Honor, it's more than argument because
6    when -- imagine that he got up and said X as a scientific
7    proposition and there was one treatise that said X and two that
8    said the opposite of X.
9            THE COURT:  Right.
10           MR. LEE:  An expert witness can't insulate I never
11   read the other two.
12           THE COURT:  Right.
13           MR. LEE:  This witness has never insulated himself by
14   never having read the file history and seeing what the patent
15   office said specifically on these issues, this is why I'm
16   asking.  It may mean we have to do it on direct through one of
17   our witnesses to explain what happened.  It goes also to this
18   i4i issue that we've burdened your Honor on multiple occasions.
19   What happens with the patent office in terms of prior art, to
20   have him get up and say, well, I've applied the presumption of
21   clear and convincing evidence is a little problematic.
22           THE COURT:  Again, there may be specific issues, let's
23   take prior art as a good example.  Clearly you can, you can
24   point out that although he has read the file history.
25   According to this, the patent office considered all 8 of his

```
 1   articles let's say that he cited and then stopped.
 2            I'm a little concerned with both wasting time and what
 3   I perceived as the argumentative nature of your line of inquiry
 4   which was, again, the point of cross-examination is to elicit
 5   facts, and if you're comparing what he said to some specific
 6   fact as a general proposition, I'll let you do that if it's
 7   relevant.  If you're just up there saying the patent office
 8   with a bunch of Ph.D.s, you know, reached this conclusion, that
 9   sounds awfully like argument to me.
10            Do you want to weigh in, Ms. Mullin?  I don't know how
11   much guidance, it's a question of degree, it's a question of
12   your particular questions, what are you trying to prove.
13            MR. LEE:  Well, let me give you a good example, I'm
14   asking based upon Ms. Mullin's objection, first better to work
15   these out than do it in front of the jury.  For instance, there
16   is an exchange between that and the patent examiner about
17   whether the claims are limited by the sequence.  That seems to
18   me important given everything that's been discussed.  I was
19   going to ask Dr. Eck, this gentleman has never reviewed the
20   file history.  That seems pretty specific and pretty important.
21   You know --
22            THE COURT:  I mean, again, just to illustrate the
23   point, you can also, of course, ask him the claims bias are not
24   amino acid sequence, you've read the claims.
25            MR. LEE:  Your Honor, I think I see what you're
```